# CIVIL COVER SHEET

# 99-0274

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROBERT ABBOTT, et al.,

## DEFENDANTS

CIV - SEITZ

MAGISTRATE JUDGE
BROWN

MINNESOTA MINING & MANUFACTURING COMPANY,
BABCOCK & WILCOX COMPANY,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

AD ADE 99d274/BPAS/STB

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David M. Lipman, Esq.
5901 SW 74 Street, Miami, Fl

ATTORNEYS (IF KNOWN)
Mark A. Romance, Esq. JAN 27 1999
Richman, Greer, et al
201 Miami Center, Miami FL 33131

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:

DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. § 1332 (diversity), 28 U.S.C. § 1441. Case alleges products liability involving alleged exposure to asbestos.

IVa. unk. days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 810 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☒ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Refiled   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint.
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

RICHMAN GREER WEIL BRUMBAUGH MARKS & CHRISTENSEN, P.A.
MIAMI CENTER
10th FLOOR
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131

FOR OFFICE USE ONLY

Amount: 150.00
704410
Date Paid: 01/28/99   M/ifp: _____

UNITED STATES DISTRICT COURT
S/F I-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA  99 - 0274

ROBERT ABBOTT, et al.,

    Plaintiffs,

vs.

MINNESOTA MINING &
MANUFACTURING COMPANY, and
BABCOCK & WILCOX COMPANY,

    Defendants.

_____/

CASE NO. CIV-SEITZ

MAGISTRATE JUDGE _____

NOTICE OF REMOVAL MAGISTRATE JUDGE BROWN

    Defendant MINNESOTA MINING & MANUFACTURING COMPANY ("3M"), through counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files its Notice of Removal, and in support states as follows:

    1.    The complaint in the instant case was filed by over 1,700 plaintiffs in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, Case No. 98-29638 CA 42, alleging personal injury and wrongful death claims arising out of each plaintiff's alleged exposure to asbestos containing products. A true and accurate copy of the complaint is attached hereto as composite Exhibit 1.[1]

    2.    The complaint purports to include two defendants, 3M and Babcock & Wilcox Corporation ("Babcock"). Defendant 3M was served with process and a copy of the complaint on December 28, 1998. Plaintiff has not served Babcock with process.

_____

[1]    Composite Exhibit "1" contains all documents contained in the State court file.

CASE NO. 97-9016 CIV FERGUSON

3.    This case is removable pursuant to 28 U.S.C. § 1441(a). This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). That section provides, in pertinent part, that:

(a)The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between --

(1) citizens of different States.

4.    The complaint establishes that this matter is between citizens of different states. Paragraph 1 of the complaint alleges that all plaintiffs are citizens of the State of Florida. Paragraph 3 of the complaint accurately alleges that 3M is a Delaware corporation with its principal place of business in Minnesota. Finally, paragraph 5 of the complaint alleges that Babcock is a Delaware corporation with its principal place of business in Louisiana. Thus, this action is between citizens of different States.

5.    Additionally, although the complaint simply alleges that the action seeks damages in excess of $15,000,[2] the matter in controversy in this case is in excess of the sum of $75,000.[3] If each plaintiff proves liability and injuries as alleged in the complaint, each claimant would be virtually certain to obtain judgments exceeding $75,000. The complaint alleges that plaintiffs are divided into two categories, those plaintiffs who are still

---

[2]    $15,000 is the minimum jurisdictional limit of the Florida Circuit Court, the state court of general jurisdiction.

[3]    3M, of course, does not admit that plaintiffs are entitled to such damages, but only that the plaintiffs' allegations, viewed in the light most favorable to their claims, describe damages exceeding the requisite threshold. The verdict potential of any or all of these claims, whether against one or both of the defendants, or against third parties yet to be named either by plaintiffs or defendants, satisfies 28 U.S.C. § 1332(a)(1). Nevertheless, both liability and damages will be vigorously disputed.

2

CASE NO. 97-9016 CIV FERGUSON

alive, and the wrongful death plaintiffs. The living plaintiffs allege that they have suffered injuries in the form of out of pocket medical expenses, loss of enjoyment of life and earning capacity, mental and physical pain and suffering, increased risk of cancer, future medical expenses, mental anguish; and for married plaintiffs, loss of consortium. The wrongful death plaintiffs claim damages for pain and suffering and past medical expenses; and their beneficiaries seek damages for loss of support, loss of companionship and protection, medical and funeral expenses, loss of past earnings and loss of prospective net accumulations.

    6.    Jury verdicts in similar cases nearly always exceed $75,000. Recent jury verdicts in cases filed by plaintiffs alleging similar injuries as a result of exposure to asbestos containing materials include:

Reported decisions[4]

a)    Owens-Corning Fiberglass Corp. v. Ballard, 1998 WL 204710, 23 Fla. L. Weekly (D) 1077 (Fla. 4th DCA 1998)(Broward County jury)($1.8 million jury verdict for compensatory damages; $31 million in punitive damages);

b)    AcandS, Inc. v. Redd, 703 So.2d 492 (Fla. 3d DCA 1997)(Dade County jury) (jury verdict of $7.2 million in compensatory damages);

c)    Owens-Corning Fiberglass Corp. v. Rivera, 683 So.2d 154 (Fla. 3d DCA 1996)(Dade County jury)(jury verdict of $3.545 million in damages including $1.5 million in punitive damages);

d)    Owens-Corning Fiberglass Corp. v. Crane, 683 So.2d 552 (Fla. 3d DCA 1996)(Dade County jury)(jury verdict of $442,000 in compensatory damages and $666,000 in punitive damages);

e)    W.R. Grace & Co. v. Pyke, 661 So.2d 1301 (Fla. 3d DCA 1995)(Dade County jury)(jury verdict of $1.055 million in compensatory damages);

---

[4]    Copies of each of the referenced reported decisions are attached hereto as composite Exhibit "2."

CASE NO. 97-9016 CIV FERGUSON

Unreported decisions[5]

a)  Lee v. Owens-Corning Fiberglass Corp. (Escambia County jury)(1997 jury verdict of $4,059,800 for compensatory damages two plaintiffs in a consolidated action);

b)  Engler v. Owens-Corning Fiberglass Corp. (Broward County jury)(1996 jury verdict of $1,750,000 in compensatory damages);

c)  Snoozy v. Crown Cork & Seal Co., (Dade County jury)(1996 jury verdict for $1,153,536 in compensatory damages);

d)  Hammesfahr v. Owens-Corning Fiberglass Corp., (Dade County jury)(1996 jury verdict for  $455,000 in compensatory damages);

e)  Brillo v. Owens-Corning Fiberglass Corp., (Broward County jury)(1995 jury verdict for $357,000 for compensatory damages).

Those recent verdicts establish that it is a virtual certainty that the amount in controversy in this case exceeds $75,000.

7.     Defendant Babcock has not joined in or consented to this removal.  However, 3M is not obligated to obtain such consent because Babcock has not been served with process.  Lewis v. Rego Co., 757 F.2d 66 (3d Cir. 1985); Getty Oil Corp. v Insurance Co. Of North America, 841 F.2d 1254 (5th Cir. 1988); Jones v. Houston Ind. Sch. Dist., 979 F.2d 1004 (5th Cir. 1992); Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423 (9th Cir. 1984).

8.     Moreover, Babcock was not required to consent to the removal because it was fraudulently joined to avoid removal.  Where a party is fraudulently joined to avoid removal, the consent of all co-defendants is not required. Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815 (5th Cir. 1993).

---

[5]     Copies of the summaries of each of the unreported decisions are attached hereto as composite Exhibit "3."  The summaries were obtained from various issues of the Florida Jury Verdict Reporter.

4

CASE NO. 97-9016 CIV FERGUSON

9.      To prove fraudulent joinder, a removing party bears the burden to prove either that no possibility exists for plaintiff to establish a cause of action against that defendant, or that there has been outright fraud in plaintiff's pleading of jurisdictional facts. Id. Here, no possibility exists for plaintiffs to establish a cause of action against Babcock.

10.     First, on the face of the complaint it is obvious plaintiffs do not intend to proceed against Babcock, but that Babcock was joined simply to avoid removal. The complaint fails to state a cause of action against Babcock. If no cause of action is stated in the complaint, the federal court can conclude that the joinder was fraudulent, and thus permit removal. Katz v. Costa Armatori, S.P.A., 718 F.Supp. 1508, 1515 (S.D. Fla. 1989). Here, the complaint contains no allegations against Babcock other than paragraph 5, which only alleges Babcock's citizenship and residency. All other allegations of the complaint, including all allegations of ultimate facts and theories of liability, relate only to 3M. Thus, it is clear from the face of the complaint that plaintiffs did not even attempt to allege a cause of action against Babcock, but included Babcock merely as a fraud to avoid removal.

11.     Second, through investigation, undersigned counsel learned that a substantial number of the plaintiffs named in the complaint in this action have already filed separate lawsuits against Babcock. Undersigned counsel conducted a random search of the records of the clerk of the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, and learned that many plaintiffs had already filed cases against Babcock (and other defendants) in State court alleging injuries suffered as a result of alleged exposure to asbestos containing products. Further investigation revealed that many of those cases are still pending against Babcock, while in other cases the plaintiffs voluntarily

5

CASE NO. 97-9016 CIV FERGUSON

dismissed Babcock after settlement. Undersigned counsel has included in composite

Exhibit "4," copies of docket sheets and notices of voluntary dismissal in ten randomly

selected cases filed against Babcock in State court by plaintiffs named in this lawsuit, and

copies of docket sheets in ten other randomly selected cases filed in State court against

Babcock by plaintiffs named in this lawsuit, which cases appear to be pending against

Babcock.

WHEREFORE, Defendant MINNESOTA MINING & MANUFACTURING COMPANY

respectfully requests this Court to accept jurisdiction of this cause and to remove it from

the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

Respectfully submitted.

RICHMAN GREER WEIL BRUMBAUGH
MIRABITO & CHRISTENSEN, P.A.
Attorneys for Defendant 3M
Miami Center - 10th Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone (305) 373-4000

By: _____
JOHN M. BRUMBAUGH
Fla. Bar No. 126350
MARK A. ROMANCE
Fla. Bar No. 021520

6

CASE NO. 97-9016 CIV FERGUSON

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by mail this 27 day of January, 1999 to  David M. Lipman, David M. Lipman P.A., 5901 S.W. 74th Street, Suite 304, Miami, Florida 33143-5186.

Mark A. Romance

I:\LIBRARY\ASBESTOS\LIPMAN\PLEADING\NOTREMOV.J15

7

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 99.29638
                          CA 6

ROBERT ABBOTT, et al.,

      Plaintiffs,        David M. Lipman:   280054

vs.

MINNESOTA MINING & MANUFACTURING COMPANY
  (a/k/a "3M")
a Delaware corporation,

BABCOCK & WILCOX COMPANY,
a Delaware Corporation;

      Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

    1.   This is an action for damages in excess of Fifteen
Thousand Dollars ($15,000.00).  Plaintiffs in this action are
citizens of the State of Florida and of the United States of
America.  Plaintiffs in this action have been diagnosed as having
an asbestos-related disease.

    2.   A.   PERSONAL INJURY PLAINTIFFS:

    All Plaintiffs listed in Exhibit "A" are currently alive.
They are referred to in this complaint as the "Personal Injury
Plaintiffs" or "Plaintiffs".

    B.   WRONGFUL DEATH PLAINTIFFS

    The Personal Representatives of the Wrongful Death
Plaintiffs in this action are citizens of the State of Florida
and the United States of America.  The Decedents had been
diagnosed as having an asbestos-related disease or injury.  The
Personal Representatives of the Wrongful Death Plaintiffs are the

duly appointed Personal Representative of the Estate for the Decedent. The Decedents and their Personal Representatives are referred to as the "Wrongful Death Plaintiffs" or "Decedents" in this complaint. They are listed in Exhibit "B".

3.    Defendant Minnesota Mining and Manufacturing Company (a/k/a "3M", hereinafter referred to as "Defendant") is a Delaware Corporation with its principal place of business in Minnesota.

4.    Defendant 3M is a foreign corporation who is amenable to jurisdiction in the Courts of Florida because it now conducts or has conducted business or business ventures, or has had office or agencies within Florida, which subjects it to the jurisdiction within Florida. The causes of action arise out of, or are incidental to, the business or business ventures conducted within Florida by the Defendant. The Defendant has through brokers, jobbers, wholesalers, or distributors sold, consigned, or leased tangible or intangible personal property to persons in this state. The Defendant has committed wrongful acts either outside or inside this state causing injury to all Plaintiffs. The Defendant derives substantial revenue from interstate or international commerce and should reasonably have expected its acts to have consequences in this state or any other state. The Defendant has conducted substantial and not isolated activity within Florida. The Defendant mines or mined, manufactures or manufactured, processes or processed, imports or imported, converts or converted, compounds or compounded, and/or retains or retained substantial amounts of asbestos and asbestos related

2

materials which are or were sold, distributed and used in Florida.

    5.    Defendant BABCOCK & WILCOX COMPANY is a Delaware Corporation with its principal place of business in Louisiana.

    6.    Personal Injury Plaintiffs/Decedents maintain that the Defendant has, at all times material to this cause of action, and through and including the present, maintained sufficient contact with the State of Florida and/or transacted substantial revenue-producing business in the State of Florida to subject it to the jurisdiction of this Court pursuant to Florida statute 48.181 and/or 48.182 and/or 48.193 and/or 47.16.

<u>BACKGROUND</u>

    7.    Throughout their working career, the Personal Injury Plaintiffs/Decedents worked with and were exposed to asbestos-containing products mined, manufactured or distributed by the Defendant, or its predecessors.

    8.    Personal Injury Plaintiffs/Decedents used these asbestos products in the intended manner and without significant change in their condition and relied on the Defendant manufacturers' instructions as to proper methods of handling the products, being unaware of the dangerous properties of asbestos.

    9.    Personal Injury Plaintiffs/Decedents' exposure to Defendant's asbestos products and inhalation of the products' asbestos fibers caused them to contract an asbestos-related disease or injury.

<u>COUNT I</u>

3

10.  The allegations contained in paragraphs 1 through 9 are realleged.

11.  At the time of Personal Injury Plaintiffs/Decedents' exposure to asbestos products, Defendant knew, or in the exercise of ordinary care should have known, that the use of these products was hazardous to the health of workers such as the Personal Injury Plaintiffs/Decedents. Personal Injury Plaintiffs/ Decedents relied upon the skill and knowledge of the Defendant manufacturer who had a duty to advise users of its products of the proper method of handling the products.

12.  Defendant had a duty to adequately warn Personal Injury Plaintiffs/Decedents. Defendant was negligent in one, some, or all of the following respects:

a.   in failing to adequately warn Personal Injury Plaintiffs/Decedents that use and exposure to asbestos products could be injurious to their health;

b.   in failing to provide Personal Injury Plaintiffs/ Decedents with information as to what would be reasonably safe and sufficient clothing and proper equipment to protect them from exposure to asbestos;

c.   in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing asbestos materials;

d.   in affirmatively misrepresenting to Personal Injury Plaintiffs/Decedents and other members of the public by advertising, labeling and otherwise, that the asbestos

4

products manufactured, sold, or distributed were safe in
their ordinary and foreseeable use, which induced Personal
Injury Plaintiffs/Decedents to unknowingly expose themselves
to the hazards of asbestos;

     e.   in failing to remove and recall all of the
asbestos products from the stream of commerce and the
marketplace upon learning that asbestos products would cause
various asbestos-related diseases; and

     f.   in failing to continually warn or advise Personal
Injury Plaintiffs/Decedents and others to cease all future
exposure to asbestos fumes, smoke, dust and fibers, and to
keep away from the home environment asbestos dust and fibers
on work clothes and tools.

13.   The Defendant's asbestos-containing products to which
Personal Injury Plaintiffs/Decedents were exposed were used in
the manner in which they were intended to be used; however, they
failed to safely perform their purposes in that they caused
Personal Injury Plaintiffs/Decedents to develop severe
asbestos-related diseases or injuries.

14.   Personal Injury Plaintiffs/Decedents' illness are a
direct and proximate result of the negligent, grossly negligent,
reckless, willful, and intentional conduct of the Defendant and
Personal Injury Plaintiffs/Decedents have suffered the damages as
described.

15.   The illness and disabilities of Personal Injury
Plaintiffs/Decedents' are a direct and proximate result of 3M's
negligence in placing into the stream of commerce respiratory

devices defective in design and inadequate for the purposes for which they were intended, namely preventing the inhalation of dust, including asbestos dust, generated from construction and/or insulation activities.

16.   3M knew or should have known that workers would use and rely upon 3M's respiratory devices at sites where asbestos materials were commonly and extensively used which created substantial and constant quantities of dust and that 3M's respiratory devices would provide inadequate protection against the inhalation of asbestos dust.

17.   Furthermore, 3M was negligent for failing to warn and/or properly instruct workers regarding the inadequacies of its respiratory devices for preventing the inhalation of asbestos dust.

WHEREFORE, Personal Injury Plaintiffs/Personal Representatives demand compensatory damages, punitive damages, and trial by jury of all issues so triable in this cause.

<u>COUNT II</u>

18.   The allegations contained in paragraphs 1 through 9 are realleged.

19.   Defendant's asbestos products contained design defects at the time they were manufactured and at the time Personal Injury Plaintiffs/Decedents were exposed to them in their occupation.

20.   At the time of Personal Injury Plaintiffs/Decedents exposure, the Defendant's asbestos products were being used in the manner and environment intended and without substantial

6

change affecting their condition, but they contained design defects which made them unreasonably dangerous and unfit for their intended use, in that the products were designed to contain asbestos, a substance hazardous and highly harmful to the Personal Injury Plaintiffs/Decedents' body.

21.   a.   At the time of Personal Injury Plaintiffs/ Decedents' exposure, Defendant's asbestos product was unreasonably dangerous because of its design, as the product failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the Defendant.

b.   At the time of Personal Injury Plaintiffs/ Decedents' exposure, Defendant's asbestos product was unreasonably dangerous because of its design, as the risk of danger in the design outweighed the benefits obtained with the use of the product.

22.   At the time of Personal Injury Plaintiffs/Decedents' exposure, the Defendant's asbestos products were defective in that they did not contain a sufficient warning to advise Personal Injury Plaintiffs/Decedents that the asbestos-containing products were extremely harmful to their health.

23.   The lack of a sufficient warning on Defendant's asbestos products rendered them unreasonably dangerous and unfit for their intended use.

24.   Personal Injury Plaintiffs/Decedents' illness was a direct and proximate result of the products' defects and Personal Injury Plaintiffs/Decedents have suffered the damages described.

7

25.    Personal Injury Plaintiffs/Decedents used a respiratory device designed and manufactured by 3M commonly known as a "dust mask". Personal Injury Plaintiffs/Decedents' would show that the defective condition of such respiratory devices rendered them unreasonably dangerous for use as devices for protection against the inhalation of and dust and fibers. Personal Injury Plaintiffs/Decedents would further show that the respiratory devices were in a defective condition at the time that they left the hands of the Defendant, 3M.

26.    The Defendant, 3M, was engaged in the business of manufacturing and selling respiratory devices, commonly known as dust masks, and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of Personal Injury Plaintiffs/Decedents.

27.    The Defendant, 3M, knew that its respiratory device would be used without inspection for defects and, by placing them on the market, represented that they would safely preclude the inhalation of asbestos fibers.

28.    Personal Injury Plaintiffs/Decedents were unaware of the defects in the 3M respiratory devices which rendered them ineffective as protection against the inhalation of asbestos dust.

29.    During the periods Personal Injury Plaintiffs/ Decedents used and relied upon Defendant's respiratory devices, the devices were utilized in a manner for which they were intended to be used.

8

WHEREFORE,  Personal Injury Plaintiffs/Personal Representatives demand compensatory damages, punitive damages, and trial by jury of all issues so triable in this cause.

### COUNT III

The following allegations contained in paragraphs 30 through 39 apply only to the Personal Injury Plaintiffs.

30.  The allegations contained in paragraphs 1 through 9 are realleged.

31.  As a direct and proximate result of the foregoing allegations, Personal Injury Plaintiffs' spouses have suffered and will continue to suffer the loss of services, consortium, and the care and comfort of their husband's society because of their injuries and disabilities, and such spouses have incurred expenses for medical attention rendered to their husband.

WHEREFORE, Personal Injury Plaintiffs' spouses demand judgment for compensable damages against the Defendant in an amount to be determined by the jury, and a trial by jury of the issues so triable in this cause.

### DAMAGES - PERSONAL INJURY PLAINTIFFS

32.  As a direct and proximate result of the negligence, carelessness, gross negligence, willful misconduct, strict liability, misrepresentation and willful omissions of the Defendant as described, Personal Injury Plaintiffs contracted diseases and injuries causing the Personal Injury Plaintiffs to suffer physical pain, and mental anguish.

33.  Each exposure to the asbestos-containing products of Defendant was harmful and caused or contributed to the Personal

Injury Plaintiffs' injuries.  Personal Injury Plaintiffs'
injuries arose out of, were connected to, and were incidental to,
the manufacture, sale and distribution by Defendant of its
asbestos-containing products.

34.  As a direct and proximate result of the conduct
described, Personal Injury Plaintiffs were obliged to spend
various sums of money to treat their diseases and injuries, and
Personal Injury Plaintiffs continues to be obliged for the
expenses of same.  As a direct and proximate result of
Defendant's conduct, Personal Injury Plaintiffs' enjoyment of
life and earning capacity have been impaired and their life
expectancy shortened.

35.  From the time Personal Injury Plaintiffs first learned
of their disease, they have suffered mental and physical pain and
anguish as a result of their disease.  Additionally, Personal
Injury Plaintiffs are at an increased risk of developing other
cancers and have, and will incur, expenses to monitor their
condition.  Additionally Personal Injury Plaintiffs, have
suffered, and will continue to suffer, mental anguish.

36.  As a direct and proximate result of the aforesaid, and
since Personal Injury Plaintiffs first learned of their
aforementioned injuries, they has developed severe anxiety,
hysteria or phobias, any or all of which have developed into a
reasonable and traumatic fear of an increased risk of additional
asbestos-caused or related disease, including, but not limited
to, other forms of cancer not yet diagnosed to the Personal

Injury Plaintiffs resulting from exposure, directly and indirectly, to the asbestos products of the Defendant.

37.   As a direct and proximate result of the aforesaid, Personal Injury Plaintiffs have suffered, and will continue to suffer, ongoing psychological damage which may require future psychological and/or medical treatment.

38.   As a direct and proximate result of the Defendant's conduct, Personal Injury Plaintiffs have suffered, and will continue to suffer, a disintegration and deterioration of their family unit and their familial relationships, resulting in enhanced anguish, depression, and other symptoms of psychological stress and disorder.

39.   For the reckless, willful, intentional, grossly negligent, and wanton acts and omissions of the Defendant previously alleged, Personal Injury Plaintiffs are entitled to recover exemplary and punitive damages from said Defendant. Personal Injury Plaintiffs' spouses, the consortium plaintiffs, do not seek punitive damages.

WHEREFORE, Personal Injury Plaintiffs demand trial by jury of all issues so triable by right, and prays for judgment against Defendant on all of the counts for damages as specified and against Defendant, for the costs expended, for interest on said judgment from the date entered until paid at the legal rate, and for such other and further relief both at law and in equity, to which Personal Injury Plaintiffs may show themselves justly entitled.

11

## WRONGFUL DEATH PLAINTIFFS
### [ADDITIONAL COUNT]

The following allegations contained in paragraph 40 through paragraph 46 apply only to the Wrongful Death Plaintiffs.

### COUNT IV - SURVIVAL ACTION (NEGLIGENCE)

40.   The allegations contained in paragraphs 1 through 28 are realleged herein.

41.   As a direct and proximate result of the negligence, strict liability and willful misconduct of the Defendant as described herein, Decedents developed an asbestos-related disease.   As a result, they suffered physical and mental pain and suffering, became disabled from working, suffered physical handicap and incurred medical expenses in the treatment of their illness.   Decedents' asbestos-related illness was aggravated or activated by and through continued exposures to the Defendant's asbestos and asbestos-containing products.

42.   As a further direct and proximate result, all legal beneficiaries of the estates have been and will continue to be deprived of the comfort, society, service, and attentions of the Decedents.

WHEREFORE, the Personal Representatives of the Estates of the Decedents, demand judgment against the Defendant for all compensatory damages appropriate under the law and for punitive damages and demands trial by jury.

### DAMAGES - WRONGFUL DEATH PLAINTIFFS

43.   As a direct and proximate result of the negligence, strict liability and willful misconduct of the Defendant as

12

described herein, Decedents contracted an asbestos-related disease or injury, causing their death.

44.   Each exposure to the asbestos-containing products of the Defendant was harmful and caused or contributed to Decedents' death.  Decedents' death arose out of, was connected and incidental to, the manufacture, sale and distribution by the Defendant of its asbestos-containing products.

45.   As a direct and proximate result of the aforesaid, Decedents, during their lifetime, was obliged to spend various sums of money to treat their diseases and injuries; and the legal beneficiaries of the Estates of Decedents, have been and will continue to suffer damages, including, but not limited to:

       a.   loss of past and future support and services;

       b.   loss of companionship and protection;

       c.   mental pain and suffering;

       d.   medical and funeral expenses;

       e.   loss of past earnings and prospective net accumulations of the estate;

       f.   medical and funeral expenses that have become a charge against the estate;

       g.   all other damages and relief that may be just and proper.

46.   For the reckless, willful, intentional, grossly negligent, and wanton acts and omissions of the Defendant previously alleged, Wrongful Death Plaintiffs are entitled to recover exemplary and punitive damages from said Defendant.

WHEREFORE, Wrongful Death Plaintiffs demand trial by jury of all issues so triable by right, and prays for judgment against Defendant on all of the aforementioned counts for compensatory damages and for punitive damages for the costs expended herein, for interest on said judgment from the date entered until paid at the legal rate, and for such other and further relief both at law and in equity, to which Wrongful Death Plaintiffs may show themselves justly entitled.

## DEMAND FOR JURY TRIAL

Personal Injury Plaintiffs/Wrongful Death Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

DAVID M. LIPMAN

DAVID M. LIPMAN, P.A.
5901 S.W. 74 Street
Suite 304
Miami, Florida 33143-5186
(305) 662-2600

ATTORNEY FOR ALL PLAINTIFFS

DATED:  December 23, 1998

14





RECYCLED PAPER

```
DATE: 01/24/1999              CIVIL DIVISION                      CIVM2520
TIME: 10:02:19                DOCKET DISPLAY                   PAGE:    1

CASE NO : 98 - 29638 - CA - 01       JUDICIAL SECTION : 42   **** OPEN ****
                                                     PRINTER:
CASE STYLE:   ABBOTT, ROBERT                         PRINTOFF:
          VS MINNESOTA MINING & MANUFACTURING CO     RECEIPT NO :  111462

   DATE       CODE                    PLEADING DESCRIPTION
01/20/1999    NAPR    NOTICE OF APPEARANCE                 ATTORNEY:  126350
                        DN01      DN02
01/20/1999    MOTI    MOTION:
                      TO SEVER CLAIMS AND TO DISMISS
01/19/1999    NHRG    NOTICE OF HEARING-SPECIAL APPT    01/27/1999 AT  9:30 AM
01/13/1999    TEXT    OREA DONE TO CORRECT CLERICAL ERROR
01/13/1999    OREA    ORDER OF TRANSFER (REASSIGNMENT) SECTION: 42 FM:06   123
01/13/1999    SVRT    SERVICE RETURNED       BADGE #   326 P 12/28/1998
                        DN01
12/25/1998    CICO    CIVIL COVER


PF1=CASE  2=PRINT  3=NAME   4=ATTY  5=CRT REG   6=JUD CAL   7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160    <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
TIME: 10:03:09          DOCKET DISPLAY          DATE: 01/24/1999
                                                        PAGE:    2

CASE NO : 98 - 29638 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                     PRINTER:
CASE STYLE:    ABBOTT, ROBERT                        PRINTOFF:
          VS MINNESOTA MINING & MANUFACTURING CO     RECEIPT NO :   111462

   DATE        CODE                   PLEADING DESCRIPTION
12/25/1998    DJTR    DEMAND FOR JURY TRIAL
12/25/1998    SMIS    SUMMONS ISSUED
                      DN01      DN02
12/25/1998    CMPT    COMPLAINT




PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155    END OF INFORMATION.
```

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 98-29638 CA 42

ROBERT ABBOTT, et al.,

     Plaintiffs,

vs.                       **NOTICE OF HEARING**

MINNESOTA MINING &
MANUFACTURING COMPANY, and
BABCOCK & WILCOX COMPANY,

     Defendants.
_____/

**PLEASE TAKE NOTICE** that the undersigned will call up for hearing before the **Honorable Joseph Farina** in Chambers at the Miami-Dade County Courthouse, 73 West Flagler Street, Miami, Florida, on **January 27, 1999 at 9:30 a.m.** or as soon thereafter as can be heard,

**DEFENDANT 3M'S MOTION TO
SEVER CLAIMS AND TO DISMISS**

PLEASE BE GOVERNED ACCORDINGLY.

                         Respectfully submitted.

                         RICHMAN GREER WEIL BRUMBAUGH
                         MIRABITO & CHRISTENSEN, P.A.
                         Attorneys for Defendant 3M
                         Miami Center  -  10th Floor
                         201 South Biscayne Boulevard
                         Miami, Florida  33131
                         Telephone (305) 373-4000

By: _____
                     JOHN M. BRUMBAUGH
                     Florida Bar No. 126350
                     MARK A. ROMANCE
                     Fla. Bar No. 021520

CASE NO. 98-29638 CA 42

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed this _9th_ day of January, 1999 to David M. Lipman, David M. Lipman P.A., 5901 S.W. 74th Street, Suite 304, Miami, Florida 33143-5186.

Mark A. Romance

In accordance with the Americans with Disabilities Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Court ADA Coordinator no later than seven days prior to the proceedings.  Telephone (305) 375-2006 (Court ADA number) for assistance.  If hearing impaired, telephone (305) 375-2007 or (TDD) 1(800) 955-8771; or Voice (V) 1(800) 955-8770 via Florida Relay Service Number for assistance.

I:\LIBRARY\ASBESTOS\LIPMAN\PLEADING\NOH.001

✳✳✳  T⟋ ⟍NSMISSION REP⟍ ⌐  ✳✳✳

JAN-19-99 15:36    ID:3053734089          RICHMAN .GREER

**JOB NUMBER**                              **860**

**INFORMATION CODE**                        **OK**

TELEPHONE NUMBER        4048#14694#3054461598#

NAME(ID NUMBER)         305 446 1598

START TIME              JAN-19-99 15:34

PAGES TRANSMITTED       007      TRANSMISSION MODE        EMMR

RESOLUTION              STD      REDIALING TIMES          00

SECURITY                OFF      MAILBOX                  OFF

MACHINE ENGAGED         01'59


THIS TRANSMISSION IS COMPLETED.

LAST SUCCESSFUL PAGE    007




## Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A.
### Miami Center, Tenth Floor
### 201 South Biscayne Boulevard
### Miami, Florida 33131-2305

**Telephone: (305) 373-4000**                    **Fax: (305) 373-4099**

Date: _____January 19, 1999_____    No. of Pages (including this page): 7

From:    **MARK A. ROMANCE, ESQ.**

To:      **Susan Cole, Esq. - ATTENTION: Marta**

         **Matter Number:  14694**

         **Extension No:   4048**

         **Fax Number:     305/446-1598**

Remarks: _____

_____

_____

\*\*\* TRANSMISSION REPORT \*\*\*

JAN-19-99 15:37   ID:305 373 4099          RICHMAN/GREER 1

**JOB NUMBER**                              **970**

**INFORMATION CODE**              **OK**

| | | | |
|---|---|---|---|
| TELEPHONE NUMBER | 4048#14694#3056673361# | | |
| NAME(ID NUMBER) | 3056673361 | | |
| START TIME | JAN-19-99 15:35 | | |
| PAGES TRANSMITTED | 007 | TRANSMISSION MODE | ECM |
| RESOLUTION | STD | REDIALING TIMES | 00 |
| SECURITY | OFF | MAILBOX | OFF |
| MACHINE ENGAGED | 02'49 | | |

THIS TRANSMISSION IS COMPLETED.

LAST SUCCESSFUL PAGE     007





## Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A.
### Miami Center, Tenth Floor
### 201 South Biscayne Boulevard
### Miami, Florida 33131-2305

**Telephone: (305) 373-4000**                    **Fax: (305) 373-4099**

Date: __January 19, 1999__      No. of Pages (including this page): __7__

From:   **MARK A. ROMANCE, ESQ.**

To:     **David Lipman, Esq.**

       **Matter Number:**   14694

       **Extension No:**    4048

       **Fax Number:**      305/667-3361

Remarks: _____

_____

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 98-29638 CA 42

ROBERT ABBOTT, et al.,

      Plaintiffs,

vs.

MINNESOTA MINING &
MANUFACTURING COMPANY, and
BABCOCK & WILCOX COMPANY,

      Defendants.

_____/

## DEFENDANT 3M'S MOTION TO SEVER CLAIMS AND TO DISMISS

Defendant MINNESOTA MINING & MANUFACTURING COMPANY ("3M"),

through counsel, hereby files its Motion to Sever Claims and Motion to Dismiss, and in support

states as follows:

      1.      Over 1,700 Plaintiffs served one complaint in the instant case on Defendant 3M

on December 28, 1998.

      2.      The complaint purports to join as party plaintiffs 1,323 plaintiffs who are

currently alive, and 420 alleged "wrongful death" plaintiffs.

      3.      Additionally, Plaintiffs filed an exposure sheet that indicates exposure to various

alleged asbestos containing products at "various jobsites" from 1935 to 1985, without any

specific reference to particular plaintiffs, specific jobsites or dates exposed at particular jobsites.

      4.      Finally, the complaint does not attach a completed copy of the "*forum non*

*conveniens*" fact sheet.

Motion To Sever

5.      Plaintiffs' attempt to assert each of their separate claims in one civil action is a misjoinder of claims and claimants.  Each plaintiff presumably will allege exposure to different products at different jobsites at different times.  Moreover, each plaintiff will allege suffering different injuries, as is obvious from the fact that several hundred plaintiffs allege wrongful death claims.

6.      A trial of all the claims of all the plaintiffs in a single lawsuit will prejudice Defendant 3M in that it would be difficult, if not impossible, to prepare for and try different claims of over 1,700 plaintiffs in one lawsuit.  Moreover, the burden on the court to attempt to conduct a single trial of different claims of over 1,700 separate plaintiffs would be unduly burdensome and overwhelming.

WHEREFORE, Defendant MINNESOTA MINING & MANUFACTURING COMPANY respectfully requests the Court to enter an Order requiring each individual plaintiff who wishes to continue in the litigation to file and serve a separate complaint, to pay a separate filing fee to the clerk, and for such further relief as the Court deems just and proper.

Motion To Dismiss

7.      The Omnibus Order requires each plaintiff to attach to every complaint served on each defendant, an exposure sheet which identifies "the date(s) of each exposure" and "the place of each exposure."  No exposure sheet identifying the date and place of each exposure for any individual plaintiff was filed in this case.  Therefore, in accordance with the express requirements of the Omnibus Order, 3M is entitled to a dismissal as to all plaintiffs.

8.      Moreover, the Omnibus Order requires each plaintiff to attach a completed "*forum*

*non conveniens*" form to every complaint served on each defendant. Plaintiffs failure to attach a completed *forum non conveniens* form entitles 3M to a dismissal as to each and every plaintiff.

WHEREFORE, Defendant, MINNESOTA MINING & MANUFACTURING COMPANY, respectfully requests the Court to enter an Order granting its motion to dismiss the complaint and for such further relief as the Court deems just and proper.

Respectfully submitted.

RICHMAN GREER WEIL BRUMBAUGH
MIRABITO & CHRISTENSEN, P.A.
Attorneys for Defendant 3M
Miami Center - 10th Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone (305) 373-4000

By: _____
JOHN M. BRUMBAUGH
Florida Bar No. 126350
MARK A. ROMANCE
Fla. Bar No. 021520

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served this ____ day of January, 1999 to David M. Lipman, David M. Lipman P.A., 5901 S.W. 74th Street, Suite 304, Miami, Florida 33143-5186.

_____
Mark A. Romance

I:\LIBRARY\ASBESTOS\LIPMAN\PLEADING\MOTDIS

(

IN THE CIRCUIT C(  .RT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 98-29638 CA 42

ROBERT ABBOTT, et al.,

                              Florida Bar No. 126350
                              Florida Bar No. 021520

      Plaintiffs,

v .

MINNESOTA MINING &
MANUFACTURING COMPANY, and
BABCOCK & WILCOX COMPANY,

      Defendants.
_____/

## NOTICE OF APPEARANCE

      THE CLERK of the above styled Court will please enter the Appearance of the law

firm of RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN, P.A., in this

case as counsel for the Defendant.

      WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this

19ᵀᴴ day of January, 1999, to  David M. Lipman, David M. Lipman P.A., 5901 S.W. 74th

Street, Suite 304, Miami, Florida 33143-5186.

                          RICHMAN GREER WEIL BRUMBAUGH
                          MIRABITO & CHRISTENSEN, P.A.
                          Attorneys for Defendant
                          Miami Center - 10th Floor
                          201 S. Biscayne Boulevard
                          Miami, Florida  33131-2305
                          Telephone: (305) 373-4000
                          Facsimile: (305) 373-4099

                          By: _____
                               JOHN M. BRUMBAUGH
                               MARK A. ROMANCE

## EXHIBIT "A"

1  ROBERT C. ABBOTT
2  RICHARD ACOSTA-GUERRERO and CLARA ACOSTA-GUERRERO, his wife
3  CHARLES ADAMS and BEULAH ADAMS, his wife
4  RAY ADAMS and SHERRY ADAMS, his wife
5  WILLIAM ADAMS
6  HAROLD ADAMSON and BARBARA ADAMSON, his wife
7  HOWARD ADELSKY
8  CARL ADKINS and VIVIAN ADKINS, his wife
9  GEORGE AGRESTA and RITA AGRESTA, his wife
10  GORDON AKERS and CAROLYN AKERS, his wife
11  JOHN AKERS and WILMA AKERS, his wife
12  SAMUEL ALAIMO and JOSEPHINE ALAIMO, his wife
13  MORRIS ALBAUM and GERTRUDE ALBAUM, his wife
14  FREDDIE ALDRIDGE and PATRICIA ALDRIDGE, his wife
15  BERNIS ALFORD and REBECCA ALFORD, his wife
16  GEORGE M. ALLEN
17  GEORGE E. ALLEN and MARTHA ALLEN, his wife
18  DOROTHY ALLEN and WOODROW ALLEN, her husband
19  WILLIAM ALLEN and SHIRLENE ALLEN, his wife
20  BIPIN ALMAULA and VICTORIA ALMAULA, his wife
21  JAMES ALTOSINO and MARIE ALTOSINO, his wife
22  PETER ALVAREZ and ADDIE ALVAREZ, his wife
23  CARL AMDUR
24  STEVEN AMISON
25  ETHEL AMSTER
26  WILLIAM ANDERSON and DOLORES ANDERSON, his wife
27  HOMER ARCHAMBEAULT
28  VINCENT ARCOMONE and CONCETTA ARCOMONE, his wife
29  SHIRLEY ARKIN
30  EDGAR ARLINE and GLORIA ARLINE, his wife
31  DEMETRIOUS ARMENAKIS and PATRICIA ARMENAKIS, his wife
32  EDWARD ARMSTRONG and ALICE ARMSTRONG, his wife
33  ARCHIE ARTHUR
34  WILLIAM ATKINS and DORIS ATKINS, his wife
35  LEONARD AUGUSTINE and JOAN AUGUSTINE, his wife
36  SAL AZZARETTO and JEAN AZZARETTO, his wife
37  MICHAEL BAILEY and LELIA MAE BAILEY, his wife
38  RAY BAILEY and LOUISE P. BAILEY, his wife
39  NELSON BAIR
40  HENRY BAKER and NORRIS BAKER, his wife
41  EARL BAKER and NORMA BAKER, his wife
42  EDWARD BAKER and KATHLEEN BAKER, his wife
43  CARL BAKER and MERCEDES BAKER, his wife
44  JOHN R. BALADO and MARTHA BALADO, his wife
45  CHARLES BALDWIN and BETTY BALDWIN, his wife
46  KEITH BALL and HELEN V. BALL, his wife
47  WILLIAM BALLMAN and ROSALIE BALLMAN, his wife
48  ROBERT E. BANQUER and SHIRLEY BANQUER, his wife
49  SALVATORE BARBERA and MARIE BARBERA, his wife
50  WILLIAM BARBUTO and IRENE BARBUTO, his wife
51  WESLEY BARKER
52  JAMES BARKLEY and LORINE BARKLEY, his wife

```
53   JAMES BARNCORD and SHIRLEY BARNCORD, his wife
54   CHARLES BARNHART
55   ISAAC BAROCAS and GERTRUDE BAROCAS, his wife
56   DAVID BARON and MILDRED BARON, his wife
57   JOACHIM BARTA and ELIZABETH BARTA, his wife
58   EDWARD BARUKSEN and TERESA BARUKSEN, his wife
59   EUGENE BASSETT and DOROTHY BASSETT, his wife
60   RICHARD BASSETT and ELIZABETH BASSETT, his wife
61   ALBERT BEATTY
62   GILBERT BEAUBIEN and DENISE BEAUBIEN, his wife
63   EDWARD BEAULIEU and DONNA BEAULIEU, his wife
64   ROY BEBEE and RACHEL BEBEE, his wife
65   OTTIS E. BECK and LENA BECK, his wife
66   NORVAL BEESON and EDITH BEESON, his wife
67   RAYMOND BEHRMAN and ESTELLE BEHRMAN, his wife
68   HAROLD BEHRMAN and VIRGINIA BEHRMAN, his wife
69   PETER BELANGER and ELEANOR BELANGER, his wife
70   OMER BELANGER
71   DALE BENDER and MARILYN BENDER, his wife
72   DONALD BENEDICT and MARJORIE BENEDICT, his wife
73   RAYMOND BENNETT and SHIRLEY BENNETT, his wife
74   CURTIS BENSON
75   FRANK BERAN and IRENE BERAN, his wife
76   JOHN BEREI and MARY BEREI, his wife
77   LARRY BERGE and BONITA BERGE, his wife
78   MORRIS BERK and SHIRLEY BERK, his wife
79   HARRY BERMAN and ANNA BERMAN, his wife
80   SOL BERMAN and SYLVIA BERMAN, his wife
81   SAM BERMAN and ANITA BERMAN, his wife
82   NORMAN BERNSTEIN and ANNE BERNSTEIN, his wife
83   MORRIS BERNSTEIN and ESTHER BERNSTEIN, his wife
84   PHILIP BERNSTEIN and CHARLOTTE BERNSTEIN, his wife
85   DANIEL BERRY and GUADALUPE BERRY, his wife
86   CHARLES BERRY and MARJORIE BERRY, his wife
87   JAMES BESENYEI
88   GORDON BEST and CINDY BEST, his wife
89   EMANUEL BEVITZ and ANN BEVITZ, his wife
90   MATTHEW BIENER and LILIAN BIENER, his wife
91   IRWIN BIER and EDITH BIER, his wife
92   BENJAMIN BIERMAN and ULDHI BIERMAN, his wife
93   WILLIAM BINGAMAN and LEORA BINGAMAN, his wife
94   RICHARD BISHOP and MARY BISHOP, his wife
95   CLAUDE H. BLACKBURN and BARBARA BLACKBURN, his wife
96   JAMES BLAINE and JUDITH BLAINE, his wife
97   JOHN BLAIR
98   FRED BLATCHLEY and LILLIAN BLATCHLEY, his wife
99   THOMAS BLAZIER and NANETTE BLAZIER, his wife
100  ROBERT BLAZIER and VIRGINIA BLAZIER, his wife
101  BENJAMIN BLOCK
102  LAWRENCE BLOCK and FELICIA BLOCK, his wife
103  FELICIA R. BLOCK and LAWRENCE BLOCK, his wife
104  IRVING BLOOM and ANNA BLOOM, his wife
105  JOSEPH BLUM and PHYLLIS BLUM, his wife
106  CARL BLUM and NETTIE BLUM, his wife
```

```
107  HERMAN BLUM and RUTH BLUM, his wife
108  SEYMOUR BOBROWSKY
109  KEN BOCK
110  ROBERT BOCKMAN and ELEANOR BOCKMAN, his wife
111  JOHN BOEHNER
112  EDWARD J. BOISVERT, JR. and RITA BOISVERT, JR., his wife
113  BRUCE BOLAND and WILMA BOLAND, his wife
114  GERALD BOLVIN
115  CLIFTON BOMBARD
116  GERALD BOMBARD and DOLORES BOMBARD, his wife
117  GELIO BOMPASTORE and MARY BOMPASTORE, his wife
118  WILLIAM BOND and FREDA BOND, his wife
119  AGOSTINO BONOMOLO and JUNE BONOMOLO, his wife
120  WILLIAM BOSTON
121  DAVID BOSWORTH
122  JOSE BOVEDA
123  WILLIAM BOWEN and MARTHA BOWEN, his wife
124  JOHN BOWEN and DELORES BOWEN, his wife
125  JAMES BOWLING  and JOY BOWLING, his wife
126  CHARLES BOWLING
127  WALTER BOYKO
128  EDWARD BRADESKU and GERALDINE BRADESKU, his wife
129  DUDLEY BRADSHAW and VERA BRADSHAW, his wife
130  RONALD BRADT and JUNE BRADT, his wife
131  DALE BRADY and HELENE BRADY, his wife
132  HARRY BRAHM and ELVIRA BRAHM, his wife
133  CHARLES BRAUN and MARILYN BRAUN, his wife
134  ROBERT BRAY
135  ALBERT BRAYSON and ANN BRAYSON, his wife
136  RALPH BREIER and RUTH BREIER, his wife
137  WILLIAM BRENNAN and MARGARET BRENNAN, his wife
138  WARREN BRENNESSEL and ROSA BRENNESSEL, his wife
139  MATTHEW BRESSLER and FLORENCE BRESSLER, his wife
140  JOHN BREWER and DORIS BREWER, his wife
141  DEWEY BREWTON, JR. and JACQUELINE BREWTON, JR., his wife
142  CLYDE BRIDGE and SHIRLEY BRIDGE, his wife
143  HOWARD BRINGMAN
144  GERALD BRISBOIS and JUDITH BRISBOIS, his wife
145  WESSEL BRODHEAD, JR and FAY BRODHEAD, JR, his wife
146  BENJAMIN BROOKS and CLAIR BROOKS, his wife
147  ARTHUR BROOKS
148  JOHN F. BROOKS and MELINDA BROOKS, his wife
149  ROBERT BROSEMER and LOIS BROSEMER, his wife
150  GEORGE BROSEMER and BETTY BROSEMER, his wife
151  EDWARD BROWN and DOROTHY BROWN, his wife
152  MICHAEL E. BROWN
153  ROBERT L. BROWN and JUNE BROWN, his wife
154  HAROLD BROWN
155  ALBERT J. BROWN and THERESE BROWN, his wife
156  GEORGE G. BROWN
157  CHARLES BRYANT
158  CHARLES BUBRIAK and HELEN BUBRIAK, his wife
159  HERMAN BUCKHALTER and HELEN BUCKHALTER, his wife
160  PAUL BUNTEN and RUTH BUNTEN, his wife
```

```
161   DAVID BURBANK and MALVENA BURBANK, his wife
162   EDWARD BURCHETTA and CATHERINE BURCHETTA, his wife
163   ORVILLE BURDO and ADELMA BURDO, his wife
164   ROBERT J. BURKE and DOROTHY BURKE, his wife
165   JAMES BURNETT and SHIRLEY BURNETT, his wife
166   ROBERT BURNS
167   ORVILL BURNS and DELORES BURNS, his wife
168   LEROY BURROW
169   DAVID BURTON and KATHERINE BURTON, his wife
170   DOTTY BURTON
171   ALEX BUSCH and DORIS BUSCH, his wife
172   MICHAEL BUSCIO and CAROLYNN BUSCIO, his wife
173   MILTON M. BUSH and MARILYN BUSH, his wife
174   HARRY R. BUSH and MARY BUSH, his wife
175   DON BUTCHER and JEAN M. BUTCHER, his wife
176   NOLEN BUTLER and IRENE BUTLER, his wife
177   CHARLES BUTTACAVOLI and BARBARA BUTTACAVOLI, his wife
178   THOMAS BYRNE and DIANE BYRNE, his wife
179   DEAN CADE and JUANITA CADE, his wife
180   HOWARD CADY and LOUISE CADY, his wife
181   ANTHONY CAFIERO and MARIE CAFIERO, his wife
182   CARL CALLENDER and CHRISTINA CALLENDER, his wife
183   ERNEST CALOBRISI and MARIE CALOBRISI, his wife
184   JAMES CAMERON and DOROTHY CAMERON, his wife
185   FRANK CAMP and DELORES CAMP, his wife
186   FRANK CAMPBELL and GLORIA CAMPBELL, his wife
187   JOHN CAMPBELL and MARGARET CAMPBELL, his wife
188   TIMOTHY CAMPBELL
189   DAVID CANADA and INEZ CANADA, his wife
190   FRANCIS CANTALOUPE and LEATHA CANTALOUPE, his wife
191   ROBERT CARD and JEAN CARD, his wife
192   KENNETH CARL
193   HENRY CARLEE and CHARLOTTE CARLEE, his wife
194   JAMES CARLISLE
195   BETTY CARMICHAEL
196   EMILIO CARRASQUILLO and DIANA CARRASQUILLO, his wife
197   JOSEPH CARRIERO and ALICE CARRIERO, his wife
198   MARCUS D. CARROLL and GERTRUDE CARROLL, his wife
199   HERBERT CARTER
200   WILBERT CARTER and THELMA CARTER, his wife
201   VINCENT CARTWRIGHT
202   HAROLD PETE CASSELL and LOIS CASSELL, his wife
203   CHARLES CASSELMAN and DONNA CASSELMAN, his wife
204   JOSEPH CASSIERE and MARY CASSIERE, his wife
205   JOHN CAUL and AGNES CAUL, his wife
206   TED EDWARD CHAMBERLAIN
207   HARRY CHANDLER
208   CHESTER CHAPMAN
209   BOBBY E. CHAPMAN
210   PAUL CHASE
211   FLOYD CHASE and EVA CHASE, his wife
212   MANUEL H. CHAVES and PATRICIA CHAVES, his wife
213   RICHARD CHENEY and PATRICIA CHENEY, his wife
214   LARRY CHESSER and BRENDA CHESSER, his wife
```

```
215  RAYMOND CHESTER and ELIZABETH CHESTER, his wife
216  EARL CHILDERS and ETHEL CHILDERS, his wife
217  HOMER CHILSON and BEVERLY CHILSON, his wife
218  MARTIN CHRISTIANO and ELIZABETH CHRISTIANO, his wife
219  ELIZABETH CHRISTIANO and MARTIN CHRISTIANO, his wife
220  ELTON CLARK and LICIA CLARK, his wife
221  GEORGE CLARK
222  HENRY CLARK and DORA FAYE CLARK, his wife
223  JOHN CLARK and SAINT ELMO CLARK, his wife
224  KENNETH CLARKE
225  PETER CLESCERE and LILLIAN CLESCERE, his wife
226  DONALD CLINE
227  ROBERT L. COATS
228  MC COFFIE and ELIZABETH COFFIE, his wife
229  ROBERT COFFIN
230  EDWARD COGUT and RUTH COGUT, his wife
231  BEN COHEN
232  IRVING J. COHEN and ELINOR COHEN, his wife
233  LEON COHEN and JUDITH COHEN, his wife
234  HARRY COHEN and EDNA COHEN, his wife
235  MELVIN COHEN
236  ABRAHAM COHEN and FRIEDA COHEN, his wife
237  RAYMOND COLE and BETTY JEAN COLE, his wife
238  DEAN COLLINSON
239  EDWARD COLOSIMO
240  JACK COLVIN and ELENOR COLVIN, his wife
241  VANGELIST COMPOLI and ALICE COMPOLI, his wife
242  JOSEPH CONA
243  ROBERT CONNELLY and PLASSIE CONNELLY, his wife
244  WILLIAM CONNELLY and ELAINE CONNELLY, his wife
245  EDWARD CONNOLLY and CAROLYN CONNOLLY, his wife
246  PETER CONNORS
247  CARL CONONICO and DONNA CONONICO, his wife
248  ADRIAN CONRAD and DOROTHY CONRAD, his wife
249  HARRY CONSOLAZIO
250  JAMES COOK and MAE COOK, his wife
251  WILLIAM COOK and ANN COOK, his wife
252  ISIDORE COOPER and PEARL COOPER, his wife
253  WILLIAM COOPER and NELDA COOPER, his wife
254  EDWARD COOPERMAN and ELAINE COOPERMAN, his wife
255  MILTON COOPERSMITH and EDNA COOPERSMITH, his wife
256  WILLIAM T. COPES and CATHERINE COPES, his wife
257  GAETANO CORSO and ANNE CORSO, his wife
258  JACK A. COSENTINO
259  BERNARD COURTNEY and WILMA COURTNEY, his wife
260  HARRY COX
261  JAMES COX and THELMA COX, his wife
262  MARION COX
263  DONALD CRAFT and PEGGY CRAFT, his wife
264  EUGENE F. CRAGLE and ESTHER CRAGLE, his wife
265  WILLIAM CRAIG and BARBARA CRAIG, his wife
266  CARL CRAIG and JUDY CRAIG, his wife
267  ROBERT CRANK and DORIS CRANK, his wife
268  FRANK CRAWFORD
```

```
269  WILLIAM CREAGER and RUTH CREAGER, his wife
270  RALPH CREECH and FRANCES CREECH, his wife
271  WILLIAM CREW and MARION CREW, his wife
272  RONALD CRISPINO
273  JOHN CRISPINO and MAE CRISPINO, his wife
274  MARVIN CROFOOT and KATHRYN CROFOOT, his wife
275  BILLY CROSS and CAROL ANN CROSS, his wife
276  LORENZO CROSS and ROBERTA CROSS, his wife
277  JAMES BRUCE CROUCH
278  WILLIAM CROW and SARAH CROW, his wife
279  WILLIAM CROWDER
280  ROBERT CUDNEY and PATRICIA CUDNEY, his wife
281  AMADA C. CUEVA and JOSE R. CUEVA, his wife
282  JOHN CULKIN and MARGARET CULKIN, his wife
283  MERLE CUPP
284  GEORGE CUSTER and MILDRED CUSTER, his wife
285  FRANK CUTANEO and DIANE CUTANEO, his wife
286  ARNOLD D'AMICO and MARY LOU D'AMICO, his wife
287  HAROLD D'AMICO
288  MICHAEL D'AMICO and MARIE D'AMICO, his wife
289  EDWARD DAME and RUTH DAME, his wife
290  PAUL DAVENPORT and ODELLA DAVENPORT, his wife
291  BENJAMIN DAVENPORT and RUEY DAVENPORT, his wife
292  LARRY DAVIES
293  ROBERT DAVIS and BERNICE DAVIS, his wife
294  MILTON DAVIS and ESTELLE DAVIS, his wife
295  HOMER D. DAVIS and PEGGY DAVIS, his wife
296  THOMAS L. DAVIS and HELEN C. DAVIS, his wife
297  JAMES DAWE and MARION DAWE, his wife
298  RICHARD DAWLEY and JEAN DAWLEY, his wife
299  STANLEY DAY and MARY DAY, his wife
300  PAUL DE CHENE and HELEN DE CHENE, his wife
301  FRANK DE CHRISTOFORRO and MARY DE CHRISTOFORRO, his wife
302  ROBERT C. DE COSMO and LUCILLE DE COSMO, his wife
303  JACK EDWIN DEAN
304  JAMES E. DEBRULAR and EDNA DEBRULAR, his wife
305  FRANKLIN DEEDS and RUTH JANE DEEDS, his wife
306  ANTHONY DEGENNARO and SANTA DEGENNARO, his wife
307  ROY DEHART and CYNTHIA DEHART, his wife
308  WILLIE B. DELANCY
309  WILLIAM DELLO BUONO and PATRICIA DELLO BUONO, his wife
310  CHARLES DELUCA and GENEVIEVE DELUCA, his wife
311  EDWARD DEMPSEY and MARGARET DEMPSEY, his wife
312  JOSEPH DERN
313  ROBERT DESIMONE and CONCETTA DESIMONE, his wife
314  BERNARD DEUTCHMAN and SANNA DEUTCHMAN, his wife
315  ROBERT DEVEAU and BARBARA DEVEAU, his wife
316  CARLOS DEVENDORF and MELODY DEVENDORF, his wife
317  CHARLES DI GRISTINE and JO ANN DI GRISTINE, his wife
318  GASPER DI MAIO
319  CECIL H. DIAL and JACQUELINE DIAL, his wife
320  DAVID DIAMOND and FLORA DIAMOND, his wife
321  RUSSELL DIBENEDETTO
322  ROY E. DICKERSON and THERESA DICKERSON, his wife
```

```
323   BILLY ROY DICKEY and SHIRLEY DICKEY, his wife
324   LEE DICKIE
325   HENRY DICKINSON
326   JACK DILLINGER
327   BASCOM DILLON and MAY F. DILLON, his wife
328   SALVATORE DIMEGLIO
329   CHARLES DINATALE and REBA DINATALE, his wife
330   JOSEPH DISALVO and ALBERTA DISALVO, his wife
331   FREDDIE DIXON
332   JAMES DOHERTY and ELIZABETH DOHERTY, his wife
333   TERRY DOLLY and CLARA DOLLY, his wife
334   SAMUEL DONOCOFF and BESS DONOCOFF, his wife
335   ROBERT DONOFRIO and KATHERINE DONOFRIO, his wife
336   EDWARD DORFMAN
337   JOSEPH DORR and ELEANOR DORR, his wife
338   CLAY DOUGLASS and JANIE DOUGLASS, his wife
339   CLARENCE DOWLING
340   KENNETH DOWNEY, JR. and FE A.  DOWNEY, JR., his wife
341   RICHARD DRISCOLL
342   MACK DRUCKMAN
343   HAROLD DRUCKMAN and FLORA DRUCKMAN, his wife
344   MEYER DUCORSKY
345   LEON DUFRESNE and MARY DUFRESNE, his wife
346   CHARLES DUGAN and LORRAINE DUGAN, his wife
347   LORRAINE DUGAN and CHARLES DUGAN, his wife
348   HENRY DUKAL and IRENE DUKAL, his wife
349   RENE DUMAS and CECILLE DUMAS, his wife
350   JACK DUNCAN and VELVA DUNCAN, his wife
351   DOYLE DUNN and DEBORAH DUNN, his wife
352   DOROTHY DUNNINGTON and THOMAS DUNNINGTON, his wife
353   GEORGE M. DUROVICK and LEONA DUROVICK, his wife
354   JOHN DURRENBERGER and ELAINE DURRENBERGER, his wife
355   OREST DURSO and GLORIA DURSO, his wife
356   JAMES DYBEVICK and JUDY DYBEVICK, his wife
357   WILLIAM EASTERS and PAMELA EASTERS, his wife
358   EVERETT EATON and DOREL EATON, his wife
359   FRED EBERHARDT
360   RICHARD ECK and ROSE ECK, his wife
361   HENRY EDWARDS and JOSEPHINE EDWARDS, his wife
362   SVEN EDWARDS
363   BRYAN ELLIOTT and CHRISTINA ELLIOTT, his wife
364   THOMAS ELLIOTT
365   JAMES ELLIOTT
366   DON ELLIS and MARY ELLIS, his wife
367   WILLIAM ELLISON
368   PAUL ELSBREE and BARBARA ELSBREE, his wife
369   JAMES ENGLISH and DOROTHY ENGLISH, his wife
370   JAMES EPLING and MARGARET EPLING, his wife
371   JACK EPSTEIN
372   JOHN ERAMO
373   ANTHONY ERVOLINO and LAURETTE ERVOLINO, his wife
374   EDWARD ESTES and CHARLENE ESTES, his wife
375   FRANK ETTER and LAURA ETTER, his wife
376   THOMAS EVANS and GERALDINE EVANS, his wife
```

```
377   EDWARD EVANS and RUTH EVANS, his wife
378   JOSEPH EVANTER and ANN EVANTER, his wife
379   PEARL LATTEA EWIG
380   CARMELO FAGLIO and ANN FAGLIO, his wife
381   THOMAS FALES and NANCY FALES, his wife
382   FRANK FALKOWSKI
383   THOMAS FALLON
384   LESTER FANT
385   GEORGE FARDY
386   THOMAS R. FARLEY and ROSEMARY FARLEY, his wife
387   RICHARD  FARNHAM
388   MARTIN FARRELL
389   HAROLD FASSETT and SALLY FASSETT, his wife
390   JOHN FAUBERT and SHIRLEY FAUBERT, his wife
391   BRIAN FEARON and MARY FEARON, his wife
392   SAM FEDER and LILLIAN FEDER, his wife
393   NAJEEBA FEIN-LAHAGE
394   ROBERT S. FENDER and MARIAN FENDER, his wife
395   CHARLES FENDLEY and LINDA FENDLEY, his wife
396   EDWARD R. FERGUSON and TERESA FERGUSON, his wife
397   ANTHONY FERRAIUOLO and ANTOINETTE FERRAIUOLO, his wife
398   ANGELO FERRIGNO and ADELAIDE FERRIGNO, his wife
399   ARTHUR FIELDING and DOROTHY FIELDING, his wife
400   LAWRENCE FIELDS and SHIRLEY FIELDS, his wife
401   CLELL FIELDS and DELORES FIELDS, his wife
402   NORMAN FINE and MYRA FINE, his wife
403   FRANCIS G. FINGER and JANE FINGER, his wife
404   JAMES FINLEY and MARY FINLEY, his wife
405   LOUIS FINNEY and MYRTLE FINNEY, his wife
406   JOSEPH FIORVANTE and MARIE FIORVANTE, his wife
407   JOHN FISCHER and RACHEL FISCHER, his wife
408   LESTER FISHER and ROSA FISHER, his wife
409   DONALD FISHER
410   JAMES FIX and BEVERLY FIX, his wife
411   JOHN FLAGG and DEBORAH FLAGG, his wife
412   JOHN FLANAGAN
413   JOSEPH FLOWERS
414   E.T. FLOYD and BOBBIE FLOYD, his wife
415   LOUIS FLYNN and PHYLLIS FLYNN, his wife
416   DERWYN FLYNN and  FRANCES FLYNN, his wife
417   JAMES  FLYNN  and MARY G. FLYNN, his wife
418   FRANK  FOGLIANO and JOYCE FOGLIANO, his wife
419   WALTER FORAN and MARJORIE FORAN, his wife
420   MICHAEL FORBES and MARY KAY FORBES, his wife
421   CHARLES FORD  and LOIS G. FORD, his wife
422   ROBERT FOREMAN and MARGARET FOREMAN, his wife
423   BIAGIO FORTUNATO and JEAN FORTUNATO, his wife
424   IRVING FOSTER and JANET FOSTER, his wife
425   CHARLIE FOSTER and TRISSA FOSTER, his wife
426   WILLIAM DON FOSTER
427   JOHN J. FOSTER
428   JAMES FOX and CECELIA FOX, his wife
429   MONROE FRALEY
430   DAVID  FRATTI and HELEN FRATTI, his wife
```

```
431  RICHARD FRAZIER and ROSE MARY FRAZIER, his wife
432  RONALD FREEMAN and PATRICIA FREEMAN, his wife
433  MELVIN FRENCH and PHYLLIS FRENCH, his wife
434  KENNETH FREY and SANDRA FREY, his wife
435  GEORGE FRIED and PEARL C. FRIED, his wife
436  HERBERT FRIED and SHIRLEY FRIED, his wife
437  MONROE FRIEDMAN and MILDRED FRIEDMAN, his wife
438  DAVID FRIEDMAN
439  TOBY FRIEDMAN and HARRY K. FRIEDMAN, his wife
440  RUDOLPH FRIES, JR.
441  SALVATORE FRISSORA and ANTOINETTE FRISSORA, his wife
442  RONALD FUNSTON and JOANNE FUNSTON, his wife
443  HARLAN FURBAY and RITA FURBAY, his wife
444  ALVIN GABLER and ANNE GABLER, his wife
445  ELI GAFFEN and DOROTHY GAFFEN, his wife
446  DANIEL GALLUCCI and MARIE GALLUCCI, his wife
447  GAETANO GANCI and JENNIE GANCI, his wife
448  WALLACE GARBER and MARY GARBER, his wife
449  WILLIAM GARELICK and MARTHA GARELICK, his wife
450  FRED GARNER and REIKO GARNER, his wife
451  PAUL S. GAST and ANETTE GAST, his wife
452  CHARLIE GATES and PEGGY GATES, his wife
453  WILLIAM GAUDIN
454  STANLEY GELBER and CELIA GELBER, his wife
455  LOUIS  GENENDLIS
456  PHILIP GENTHNER and BETTY GENTHNER, his wife
457  TRENTON GEORGE
458  CHARLES GEORGIA and FRANCES GEORGIA, his wife
469  LOUIS GERSON and HELGA GERSON, his wife
460  WALTER GETSEE and CAROLYN GETSEE, his wife
461  HARRY GEVERCER and SHIRLEY GEVERCER, his wife
462  ANTHONY GIAMBRONE and JANET GIAMBRONE, his wife
463  DAVID GIBBLE and SANDRA GIBBLE, his wife
464  JOHN GIDDENS
465  JAMES GILBERT and HELEN GILBERT, his wife
466  ROWLAND GILBERT and MARLENE GILBERT, his wife
467  JAMES GILLIS and VIRGINIA GILLIS, his wife
468  GERALD GILLIS and PATRICIA GILLIS, his wife
469  DAVID GILLIS and BOBBIE L. GILLIS, his wife
470  FRANCIS GILMARTIN and SANDRA GILMARTIN, his wife
471  CHRISTOPHER GIORDANO
472  B. MORTON GITTLIN and BERNICE GITTLIN, his wife
473  WILLIAM GLASS and LILIA GLASS, his wife
474  ARTHUR GLAWSON and EVELYN GLAWSON, his wife
475  WILBUR GLORE and EDNA GLORE, his wife
476  CHARLES GLORIT and RENEE GLORIT, his wife
477  EDWARD GOFF and CLAIRE M. GOFF, his wife
478  GERALD GOFFIN and ROSE GOFFIN, his wife
479  RUTH GOLDBERG
480  PHIL GOLDMAN and ROSE GOLDMAN, his wife
481  WILLIAM GOLDSTEIN and SYLVIA GOLDSTEIN, his wife
482  ARTHUR GONIA
483  AMOS GOODING and BETTY GOODING, his wife
484  L.J. GOODMAN
```

```
485   GOBLEY GOODRICH and HERMINIA GOODRICH, his wife
486   ALBERT GORLIN and SELMA GORLIN, his wife
487   GERALD GORMLEY and EVELYN GORMLEY, his wife
488   RALPH GORTON and SHIRLEY GORTON, his wife
489   JONAS GOSS and MARY GOSS, his wife
490   DAVID GOULD and SYLVIA GOULD, his wife
491   JIMMY GRACE and MYRIAM GRACE, his wife
492   JOHN GRANT and NORMA GRANT, his wife
493   ROBERT J. GRANT and MABEL GRANT, his wife
494   JAMES GRAVES
495   DAVID E. GREEN and SHIRLEE GREEN, his wife
496   FRANK H. GREEN
497   HERMAN GREENBERG and EVELYN GREENBERG, his wife
498   IRVING GREENBERG and IRENE GREENBERG, his wife
499   SIDNEY GREENSTEIN and LILLIAN GREENSTEIN, his wife
500   FRANK GRIMES and ELNORA GRIMES, his wife
501   COLMAN GROSS and SHIRLEY GROSS, his wife
502   ERNEST GROSSHANTEN
503   MORTON GRUTMAN and PATRICIA GRUTMAN, his wife
504   LEONARD GUERRIERO and PATRICIA GUERRIERO, his wife
505   EDWARD GUILLETTE and MARY GUILLETTE, his wife
506   CHARLES GULLION and MYLA GULLION, his wife
507   WOODROW GUNN and EVELYN GUNN, his wife
508   WOODROW GUNN and VICTORIA GUNN, his wife
509   BARNETT GUNN and JOANNA GUNN, his wife
510   ERNEST GUOAN and MADELINE GUOAN, his wife
511   WALLACE GUPTILL and DONNA GUPTILL, his wife
512   CHRISTY  GURTO and MARGARET GURTO, his wife
513   JESSE GUTIERREZ
514   HAROLD HACH and JANIS HACH, his wife
515   KENNETH HADDIX and VIVIAN HADDIX, his wife
516   BURTON HAIR and MARY JEAN HAIR, his wife
517   ELLSWORTH HALL and DOROTHY HALL, his wife
518   JOHN HALL and BETTY JEAN HALL, his wife
519   THURMAN HALL
520   ALVIN HALL and MARGARET HALL, his wife
521   JOSEPH HALLISEY and JUDITH HALLISEY, his wife
522   RAYMOND HALLOCK and JOAN HALLOCK, his wife
523   THOMAS HALTER and SARAH JANE HALTER, his wife
524   ROBERT HAMILTON and IDA HAMILTON, his wife
525   THOMAS C. HANCOCK
526   RICHARD HANLEY and RUTH HANLEY, his wife
527   DAVID HANSCOM and DORIS HANSCOM, his wife
528   ELWOOD HANSEL and ROSE HANSEL, his wife
529   H. ROBERT HANSEN and CONNIE HANSEN, his wife
530   FRANCES HAPPL and JACQUELINE HAPPL, his wife
531   JOE HARDING and MILDRED HARDING, his wife
532   HARRY HARDT and LILLIAN HARDT, his wife
533   JAMES HARPER and BEULAH HARPER, his wife
534   JAMES HARRIS and MICHELLE HARRIS, his wife
535   M.L. HARRIS and DORIS HARRIS, his wife
536   FLOYD HARRIS
537   JAMES J. HARRIS and ELIZABETH HARRIS, his wife
538   RICHARD R. HARRIS and VIRGINIA HARRIS, his wife
```

```
539  RAYMOND HARRISON and JOAN HARRISON, his wife
540  TIMOTHY HART
541  JAMES HARTLEY and CAROLYN HARTLEY, his wife
542  RONALD HATCH
543  ROBERT HATCH and SUSAN HATCH, his wife
544  JAMES HATFIELD and RUTH HATFIELD, his wife
545  WILFRED HAWKINS and HATTIE HAWKINS, his wife
546  WILLIAM HAYES and PATRICIA HAYES, his wife
547  ISADORE HECHT and DORA HECHT, his wife
548  EDMUND HEIB
549  EDWIN HEIN
550  CECIL HELMS and MILDRED HELMS, his wife
551  ROGER HENDERSON and THELMA HENDERSON, his wife
552  HYMAN HENDLER
553  CARROLL HENDRICKS and ALENE HENDRICKS, his wife
554  GLEN HENRIKSON and DOROTHY HENRIKSON, his wife
555  DONALD HENRIKSON
556  CHARLES HENZEL and PHYLLIS HENZEL, his wife
557  EDWIN HEPNER and DOROTHY HEPNER, his wife
558  WILLIAM HERBST and DOLORES HERBST, his wife
559  ROBERT HERNANDEZ and NANCY HERNANDEZ, his wife
560  CALVIN HERRING
561  JOHN HERROD and SHARON KAY HERROD, his wife
562  HERBERT HERTZEL
563  FRANKLIN HICKOX and KAREN HICKOX, his wife
564  JAMES HICKS
565  JAMES HIGGINBOTHAM
566  NORMAN HIGGINS and BARBARA HIGGINS, his wife
567  EUGENE HILL and HESTER HILL, his wife
568  RICHARD HILLGROVE and GLADYS HILLGROVE, his wife
569  HARRY HIRSCH and ELAINE HIRSCH, his wife
570  GARLEN HIVELY and THELMA HIVELY, his wife
571  JAMES HOAGLAND and ANNA HOAGLAND, his wife
572  HERBERT HOCHFELSEN and LILLIAN HOCHFELSEN, his wife
573  JOSEPH HOFFER and MAE HOFFER, his wife
574  MELVIN HOFFMAN
575  WALTER HOGAN
576  GARY HOLBROOK
577  GEORGE HOLLAND
578  EVERETT HOLLOWAY
579  ANTHONY HOLT and BRENDA HOLT, his wife
580  ARNOLD HONAKER and BRENDA HONAKER, his wife
581  EARL HOOKER
582  RAY HOOKER and CARRIE HOOKER, his wife
583  OLIVER HOOVER and ALICIA HOOVER, his wife
584  JOHN HOPKINS and ANNA HOPKINS, his wife
585  MILTON HORN and DORIS HORN, his wife
586  DORIS HORN and MILTON HORN, his wife
587  KENNETH HOSKINS and CAROL HOSKINS, his wife
588  HAROLD HOSTAK and LEONA HOSTAK, his wife
589  JOSEPH HOUWEN and DOLORES HOUWEN, his wife
590  JOHN HOUYOU and BARBARA HOUYOU, his wife
591  WILLIAM HUBEAUT
592  ROBERT HUDSON and MERCY HUDSON, his wife
```

```
593   THOMAS HUFF and DOLORES HUFF, his wife
594   RUSSELL HULST and LORRAINE HULST, his wife
595   DOROTHY HUNT
596   NORMAN HUNT
597   GORDON HURST and DONNA HURST, his wife
598   ROSE HUTCHEON and CHARLES HUTCHEON, his wife
599   EARL HUTCHINSON and RUBY HUTCHINSON, his wife
600   EVERETT HUTTER and MARIE HUTTER, his wife
601   WILEY HUTTO and VIOLET HUTTO, his wife
602   HAROLD HYDE and DOROTHY HYDE, his wife
603   ROBERT HYMAN and EDITH HYMAN, his wife
604   MORRIS HYMOWITZ
605   JOSEPH IANNIELLO and RAE IANNIELLO, his wife
606   RAE IANNIELLO  and JOSEPH IANNIELLO, his wife
607   GEORGE INTAGLIATA and HAZEL INTAGLIATA, his wife
608   CHARLES IRVIN and ALICE IRVIN, his wife
609   JAMES IRVIN and BETTY IRVIN, his wife
610   CALVIN  JACKSON
611   LEO JACOBS and ELSIE JACOBS, his wife
612   IRVING JACOBS and MILDRED JACOBS, his wife
613   DONALD JACOBS and ETHEL JACOBS, his wife
614   FREDERICK JAEGER and THERESA JAEGER, his wife
615   EUGENE JAEGER
616   NEIL JAHNKE and DOLORES JAHNKE, his wife
617   JOHN JAKUBISYN
618   DAVID JAMES and EFFIE JAMES, his wife
619   MICHAEL JARVIS and LORETTA JARVIS, his wife
620   KENNETH JARVIS and  DOROTHY JARVIS, his wife
621   RONALD JELLEY and CARLA JELLEY, his wife
622   DAVID JENKINS and BARBARA JENKINS, his wife
623   CECIL JENKINS and TERESA JENKINS, his wife
624   CHARLES DOYLE JENKINS and DIXIE JENKINS, his wife
625   ROY JENKINS and CAROL JENKINS, his wife
626   STANLEY JENKINS and DONNA J. JENKINS, his wife
627   JAMES JENNINGS and KATHRYN JENNINGS, his wife
628   DANNY JENTRY and JUANITA  JENTRY, his wife
629   FRANK JESSUP and JEANNETTE  JESSUP, his wife
630   RICHARD  JEWETT and JACQUELINE   JEWETT, his wife
631   FRANKLIN  JOHN
632   ALVIN JOHNSON and DOLORES JOHNSON, his wife
633   HENRY B. JOHNSON and LOYCE JOHNSON, his wife
634   JOHN   JOHNSON and BEVERLY JOHNSON, his wife
635   LANDO  JOHNSON and PATRICIA JOHNSON, his wife
636   HAVELYN JOHNSON and STELLA JOHNSON, his wife
637   KENNETH L.  JOHNSON and LIESELOTTE JOHNSON, his wife
638   KENNETH R.  JOHNSON and DONNA JOHNSON, his wife
639   HOWARD  JOINER and  DARLENE JOINER, his wife
640   ARMAND  JONCAS and THERESA JONCAS, his wife
641   RAYMOND  JONES and DARLENE JONES, his wife
642   CARL  JONES and MILDRED JONES, his wife
643   ROBERT JONES
644   WILLIAM JONES
645   DON C. JOSEPH
646   DICK KABOBJIAN and BETTY KABOBJIAN, his wife
```

```
647  GEORGE  KAEBLE and MARIA KAEBLE, his wife
648  RAMON KANTOR and MARILYN KANTOR, his wife
649  HOMER KARNES and MARTHA KARNES, his wife
650  HARRY KARP and BESSIE KARP, his wife
651  HYMAN KASTEN and RUTH KASTEN, his wife
652  MAX  KAUFMAN
653  WILLIAM  KAUFMAN and MARILYN  KAUFMAN, his wife
654  EDWARD A. KAUSEK
655  CHARLES  KAUTZ and JACQUELINE KAUTZ, his wife
656  IRVING  KAZER and LORRAINE KAZER, his wife
657  FRANK  KEAVENEY
658  EDMUND J. KEEFE
659  JOHN HOWARD KEEL
660  HERSHEL KEETH
661  PAUL KELLER and KATHERINE KELLER, his wife
662  DESMOND KELLY and CATHERINE KELLY, his wife
663  EDWARD KELLY and HELEN KELLY, his wife
664  FRANCISCO KELLY and ANGELICA KELLY, his wife
665  DONALD KENNEDY and JANICE KENNEDY, his wife
666  DAVID  KENNEDY
667  THOMAS KENNEDY and LILLIAN KENNEDY, his wife
668  GERALD KENNELLY and PHYLLIS KENNELLY, his wife
669  CARL KERNER and  NANCY KERNER, his wife
670  NATHAN KESSLER and SELMA KESSLER, his wife
671  EDWARD KING and FREDA KING, his wife
672  STEPHEN KING and DOROTHY KING, his wife
673  JOE KINNETT
674  KENNETH KINSER and CHARMANE KINSER, his wife
675  JOE KIRKHAM and MANDER KIRKHAM, his wife
676  DORRIS WAYNE KIRKPATRICK and CAROLINE  KIRKPATRICK, his wife
677  NELSON KLAGES and DOROTHY KLAGES, his wife
678  PAUL KLEEMAN and SHERYL  KLEEMAN, his wife
679  ALEX KLEIN and FAY KLEIN, his wife
680  WILLIAM KLEIN
681  RAYMOND KLIMA and CECILIA KLIMA, his wife
682  WILLIAM KLINGLER and AMELIA KLINGLER, his wife
683  PAUL KLOTZ and EILEEN KLOTZ, his wife
684  JIMMIE L. KNAPP
685  JERRY KNEER and SHIRLEY KNEER, his wife
686  EARL KNEPP and GRACE KNEPP, his wife
687  CHARLES KNESLEY and DOROTHY KNESLEY, his wife
688  DONALD KNIGHT and VICTORIA KNIGHT, his wife
689  WALLACE KNOWLES and HELEN KNOWLES, his wife
690  PHILLIP KOCLANES and LUCRETIA KOCLANES, his wife
691  ROBERT KORKOSKE and MECHELLE KORKOSKE, his wife
692  MATTHEW KOZIOL and EILEEN KOZIOL, his wife
693  GEORGE KRAM and ETHEL KRAM, his wife
694  LOUIS KRAMER
695  HARRY KRAMER
696  JOSEPH KRAS and DOLORES KRAS, his wife
697  LEONARD KRAUSE and MAE KRAUSE, his wife
698  HUGH KREAMER and MOLLIE KREAMER, his wife
699  PAUL KRECKEL
700  FRED KREISL and ALICE KREISL, his wife
```

```
701  MEYER KRIM and FREDA KRIM , his wife
702  JOSEPH KUBEA
703  WILLIAM KUKAL
704  JOHN KUMICICH and RUTH KUMICICH, his wife
705  MARY KURNIK
706  GEORGE KURTZ and IRENE KURTZ, his wife
707  PAUL KURUKIAN and GEORGETTE KURUKIAN, his wife
708  EMILE L'HEUREUX and IRENE L'HEUREUX, his wife
709  ERNEST LA CROIX
710  STEPHEN LADDEN
711  HARRY E. LAKE and EVA LAKE
712  ARTHUR LAKEY and TERRY LAKEY, his wife
713  JACK LANDIS and MILDRED LANDIS, his wife
714  MARIO LANDOLFI and HELEN LANDOLFI, his wife
715  WARREN LANE
716  ANNE LANGLEY and RICHARD LANGLEY, her husband
717  JOHN LANGOHR and MARJORIE LANGOHR, his wife
718  AUDORY LANIER and LILLY LANIER, his wife
719  ROBERT LANNON and GERTRUDE LANNON, his wife
720  RICHARD LARSON and DONNA LARSON, his wife
721  MARVIN LARVISON and DOROTHY LARVISON, his wife
722  ANTHONY LAURA and NATALIE LAURA, his wife
723  ALLEN LAURAIN
724  PEDRO LAURENCIO
725  RICHARD LAURVICK and MARION LAURVICK
726  FRANKLIN LAURY and DELORES  LAURY, his wife
727  NORMAN LAWSON and ROSEMARY LAWSON, his wife
728  HAROLD LAWTON and AMELIA LAWTON, his wife
729  ROBERT LAYTON and ALICE LAYTON, his wife
730  ALFRED LAZARZ and BARBARA LAZARZ, his wife
731  ELLERY LE PAIN and MARGARET LE PAIN, his wife
732  GUY LEDGERWOOD
733  ARDELLA LEE and JOHN LEE, her husband
734  GERALD LEIMAN and NORMA LEIMAN, his wife
735  ANDREW LEITCH
736  GERALD LEMOINE
737  THEODORE LEONARD
738  BERNARD LEONE
739  CHARLES LEPPLA  and ELIZABETH LEPPLA, his wife
740  THOMAS LESCHECK
741  HOWARD LESCHECK and MARION LESCHECK, his wife
742  SAMUEL LEVIN and ETHEL LEVIN, his wife
743  STANLEY LEVINE and FRANCES LEVINE, his wife
744  AARON LEVINE and PHYLISS LEVINE, his wife
745  NATHAN LEWIS
746  BEULAH LEWIS
747  BRENT LEWIS
748  DONALD LEWIS and CRYSTAL LEWIS, his wife
749  GEORGE LICHTLE
750  CHARLES LIDDELL
751  GEORGE LIGHT and LUCY LIGHT, his wife
752  ELIE LILLARD and WILLIE MAE LILLARD, his wife
753  LEO B. LIND and MARY LIND, his wife
754  DONALD LINDSEY and DEBRAH LINDSEY, his wife
```

```
755   NATHAN LINNELL and RITA LINNELL, his wife
756   SALVATORE LOBRACCO and ANGELA LOBRACCO, his wife
757   TOM LOBRACCO
758   LARRY LOFLEY and LINDA LOFLEY, his wife
759   WALTER LOFTUS
760   WILLARD LOGAN and WANDA LOGAN, his wife
761   CHARLES LOHMAN and RITA LOHMAN, his wife
762   RITA LOHMAN and CHARLES LOHMAN, her husband
763   NATE LOMBARDO and SARAH LOMBARDO, his wife
764   ROBERT S. LONG
765   GEORGE LONGO
766   EMERY LOOMIS
767   EUGENE LOSQUADRO and SUSAN LOSQUADRO, his wife
768   FRANK LOUDEN and GERALDINE LOUDEN, his wife
769   WILBUR LOVINGER
770   LAWRENCE LOWRY
771   GEORGE LUCAS and LIS LUCAS, his wife
772   WILLIAM LUCIER
773   HAROLD LUDKE and MARGARET LUDKE, his wife
774   PAUL LUENSER and ARLENE LUENSER, his wife
775   ROBERT LUNDIN and MARY LUNDIN, his wife
776   JAMES LUNSFORD and DORIS LUNSFORD, his wife
777   BOBBY REID LUQUIRE
778   BENJAMIN LYNCH and MARGIE LYNCH, his wife
779   JAMES LYNCH and ANNA LYNCH, his wife
780   MARGARET LYONS
781   JOHN F. MAC DONALD and ISABELLE MAC DONALD, his wife
782   WILBUR MACMILLAN and BARBARA MACMILLAN, his wife
783   CLIFFORD MACMORRIS and ROSEMARY MACMORRIS, his wife
784   BERNARD MADOVOY and GLADYS MADOVOY, his wife
785   WALTER MAGENHEIM  and SONDRA MAGENHEIM, his wife
786   ROBERT  MAGNO  and EILEEN MAGNO, his wife
787   PAUL  MAHLSTEDT and MILDRED MAHLSTEDT, his wife
788   DANIEL MAINE and MARGARET MAINE, his wife
789   ROBERT MAJESKI and CAROL MAJESKI, his wife
790   GENE MAJOR
791   GUSTAVE G. MALAT and RITA MALAT, his wife
792   BARBARA MALONEY
793   ARTHUR MANSFIELD and FLORENCE MANSFIELD, his wife
794   JAMES MANZONE and GUDRUN MANZONE, his wife
795   CARL MARCY
796   EMIL MARK
797   ARTHUR MARSH
798   J. RANDOLPH MARSHALL
799   HOWARD L. MARSHALL and JOAN MARSHALL, his wife
800   HAROLD A. MARTIN and JEANNE MARTIN, his wife
801   GEORGE MARTIN and WINIFRED MARTIN, his wife
802   STANLEY MARTIN and CAROLE MARTIN, his wife
803   ROBERT MARTIN III and JEAN MARTIN III, his wife
804   EUGENE MARTOCCIA and CHARLOTTE MARTOCCIA, his wife
805   LOUIS MASCOLO and  KATHY MASCOLO, his wife
806   JEFF MASON and  CORRINE MASON, his wife
807   RALPH MASSIMINO and FRANCES MASSIMINO, his wife
808   JOSEPH MASTRION and JOAN MASTRION, his wife
```

```
809  WILLIS MATHIS and JANET MATHIS, his wife
810  MICHAEL MATHIS
811  CHARLES MATHUS
812  CURTIS MAXWELL and CATHERINE MAXWELL, his wife
813  RONALD M. MAXWELL and JANICE MAXWELL, his wife
814  DAVID F. MC CLOUD
815  ELTON MCCALL and JOYCE MCCALL, his wife
816  ELTON MCCALL, JR.
817  JOSEPH MCCALLION
818  JOHN MCCARTHY JR. and ESTHER MCCARTHY , his wife
819  E.J. MCCORMICK
820  DAVID MCDOWELL and PEGGY MCDOWELL, his wife
821  DONALD MCGOWEN
822  WALTER MCKENNA and WILHEMINA MCKENNA, his wife
823  EMERSON MCKINLEY  and EDYTHE MCKINLEY, his wife
824  CHARLES MCLEAN
825  PERCY MCLEMORE
826  JAMES MCNULTY and JUDITH MCNULTY, his wife
827  WILLIAM MCRAE and CECELIA MCRAE, his wife
828  WALTER MEDDINGS
829  PETER MELE and  LAURA MELE, his wife
830  GEORGE MELSON  and MARY MELSON, his wife
831  MORRIS MELTZER and SARA MELTZER, his wife
832  ALVAN MENEELY and FRANCES MENEELY, his wife
833  ROBERT MENTER and LORRAINE MENTER, his wife
834  MARION MERCER and MALLIE MERCER, his wife
835  JOSEPH MERCIER and WHILHELMIN MERCIER, his wife
836  LOUIS MERMAN and ANNETTE MERMAN, his wife
837  JACK MERRITT and MARGIE MERRITT, his wife
838  EDWARD MESCHKOW and ELEANOR MESCHKOW, his wife
839  JOSE R. MESTRE and GAIL MESTRE, his wife
840  JOSEPH MEUSE and DELLA MEUSE, his wife
841  HENRY MEYER and GERTRUDE MEYER, his wife
842  DANIEL MEYER and KAREN MEYER, his wife
843  GERALD MEYERS and SYLVIA MEYERS, his wife
844  WALTER R. MEYERS and JEAN MEYERS, his wife
845  FRANK MIANO and CAROL MIANO, his wife
846  RUDOLPH MIGLIORE
847  REUBEN MILLER and EDITH MILLER, his wife
848  CARL O. MILLER and MILDRED MILLER, his wife
849  CHARLES MILLER
850  MARVIN MILSTEIN and LYNNE MILSTEIN, his wife
851  IRVING MINKIN and FLORENCE MINKIN, his wife
852  JOHN MINNICK and VELMA MINNICK, his wife
853  AUBREY MINOR
854  TONY MIRA and ADDY MIRA, his wife
855  ERNEST MIXON
856  EDWARD MOHR and INEZ MOHR, his wife
857  GERARD MOISE and CAROLE MOISE, his wife
858  GILBERT MOLL and CARMEN MOLL, his wife
859  JAMES MONIELLO
860  ROBERT MOODY and BEVERLY MOODY, his wife
861  NATHANIEL MOODY
862  RICHARD MORAN and MARIAN MORAN, his wife
```

```
863   NORMAN MOREAU and CLAIRE MOREAU, his wife
864   JOHN MORGAN and JANE MORGAN, his wife
865   HAZEL MORGAN and JAMES MORGAN, her husband
866   JOSEPH MORIN and BLANCHE MORIN, his wife
867   DAVID MORRIS and GLORIA MORRIS, his wife
868   R. V.  MORRISON and JEAN MORRISON, his wife
869   ROBERT MORRISON and ESTHER MORRISON, his wife
870   EDWARD MOSHER and JACQUELINE MOSHER, his wife
871   LEROY MOSLEY
872   WILLIAM MULL
873   DANIEL MULLINS
874   EDWARD MURPHY and HILDA MURPHY, his wife
875   GEORGE MYERS and RUTH MYERS, his wife
876   DANNY MYERS
877   ROBERT M. MYERS
878   RONALD NAGUCKI and SANDRA NAGUCKI, his wife
879   ROBERT NANKIN and GERALDINE NANKIN, his wife
880   JOHN NARVID and JEAN NARVID, his wife
881   WILLIAM  NASE and BARBARA NASE, his wife
882   CHARLES NELSON and BEVERLY NELSON, his wife
883   OSCAR NEUWIRTH and MURIEL NEUWIRTH, his wife
884   STANLEY NEWBORN and SONIA NEWBORN, his wife
885   CHARLES NEWBY and KARLA NEWBY, his wife
886   GERALD NICHOLS and JANET NICHOLS, his wife
887   ROBERT NICHOLSON
888   HILLARD NICKELL and MARY L. NICKELL, his wife
889   JAMES NICOL and MARGARET NICOL, his wife
890   ROBERT NIGRO
891   HAROLD NOE and DOLORES NOE, his wife
892   DOUGLAS NOECKER
893   MICHAEL NORCIA and ANNETTE NORCIA, his wife
894   JOSEPH NOSTHEIDE
895   ROCCO NOTOFRANCO and ELIZABETH NOTOFRANCO, his wife
896   LUTHER NOTZELMAN
897   JOHN NOVAK and ALICE NOVAK, his wife
898   CHARLES NOVY and CLAIRE NOVY, his wife
899   KENNETH NUCHOLS and MARY NUCHOLS, his wife
900   RAYMOND NUNLEY and DOROTHY NUNLEY, his wife
901   ELIAS NUNLEY and DOROTHY NUNLEY, his wife
902   WILLIAM  NUTT and KATHLEEN NUTT, his wife
903   JAMES O'BRIEN and WANDA O'BRIEN, his wife
904   JOHN T. O'CONNOR and MARILYN O'CONNOR, his wife
905   MATTHEW O'MALLEY and JOYCE O'MALLEY, his wife
906   FRANK O'NEIL and PEGGY O'NEIL, his wife
907   JAMES O'NEILL and BONNIE O'NEILL, his wife
908   JEROME O'STEEN and NORMA O'STEEN, his wife
909   HENRY OAKLANDER and CLARA OAKLANDER, his wife
910   ALLEN R. OAKS and JESSIE OAKS, his wife
911   THOMAS OFFRET and KATHERINE OFFRET, his wife
912   FRANK OFFUTT
913   CRAIG OGBURN
914   JOHN OLSEN
915   ROBERT OLSON and HELEN OLSON, his wife
916   PAULINE ORBER and IRVING ORBER, her husband
```

```
917   STEPHAN ORLICK and PHYLLIS ORLICK, his wife
918   JOHN OROS
919   ARBIT OSBORNE
920   EDWARD OSTRANDER
921   STARLEY OTERI
922   GEORGE OUTTEN and SUZANNE OUTTEN, his wife
923   FRANK C. PABON and THANIA PABON, his wife
924   PETER PACE
925   GEORGE PACURIAN
926   CARL PADAVICK and DOROTHY PADAVICK, his wife
927   DEBORA ANN PAINO and BART PAINO, her husband
928   BARTHOLOMEW PAINO and DEBORA PAINO, his wife
929   ISAAC PALMER and ETHEL PALMER, his wife
930   ROBERT PANKUCH
931   ELLIS PAONESSA and JEAN PAONESSA, his wife
932   JEAN PAONESSA and ELLIS PAONESSA, her husband
933   CHARLES PAQUETTE and DOROTHY PAQUETTE, his wife
934   BONNIE PARKHURST
935   HIRAM PARNELL
936   ARTHUR PARSONS and PEARL PARSONS, his wife
937   NORMAN PARTLOW and DORIS PARTLOW, his wife
938   JOHN PASQUINO and SARANN PASQUINO, his wife
939   HARRY PASSALES and MARIE PASSALES, his wife
940   GEORGE PASTOLOVE and ANNE PASTOLOVE, his wife
941   LAWRENCE PATRYAS
942   JAMES PATTERSON and CALISTA PATTERSON, his wife
943   WILLIAM L. PATTERSON and GEORGINA PATTERSON, his wife
944   BILLY PATTON and ELIZABETH PATTON, his wife
945   SAUL PAUL and ISABELLE PAUL, his wife
946   ROGER PAULMENO
947   PURNELL F. PAYNE and NELMA PAYNE, his wife
948   LAWRENCE PECK
949   LUCIEN PELLETIER and RUTH PELLETIER, his wife
950   BERNARD PELSINGER and MOLLIE PELSINGER, his wife
951   RAYMOND PEREZ and JUSTA PEREZ, his wife
952   JOSEPH PERRERA and MILLIE PERRERA, his wife
953   BENJAMIN PERRONE and CONNIE PERRONE, his wife
954   ANTHONY PERROTTO and MARION PERROTTO, his wife
955   ROBERT PERRY
956   CAESAR PERUZZI
957   CHESTER PESTA and HELEN PESTA, his wife
958   EDWIN PETERSEN
959   RONALD PETRACCA
960   DONALD PHILIPP and JANET PHILIPP, his wife
961   JOSEPH PHILLIPS and EDNA PHILLIPS, his wife
962   CHARLES PHIPPS and OLIE PHIPPS, his wife
963   JACK PHIPPS and FRANCES PHIPPS, his wife
964   NICHOLAS PICARDI
965   RICHARD PICKOVER
966   FRANCIS PIERCY
967   PAUL PIERSON and JOSEPHINE PIERSON, his wife
968   HENRY S. PIERSON, JR.
969   HARRY PINCUS and BARBARA PINCUS, his wife
970   GAETANO PISANO
```

```
971   SAMUEL PITTARO and  EVELYN PITTARO, his wife
972   CHARLES PLANKEY and MARY PLANKEY, his wife
973   MOE PLUSCH and JENNIE PLUSCH, his wife
974   LEONARD PODBER
975   WILLIAM M. POHLMANN and DAISY R. POHLMANN, his wife
976   ROBERT POLA
977   MICHAEL POLICASTRO and MARIA POLICASTRO, his wife
978   VIRGIL PONZOLI and CATHERINE PONZOLI, his wife
979   ROGER POPE
980   EVO JOSEPH PORFIRI and LILIANA PORFIRI, his wife
981   AUSTIN PORFIRI and VERA PORFIRI, his wife
982   RALPH PORTER and LYNETTE PORTER, his wife
983   EUGENE PORTO and ROSE PORTO, his wife
984   PHILIP POVELL and SHIRLEY POVELL, his wife
985   HAROLD POWELL and GAILE POWELL, his wife
986   TRAVIS POWELL
987   DAVID PRATHER
988   JOHN PREDKO and BETTY PREDKO, his wife
989   DOLORES PRESCOTT and GEORGE PRESCOTT, his wife
990   WILBERT PRESTON
991   EUGENE PRICE and ELIZABETH PRICE, his wife
992   WILLIAM PRICE and ELSIE PRICE, his wife
993   RAYMOND PUGLIESE and ELEANOR PUGLIESE, his wife
994   JAMES PUNGELLO and LUCY PUNGELLO, his wife
995   JOHN PUSKARICH and MARY PUSKARICH, his wife
996   IRVING QUINT and RUTH QUINT, his wife
997   VICTOR RACKO and JUDITH RACKO, his wife
998   STANLEY A. RADZILOWSKI and CATHERINE RADZILOWSKI, his wife
999   ROBERT RAINEY and LEONA RAINEY, his wife
1000  JACKSON RAMESWARI and AMMANA RAMESWARI, his wife
1001  PHILIP RAMSAY and LOUISE RAMSAY, his wife
1002  ROY RANDALL and ALMA RANDALL, his wife
1003  BENJAMIN RAPHAEL and BEVERLY RAPHAEL, his wife
1004  JERRY RASH and JAN RASH, his wife
1005  HENRY READ and DELORIS READ, his wife
1006  LAWRENCE REDDICK and JOSEPHINE REDDICK, his wife
1007  ALLAN REED
1008  JERRY REED
1009  ALAN REGAN and LINDA J. REGAN, his wife
1010  SIDNEY REINSTEIN and IRENE REINSTEIN, his wife
1011  LANETH RENTZ and JUANITA RENTZ, his wife
1012  SALVATORE REO and RITA REO, his wife
1013  MORRIS REUBEN and ROSE REUBEN, his wife
1014  JULIAN RHODES and RACHEL RHODES, his wife
1015  THOMAS RICH and ELIZABETH RICH, his wife
1016  ROY RICHARDSON
1017  HUBERT RILEY and DAWN RILEY, his wife
1018  CLARENCE L. RILL and MABLE MAY RILL, his wife
1019  WILLIAM RITCH and MAUREEN RITCH, his wife
1020  WILLIAM V. ROBERTS
1021  WELCOME ROBERTSON
1022  MARION ROBERTSON and MARGIE ROBERTSON, his wife
1023  DAVID ROBINSON and GENORA ROBINSON, his wife
1024  CLAGET ROBINSON
```

```
1025  ROGER ROBITAILLE and MARCELLE ROBITAILLE, his wife
1026  GLEN RODDEL and VICTORIA RODDEL, his wife
1027  BILLY RODEN and NELLIE RODEN, his wife
1028  CARLOS RODRIGUEZ
1029  WILLIAM ROGERS and ROSE MARIE ROGERS, his wife
1030  CORTNEY B. ROGERS and JUANITA ROGERS, his wife
1031  GERARD ROMANO and ROSALIE ROMANO, his wife
1032  A. JOHN ROMANUS and ALICE ROMANUS, his wife
1033  ALICE ROMANUS and A. JOHN ROMANUS, her husband
1034  MARTIN ROPPOLO and JEAN ROPPOLO, his wife
1035  HORACIO ROSALES and WILMA ROSALES, his wife
1036  DONALD ROSENBERGER
1037  MANNIE ROSOFSKY and MOLLIE ROSOFSKY, his wife
1038  JOHN ROSS and VIRGINIA ROSS, his wife
1039  JAMES ROTH and RAE ROTH, his wife
1040  SAMUEL ROTHBERG and EDYTHE ROTHBERG, his wife
1041  MELVIN ROTHSTEIN and DOROTHY ROTHSTEIN, his wife
1042  BLAIR ROWE and CHARLETTE ROWE, his wife
1043  GLEN ROWE and DARLENE ROWE, his wife
1044  JOHN V. ROWELL and MARGARET ROWELL, his wife
1045  WALTER ROWLES, JR.
1046  JAMES RUBBELKE and IRENE RUBBELKE, his wife
1047  MILTON RUBIN and ESTELLE RUBIN, his wife
1048  CHARLES M. RUMFOLA and ROSE M. RUMFOLA, his wife
1049  FRANK RUSSELL
1050  DAVID RUTTENBERG and DORIS RUTTENBERG, his wife
1051  DONALD SALTER and NANCY SALTER, his wife
1052  ALBERT SAMMELIAN and YVONNE SAMMELIAN, his wife
1053  ANTHONY SAMPOGNA
1054  DAVID SANDLER and GLORIA SANDLER, his wife
1055  EUGENE SANFORD and OPAL SANFORD, his wife
1056  ALFRED SANGER
1057  JOSE SANTANA and BERTHA SANTANA, his wife
1058  MARVIN SAUNDERS and RITA SAUNDERS, his wife
1059  ARTHUR SAVITZ and PEARL SAVITZ, his wife
1060  RAYMOND SCALA
1061  ANTOINETTE SCARPATI and ANTHONY SCARPATI, his wife
1062  HYMAN SCHAFFER and ELAINE SCHAFFER, his wife
1063  GEORGE SCHAFFRATH and NANCY SCHAFFRATH, his wife
1064  HARVEY SCHALK and DELLA SCHALK, his wife
1065  NORMAN SCHEID
1066  PAUL SCHIEBLER and MARILYN SCHIEBLER, his wife
1067  RAYMOND SCHINDEL and ELLA SCHINDEL, his wife
1068  WILLIAM SCHLANGER and GLORIA SCHLANGER, his wife
1069  MURRAY SCHLUSSEL
1070  WALTER SCHMEICHEL and GERALDINE SCHMEICHEL, his wife
1071  WILLIAM SCHNEIDER and CAROLYN SCHNEIDER, his wife
1072  FRANK SCHRAML and EILEEN SCHRAML, his wife
1073  JACOB SCHUMAN and HELEN SCHUMAN, his wife
1074  MARCUS SCHWARTZ and JUNE SCHWARTZ, his wife
1075  NORMAN SCHWEIZER and PATRICIA SCHWEIZER, his wife
1076  ROBERT A. SCOTT and MARIAN SCOTT, his wife
1077  JOSEPH SCULLY and GENEVIEVE SCULLY, his wife
1078  FRED SCURLOCK  and ELEANOR SCURLOCK, his wife
```

```
1079  MIKAL SEGLEM and MARY SEGLEM, his wife
1080  ROBERT SEIBERT and HELEN SEIBERT, his wife
1081  EUGENE SEIDULE and JOAN SEIDULE, his wife
1082  PAUL SELLERS and PEGGY SELLERS, his wife
1083  JOHN SELLERS and GLENDA SELLERS, his wife
1084  JOSEPH SEMBLER and MARIE C. SEMBLER, his wife
1085  ROBERT SEMPSEY and ALICE SEMPSEY, his wife
1086  PHILIP SENGER
1087  DANIEL SENTERS and KAREN SENTERS, his wife
1088  WILLIAM SETON, JR. and JEWEL SETON, his wife
1089  THEODORE SHARP  and BERTHA SHARP, his wife
1090  HARRY SHARPLESS and MARJORIE SHARPLESS, his wife
1091  WINTHROP SHAW and DINA C. SHAW, his wife
1092  RONALD SHEARS
1093  WILLIAM SHEEHAN
1094  IRA SHEINHEIT and GEORGINA SHEINHEIT, his wife
1095  GEORGE SHEPKE and NANCY SHEPKE, his wife
1096  RAYMOND SHEPPARD and NORMA JEAN SHEPPARD, his wife
1097  GEORGE SHERBO
1098  GENE SHROCK
1099  ROBERT SIEBERT and HELEN SIEBERT, his wife
1100  HERMAN SIEGEL and SHIRLEY SIEGEL, his wife
1101  NAT SILVER and PEARL SILVER, his wife
1102  SIDNEY SILVERMAN and JOSEPHINE SILVERMAN, his wife
1103  MELVIN SIME and ELINOR SIME, his wife
1104  MICHAEL SIMONE and ANN SIMONE, his wife
1105  ARTHUR SIMONE and JOSEPHINE SIMONE, his wife
1106  DAVID SIMONSON and JOAN SIMONSON, his wife
1107  ROSS SIMPSON  and LILLIAN SIMPSON, his wife
1108  LAURENCE SIMPSON
1109  FREDDIE R. SIMS and ROSANNA SIMS, his wife
1110  EARL SIMS and DORIS SIMS, his wife
1111  WALTER SINGER and PATRICIA SINGER, his wife
1112  TERRY SKAGGS
1113  MARION SKAGGS
1114  MATTHEW SKAPIK
1115  VERNON SKAUG and MARY J. SKAUG, his wife
1116  IRWIN SKLAR and MARLENE SKLAR, his wife
1117  THOMAS SMELSER and MARY SMELSER, his wife
1118  HARRY SMILES  and THERESA SMILES, his wife
1119  BART G. SMILEY and LORETTA SMILEY, his wife
1120  LORETTA SMILEY and BART SMILEY, his wife
1121  HENRY SMITH and PATRICIA SMITH, his wife
1122  LOREN SMITH and DOROTHY SMITH, his wife
1123  GEORGE SMITH and GRACE SMITH, his wife
1124  GEORGE C. SMITH and DORIS SMITH, his wife
1125  HAROLD SMITH
1126  KATHERINE SMITH and DALE SMITH, his wife
1127  WALTER SMITH
1128  MAYLON SMITH
1129  EDWIN SMITH and MARTHA SMITH, his wife
1130  ROBERT E. SMITH and OPAL SMITH, his wife
1131  MYRON SMITH and BEVERLY SMITH, his wife
1132  EMORY SNELL, SR. and MADIE SNELL, SR., his wife
```

```
1133  JOHN SNIPES and MAMIE SNIPES, his wife
1134  MELVIN SNYDER and SUSAN SNYDER, his wife
1135  KENNETH SNYDER and SUE SNYDER, his wife
1136  CHARLES SORRENTO and JULIA SORRENTO, his wife
1137  RAUL SOTO and LUCILLE SOTO, his wife
1138  MANUEL SOUZA and DOROTHY SOUZA, his wife
1139  BEN SPANGLER
1140  HAROLD SPEARS and GLENNA SPEARS, his wife
1141  ROBERT SPENCE and GERTRUDE SPENCE, his wife
1142  JOSEPH SPILLANE and MYRNA SPILLANE, his wife
1143  CARL SPINNEY and DORIS SPINNEY, his wife
1144  MAYER SPIRO and JEANNETTE SPIRO, his wife
1145  HENRY SPONHEIMER
1146  HAROLD SPRINGER and RUTH SPRINGER, his wife
1147  WILLIAM SQUIRE and JEAN SQUIRE, his wife
1148  ANTHONY STACHEWICZ and JOANNE STACHEWICZ, his wife
1149  ED STARNES and GRACIE STARNES, his wife
1150  FOSTER STEELE and JOANN STEELE, his wife
1151  WILLIAM STEIN and MARY STEIN, his wife
1152  JEROME STEIN and JEANETTE STEIN, his wife
1153  LEO STEINBERG
1154  WILLIAM STEINER and WILMA STEINER, his wife
1155  WILMA STEINER and WILLIAM STEINER, his wife
1156  SOLOMON STEINHOFF and FLORENCE STEINHOFF, his wife
1157  THOMAS STEINRUCK and JEAN STEINRUCK, his wife
1158  RONALD STEPHENS and FREDA STEPHENS, his wife
1159  CARL D. STEPHENS and MARTHA STEPHENS, his wife
1160  BLISS STEVENS and DORIS STEVENS, his wife
1161  HOWSON STEVENS and AILEEN STEVENS, his wife
1162  EDWARD STEVENS and ELIZABETH STEVENS, his wife
1163  ROBERT STOCKER and ALICE STOCKER, his wife
1164  ANDREW STOLTZ  and THERESA STOLTZ, his wife
1165  ROBERT L. STONE and JUANITA STONE, his wife
1166  HAROLD STORMS and VANNA STORMS, his wife
1167  ROBERT STORMS and EVELYN STORMS, his wife
1168  CLAYTON STRANGE and JANET STRANGE, his wife
1169  IRVING STREICH and HELEN STREICH, his wife
1170  EDGAR STUART
1171  RUSSELL STUPIA
1172  JAMES STYLES and RUTH STYLES, his wife
1173  JOHN B. SUGG and EMILY SUGG, his wife
1174  JAMES D. SUMMERLOT
1175  MELVIN SUSSMAN and BARBARA SUSSMAN, his wife
1176  PAUL SUTO and ALICE SUTO, his wife
1177  ELEANOR TARR and MALCOLM TARR, his wife
1178  EDWARD TARTAL and BARBARA TARTAL, his wife
1179  ALONZO TAYLOR and AUGUSTINE TAYLOR, his wife
1180  ERNEST TAYLOR
1181  JOSEPH TAYLOR and BETTY TAYLOR, his wife
1182  ROBERT TEDDER
1183  DAVID TEITLER and ETHEL TEITLER, his wife
1184  LAWRENCE TEMPLETON
1185  THOMAS TENNIS and PATRICIA TENNIS, his wife
1186  DEL TERHUNE and MARLENE TERHUNE, his wife
```

```
1187  PAUL THACKER and PATRICIA THACKER, his wife
1188  WARREN THECKSTON and JACQUELINE THECKSTON, his wife
1189  LAWRENCE THERIAULT and RITA THERIAULT, his wife
1190  LOUIS THIEL and DOLORES THIEL, his wife
1191  JONNI THOLE and MARY THOLE, his wife
1192  JUDD THOMAN and EVELYN THOMAN, his wife
1193  ALBERT THOMAS
1194  GEORGE THOMAS and MYRTLE THOMAS
1195  JOHN M. THOMAS
1196  RONALD THOMAS and BONNIE THOMAS, his wife
1197  OZZIE THOMPSON and NELLIE THOMPSON, his wife
1198  ALVIN THOMPSON and W. ELAINE THOMPSON, his wife
1199  JOHN THOMPSON and ANNETTE THOMPSON, his wife
1200  BILLY THRASHER
1201  ALBERT THWEATT and LINDA THWEATT, his wife
1202  MILTON TIEGER
1203  IRA TILLMAN and GLADYS TILLMAN, his wife
1204  CHARLES TISMAN and DORA TISMAN, his wife
1205  THOMAS TOBIN and PEGGY TOBIN, his wife
1206  ALFONSO TOMBO
1207  STEPHEN TORCHIA and PATRICIA TORCHIA, his wife
1208  ROBERT S. TRACEY and HILMA TRACEY, his wife
1209  RAYMOND D. TRAVER and ANN TRAVER, his wife
1210  EUGENE TRAVIS and SHIRLEY TRAVIS, his wife
1211  NICK TREKAL and ELSIE TREKAL, his wife
1212  LOUIS TREMBLAY and MARIE TREMBLAY, his wife
1213  EARL TRIBOU
1214  RUTH TRIMBLE and ROBERT TRIMBLE, his wife
1215  ROBERT TRIMBLE, JR. and VIRGINIA TRIMBLE, his wife
1216  PAT TROCCI and BILLIE TROCCI, his wife
1217  DAN TROY
1218  JOHN TUCHSEN and FELICITAS TUCHSEN, his wife
1219  CLYDE TUCKER and MARION TUCKER, his wife
1220  JOSEPH TYLER
1221  ARTHUR UDEM and JUDITH UDEM, his wife
1222  GREGORY UFF and HELEN UFF, his wife
1223  LEWIS UHLMAN and SANDRA UHLMAN, his wife
1224  JAMES UNDERWOOD and RUBY UNDERWOOD, his wife
1225  PAT URSOMANNO and E.V. URSOMANNO, his wife
1226  BERNARD VALDESI
1227  JOSEPH VALENTINE and DEANNA VALENTINE, his wife
1228  NICHOLAS VALENZANO and CAMILLE VALENZANO, his wife
1229  JAMES VAN EXEL and CAROL VAN EXEL, his wife
1230  GEORGE VANCE and PEGGY VANCE, his wife
1231  VIRGIE VANDER and ATLAS VANDER, her husband
1232  ATLAS VANDER and VIRGIE VANDER, his wife
1233  LESLIE VARLEY and BEVERLY VARLEY, his wife
1234  PAUL VATER and JUANITA VATER, his wife
1235  HAROLD VAUGHAN and JOSEPHINE VAUGHAN, his wife
1236  JOSE VAZQUEZ
1237  JOSEPH VENDE
1238  DOMINIC VENDITTI and MARY VENDITTI, his wife
1239  HERBERT VERNON
1240  EDWARD VERVANE
```

```
1241   ROBERT C. VICKERY and ELEANOR VICKERY, his wife
1242   NATHAN VOGEL and BEATRICE VOGEL, his wife
1243   GLENN VOGELZANG and PAMELLA OGELZANG, his wife
1244   FREDERICK WAGENER and KATHRYN WAGENER, his wife
1245   MICHAEL WAGNER and PARRIE WAGNER, his wife
1246   JOSEPH WAJDA and SOPHIA WAJDA, his wife
1247   BERNARD WALKER and HELEN WALKER, his wife
1248   RONALD WALLING and BARBARA WALLING, his wife
1249   THOMAS WALTERS
1250   EARNEST WARD and JOHNNETTA WARD, his wife
1251   GREG WARNER
1252   PAUL WARNER
1253   MARION WARREN
1254   WHITNEY WARREN and JANE WARREN, his wife
1255   ROBERT E. WATSON and INEZ WATSON, his wife
1256   JOHN WAUGH
1257   ROBERT T. WEBB and CAROL WEBB, his wife
1258   ROBERT WECHTEL and GERTRUDE WECHTEL, his wife
1259   BARNEY WEIN and SOPHIE WEIN, his wife
1260   DAVID WEINBERG and SOPHIE WEINBERG, his wife
1261   PHILIP WEINER and MARY WEINER, his wife
1262   SAMUEL WEINSTEIN and ROSE WEINSTEIN, his wife
1263   SIMON WEINSTEIN and DELLAS WEINSTEIN, his wife
1264   MILTON WEISER and SHERRY WEISER, his wife
1265   MONROE WEISER
1266   MAURICE WEISMAN and NORMA WEISMAN, his wife
1267   LEONARD WEISS and LAURA WEISS, his wife
1268   FRED WEITHORN and ROSE WEITHORN, his wife
1269   RONALD WENDELL and DONNA WENDELL, his wife
1270   JACK WENTZELL
1271   DONALD WHEELER and BILLIE WHEELER, his wife
1272   JULIUS WHITE
1273   WALTER WHITE and BETTY WHITE, his wife
1274   ALVIN  WHITE and PEARLINE WHITE, his wife
1275   HAROLD WHITE and KATHRYN WHITE, his wife
1276   LEWIS WHITE and ELLA WHITE, his wife
1277   DONALD WHITTEN
1278   CHARLOTTE WIDMER
1279   LEONARD WIESSNER and IDA WIESSNER, his wife
1280   ROBERT WILDRICK and FLORENCE WILDRICK, his wife
1281   DON WILKES and JANET WILKES, his wife
1282   BERTRAND F. WILLHELM and ELNORA WILLHELM, his wife
1283   HARRY WILLIAMS and JANE WILLIAMS, his wife
1284   HAYWOOD WILLIAMS and KATHRYN WILLIAMS, his wife
1285   HOWARD WILLIAMS
1286   LEROY A. WILLIAMS and ROBERTA WILLIAMS, his wife
1287   LEROY C. WILLIAMS
1288   FREDERICK WILLS  and RUTH WILLS, his wife
1289   JOHN WILSON and AVIS WILSON, his wife
1290   WILLIAM WILSON
1291   SAMUEL R. WILSON and MILDRED WILSON, his wife
1292   ADRIAN WINCHELL and HELEN WINCHELL, his wife
1293   JACK WINDLE and PATRICIA WINDLE, his wife
1294   ARTHUR WINTER and JOHANNA WINTER, his wife
```

```
1295   FREDERICK WINTERS
1296   EUGENE WISE and SHANDA WISE, his wife
1297   BLAIR G. WISHART and ELIZABETH WISHART, his wife
1298   MILDRED WITHROW and EDWARD WITHROW, his wife
1299   MAURICE WIXON and LUCILLE WIXON, his wife
1300   ROBERT WOJCIECHOWSKI and MARILYN WOJCIECHOWSKI, his wife
1301   BERNARD WOLCHAN and BETTY WOLCHAN, his wife
1302   HAROLD WOLLACK
1303   SEPTIMUS WOOD and EDNA WOOD, his wife
1304   MARVIN WOODHAM and LOU ANN WOODHAM, his wife
1305   FRED WOODWARD and MARY WOODWARD, his wife
1306   FORREST WOOTEN and JUDITH WOOTEN, his wife
1307   ROBERT WORK, JR.  and BARBARA WORK, his wife
1308   HENRY WRIGHT and EDNA WRIGHT, his wife
1309   NORBERT WRIGHT
1310   SALVATORE YANELLO and ELLEN YANELLO, his wife
1311   CHESTER YEATTER  and DOROTHY YEATTER, his wife
1312   GEORGE YOST and BETTY YOST, his wife
1313   JAMES D. YOUNG
1314   WARREN F. YOUNG and ANITA YOUNG, his wife
1315   LOUIS ZAMKOFF and HELEN ZAMKOFF, his wife
1316   DOMENICK ZERO and MARIE ZERO, his wife
1317   IRVING ZIMMERMAN and MOLLY ZIMMERMAN, his wife
1318   RICHARD ZIOLEK and JOYCE ZIOLEK, his wife
1319   AUGUST HARRY ZOLLNER
1320   MAX ZUCKERMAN and JEANNETTE ZUCKERMAN, his wife
1321   EDWARD ZUKOWSKI
1322   FRANK ZURICA and CONCETTA ZURICA, his wife
1323   JOHN ZWOLINSKI, JR.
```

## EXHIBIT "B"

1   GLADYS AHOKAS, as Personal Representative of the Estate of
    ARVO AHOKAS, deceased

2   THOMAS AIKENS, as Personal Representative of the Estate of
    ELIZABETH AIKENS-REICHMUTH, deceased

3   MARJORIE ALBONICO, as Personal Representative of the Estate
    of ANTONE ALBONICO, deceased

4   STACY ALLEN, as Personal Representative of the Estate of
    JAMES D. ALLEN, JR., deceased,

5   NAOMI WISOTT, as Personal Representative of the Estate of
    LOUIS ALTMAN, deceased

6   KATHRYN ZAREMBSKI, as Personal Representative of the Estate
    of JEROME AMES, deceased

7   ETHEL AMSTER as Personal Representative of the Estate of
    DANIEL AMSTER, deceased

8   ROSALIE ROMANO, as Personal Representative of the Estate of
    MARINO ANSELMO, deceased

9   CEIL AQUILONE, as Personal Representative of the Estate of
    JOHN AQUILONE, deceased

10  ELIZABETH ASHMORE, as Personal Representative of the Estate
    of EDWIN ASHMORE, deceased

11  THOMAS ASHWILL, as Personal Representative of the Estate of
    WILLIAM ASHWILL, deceased

12  CYNTHIA AUSSERER, as Personal Representative of the Estate
    of  JOSEPH AUSSERER, deceased

13  DOROTHY AXTELL, as Personal Representative of the Estate of
    FRED AXTELL, deceased

14  FLOREL AYRES, as Personal Representative of the Estate of
    THOMAS AYRES, deceased,

15  MAVIS BAIRD, as Personal Representative of the Estate of
    RALPH BAIRD, deceased

16  HELEN BAKER, as Personal Representative of the Estate of
    THOMAS BAKER, deceased

17  RONALD A. BALABAN, as Personal Representative of the Estate
    of SAM BALABAN, deceased

18   PETRINA BARBIERI, as Personal Representative of the Estate
     of THOMAS BARBERIO, deceased

19   HILDA BARCUM, as Personal Representative of the Estate of
     VIRGIL BARCUM, deceased

20   EDNA BARRY , as Personal Representative of the Estate of
     WILLIAM BARRY, deceased

21   GLADYS BATES, as Personal Representative of the Estate of
     WILSON BATES, deceased

22   WINIFRED BAXTER, as Personal Representative of the Estate of
     FRED BAXTER, deceased

23   HENRY BEISHEIM, as Personal Representative of the Estate of
     HENRY BEISHEIM, deceased

24   JACK ADAIR, as Personal Representative of the Estate of
     ERNEST BEJA, deceased

25   CHRISTINE ROBERTS BELL , as Personal Representative of the
     Estate of BOB BELL, deceased

26   DOROTHY BENNER, as Personal Representative of the Estate of
     CHARLES BENNER, deceased

27   NORMA BENNETT, as Personal Representative of the Estate of
     WILLIAM BENNETT, deceased

28   VIVIAN BERNIER, as Personal Representative of the Estate of
     GERALD BERNIER, deceased

29   MARJORIE BERRY, as Personal Representative of the Estate of
     DONALD BERRY, deceased,

30   BILLIE M. BETHEL, as Personal Representative of the Estate
     of CREIGHTON BETHEL, deceased,

31   ELINOR BEVINS, as Personal Representative of the Estate of
     BERNARD BEVINS, deceased

32   ELEANOR BIRDSALL, as Personal Representative of the Estate
     of WALTER BIRDSALL, deceased

33   BEATRICE BLECHMAN, as Personal Representative of the Estate
     of RALPH BLECHMAN, deceased

34   CHRISTINE KERR, as Personal Representative of the Estate of
     THOMAS BLUITT, deceased

35   LESLIE MURPHY, as Personal Representative of the Estate of
     BEVERLY BOONE, JR., deceased

36   IDA BORNSTEIN, as Personal Representative of the Estate of
     STANLEY BORNSTEIN, deceased

37   ISABELLE BOYLE, as Personal Representative of the Estate of
     JAMES BOYLE, deceased

38   GENEVA BRANDENBURG, as Personal Representative of the Estate
     of CHARLES BRANDENBURG, deceased,

39   ALYCE BODNER, as Personal Representative of the Estate of
     ROBERT BRATSPER, deceased

40   MARGARET BREUTZMAN, as Personal Representative of the Estate
     of ALLAN BREUTZMAN, deceased

41   ANEIDA BREWINGTON, as Personal Representative of the Estate
     of JAMES BREWINGTON, deceased

42   RICHARD O. BRODSKY, as Personal Representative of the Estate
     of JEROME BRODSKY, deceased

43   JAMES T. BROOKS, as Personal Representative of the Estate of
     THOMAS BROOKS, deceased

44   LORETTA BUCCIERO, as Personal Representative of the Estate
     of JOHN BUCCIERO, deceased,

45   ANTONIA BULTRON, as Personal Representative of the Estate of
     JUAN BULTRON, deceased

46   MARY BURK, as Personal Representative of the Estate of GLEN
     BURK, deceased

47   MERTIS WILLIAMS, as Personal Representative of the Estate of
     CURTIS BURKE, deceased

48   KEVIN BURNES, as Personal Representative of the Estate of
     DONALD BURNES, deceased

49   MICHAELINA CAMMISA, as Personal Representative of the Estate
     of JOHN CAMMISA, deceased

50   CHERYL LUCAS, as Personal Representative of the Estate of
     EARL CAMPBELL, deceased

51   BERNICE CAMPBELL, as Personal Representative of the Estate
     of GERALD CAMPBELL, deceased

52   DORIS CARLEY, as Personal Representative of the Estate of
     LARRY CARLEY, deceased

53   DIANNE CARLSON, as Personal Representative of the Estate of
     WILLIAM CARLSON, deceased

54    JUDITH CARMICHAEL, as Personal Representative of the Estate
      of CLIFFORD CARMICHAEL, deceased,

55    YVETTE CARTA, as Personal Representative of the Estate
      of ANTHONY CARTA, deceased,

56    FLOYD CARTER, as Personal Representative of the Estate of
      LAVETTA CARTER, deceased

57    MILDRED CASTERLIN, as Personal Representative of the Estate
      of WILLIAM CASTERLIN, deceased

58    BERYL CATON, as Personal Representative of the Estate of
      JAMES CATON, deceased

59    LILLIAN CERZA, as Personal Representative of the Estate of
      SANTO CERZA, deceased

60    CONCETTA CETRULLO, as Personal Representative of the Estate
      of STEPHEN J. CETRULLO, deceased

61    LUCILLE CHANDLER, as Personal Representative of the Estate
      of GEORGE CHANDLER, deceased

62    AMELIA CHANDLER, as Personal Representative of the Estate of
      MORRIS CHANDLER, deceased

63    FRANCES CHAPMAN, as Personal Representative of the Estate of
      JAMES CHAPMAN, deceased

64    MARY CHOMA, as Personal Representative of the Estate of
      JOSEPH CHOMA, deceased

65    JACQUELINE CICCARELLI, as Personal Representative of the
      Estate of CHARLES CICCARELLI, deceased

66    RITA CIELO, as Personal Representative of the Estate of
      RUDOLPH CIELO, deceased

67    JOAN CLEARY, as Personal Representative of the Estate of
      WILLIAM CLEARY, deceased

68    JOSEPHINE CLEMENTE, as Personal Representative of the Estate
      of CASPER CLEMENTE, deceased,

69    ROBERTA COFFEE, as Personal Representative of the Estate of
      WILLIAM COFFEE, deceased

70    DORIS COGGINS, as Personal Representative of the Estate of
      MARSHALL COGGINS, deceased

71    RUTH COHEN, as Personal Representative of the Estate of
      IRVING COHEN, deceased,

72    CAROLYN SHERMAN, as Personal Representative of the Estate
      of JOSEPH COLEMAN, deceased,

73    BARBARA COLLINS, as Personal Representative of the Estate
      of JIMMIE COLLINS, deceased,

74    BARBARA COLSON, as Personal Representative of the Estate of
      ALBERT COLSON, deceased,

75    CARLIS COMER, as Personal Representative of the Estate of
      RALEIGH COMER, deceased

76    MARIE CONLEY, as Personal Representative of the Estate of
      DENVY CONLEY, deceased,

77    JOSEPHINE CONNER, as Personal Representative of the Estate
      of DAVID CONNER-LOGAN, deceased

78    SHIRLEY COOK, as Personal Representative of the Estate of
      ROBERT COOK, deceased,

79    LILLIAM COOPER, as Personal Representative of the Estate of
      HARRY COOPER, deceased

80    RICHARD COPEL, as Personal Representative of the Estate of
      RICHARD COPELAND, deceased

81    ELENAR COPPOLA, as Personal Representative of the Estate
      of ARNOLD COPPOLA, deceased

82    ARLINE CORNETT, as Personal Representative of the Estate of
      JOSEPH CORNETT, deceased

83    LAURIE R. GERONEMUS, as Personal Representative of the
      Estate of ANTHONY CORTESE, deceased

84    MARY ANN CRAIG, as Personal Representative of the Estate
      of WILLIAM CRAIG, deceased

85    CHARLES E. CREPS, as Personal Representative of the Estate
      of CHARLES A. CREPS, deceased

86    CONSUELO CRIOLLO, as Personal Representative of the Estate
      of ORLANDO CRIOLLO, deceased

87    HELEN CRISSMAN, as Personal Representative of the Estate of
      HENRY CRISSMAN, deceased

88    LOUISETTE CROLIUS, as Personal Representative of the Estate
      of GEORGE CROLIUS, deceased

89    BEULAH CULLINS, as Personal Representative of the Estate of
      HORACE CULLINS, deceased

90    BOB CUNNINGHAM, as Personal Representative of the Estate of
      WALTER CUNNINGHAM, deceased

91    THERESA CURRY, as Personal Representative of the Estate of
      THOMAS CURRY, deceased

92    THERESA CWIEK, as Personal Representative of the Estate of
      MITCHELL CWIEK, deceased

93    GLORIA DANAHY, as Personal Representative of the Estate of
      LAWRENCE DANAHY, deceased

94    VERNA DANFORTH, as Personal Representative of the Estate of
      CLEVELAND DANFORTH, deceased

95    BETTY DAVENPORT, as Personal Representative of the Estate of
      ALAN DAVENPORT, deceased

96    MARLENA DERENZO, as Personal Representative of the Estate of
      CATHERINE DAVENPORT, deceased

97    DONNA DAVIDSON, as Personal Representative of the Estate of
      GLENN DAVIDSON, deceased

98    LILIA DE MEIS, as Personal Representative of the Estate of
      THEODORE DE MEIS, deceased

99    BARBARA DEBELLIS, as Personal Representative of the Estate
      of HENRY DEBELLIS, deceased,

100   FERN DELONG, as Personal Representative of the Estate of
      EDWIN DELONG, deceased

101   DOROTHY DENMAN, as Personal Representative of the Estate of
      ROBERT DENMAN, deceased

102   STEVEN DENNISON, as Personal Representative of the Estate of
      THOMAS DENNISON, deceased

103   DENISE DESIMONE, as Personal Representative of the Estate of
      JOSEPH DESIMONE, deceased

104   ELEANOR DEUTSCH, as Personal Representative of the Estate of
      FRED DEUTSCH, deceased

105   CONSTANCE DI ANTONIO, as Personal Representative of the
      Estate of WILLIAM DI ANTONIO, deceased

106   ENRICO DI PIETRO, as Personal Representative of the Estate
      of MARY DI PIETRO, deceased,

107   FREDINE V. DIETZ, as Personal Representative of the Estate
      of ARTHUR D. DIETZ, deceased

108   KENNETH DIETZ, as Personal Representative of the Estate of
      HAROLD DIETZ, deceased

109   OFELIA DIVIETRO, as Personal Representative of the Estate
      of MICHAEL DIVIETRO, deceased,

110   KARL DOLNIER, as Personal Representative of the Estate of
      JOHN DOLNIER, deceased

111   ANNA MARIE DORCAS, as Personal Representative of the Estate
      of LEE DORCAS, deceased

112   CATHERINE DORTZBACH, as Personal Representative of the
      Estate of JOHN DORTZBACH, deceased

113   VIRGINIA DRAKE, as Personal Representative of the Estate of
      EDWARD DRAKE, deceased,

114   LOIS DUDDEY, as Personal Representative of the Estate of
      DONALD DUDDEY, deceased,

115   GERTURDE DUKES, as Personal Representative of the Estate of
      GEORGE DUKES, deceased

116   RUTH DUNCAN, as Personal Representative of the Estate of
      CLIFFORD DUNCAN, deceased

117   JOHN DUREIKO, as Personal Representative of the Estate of
      PETER DUREIKO, deceased

118   STEPHEN G. MELCER, as Personal Representative of the Estate
      of VICTOR ELIAS, deceased

119   ETTA EMERICK, as Personal Representative of the Estate of
      ROBERT EMERICK, deceased

120   JEAN ENGWEILER, as Personal Representative of the Estate of
      JACK ENGWEILER, deceased

121   CAREEN ERALE, as Personal Representative of the Estate of
      GEORGE ERALE, deceased

122   VIVIAN ERICKSON, as Personal Representative of the Estate of
      SHERMAN ERICKSON, deceased

123   JOSEPH ESPINETA, as Personal Representative of the Estate of
      JOSEPH ESPINETA, deceased

124   FRANCIS CANNON, as Personal Representative of the Estate of
      JOHN EWART, deceased

125   MARY FABIOCHI, as Personal Representative of the Estate of
      EUGENE FABIOCHI, deceased

126   CLEMENT FALZARANO, as Personal Representative of the Estate
      of CLEMENT M. FALZARANO, deceased

127   MARY FEENEY, as Personal Representative of the Estate of
      ROBERT FEENEY, deceased,

128   CATHERINE FERETIC, as Personal Representative of the Estate
      of NICHOLAS FERETIC, deceased

129   ARLENE FERNANDEZ, as Personal Representative of the Estate
      of CARL FERNANDEZ, deceased

130   ANN FERRANO, as Personal Representative of the Estate of
      FRANK FERRANO, deceased

131   ANTOINETTE FERRO, as Personal Representative of the Estate
      of FRANK FERRO, deceased

132   LEANORE FINE , as Personal Representative of the Estate of
      SOL FINE, deceased

133   ZELLA FINKELSTEIN, as Personal Representative of the Estate
      of MORRIS FINKELSTEIN, deceased

134   MICHAEL FISHMAN, as Personal Representative of the Estate of
      JACK FISHMAN, deceased

135   DAVID H. POLLACK, ESQ., as Personal Representative of the
      Estate of LEON FLYNN, deceased

136   MONROE FRALEY, as Personal Representative of the Estate of
      LAURA FRALEY, deceased

137   JEWEL FRANCIS, as Personal Representative of the Estate of
      RALPH FRANCIS, deceased,

138   JAMES J. FRANKE, as Personal Representative of the Estate
      of AUDREY FRANKE, deceased

139   NANCY FREDERICK, as Personal Representative of the Estate of
      RALPH FREDERICK, deceased,

140   ROSEMARY FREY, as Personal Representative of the Estate of
      RAYMOND FREY, deceased

141   WILLIAM FRIEL, as Personal Representative of the Estate of
      WILLIAM FRIEL, deceased

142   MIKE FRIER, as Personal Representative of the Estate of
      SIDNEY FRIER, deceased

143   JANICE FROBEL, as Personal Representative of the Estate of
      MILTON FROBEL, deceased

144  DAISY FRYE, as Personal Representative of the Estate of
     WILLIAM FRYE, deceased

145  OPAL GALLOWAY, as Personal Representative of the Estate of
     DELBERT GALLOWAY, deceased

146  ARDETH GALLOZZI, as Personal Representative of the Estate of
     SALVATORE GALLOZZI, deceased

147  BELINDA, as Personal Representative of the Estate of JESUS
     GARCIA, deceased

148  NANCY ELIZABETH MINCEY, as Personal Representative of the
     Estate of SUE GAUDIN, deceased

149  ARLENE GENKIN, as Personal Representative of the Estate of
     DAVID GENKIN, deceased

150  HELEN GIBSON, as Personal Representative of the Estate of
     HOWARD GIBSON, deceased

151  DIANA GILMAN, as Personal Representative of the Estate of
     EDWARD GILMAN, deceased

152  BARBARA GIMENEZ, ESQ., as Personal Representative of the
     Estate of CARLOS GIMENEZ, deceased

153  DEBORAH GITTENS, as Personal Representative of the Estate of
     DOUGLAS GITTENS, deceased

154  FAY GITTLIN, as Personal Representative of the Estate of
     A. SAM GITTLIN, deceased

155  CAROL GLADSON, as Personal Representative of the Estate of
     RUSSELL GLADSON, deceased

156  SILVIA GOLDBERG, as Personal Representative of the Estate
     of SIDNEY GOLDBERG, deceased

157  NORMA GOLDENBERG, as Personal Representative of the Estate
     of NATHAN GOLDENBERG,

158  BELLA GOLDMAN, as Personal Representative of the Estate of
     HYMAN GOLDMAN, deceased

159  DALE REYER and JAMES REYER, as co-Personal Representatives
     of the Estate of  LOUIS GOLDREYER, deceased

160  SHIRLEY GOLDSTEIN, as Personal Representative of the Estate
     of JACK GOLDSTEIN, deceased

161  ETTIE GOLDSTEIN, as Personal Representative of the Estate of
     JOSEPH GOLDSTEIN, deceased,

162   JEANETTE GONZALEZ, as Personal Representative of the Estate
of HERMINIO GONZALEZ, deceased

163   GEORGIA GOODHEW, as Personal Representative of the Estate of
JOE GOODHEW, deceased

164   BERTHA GORDON, as Personal Representative of the Estate of
SIDNEY GORDON, deceased

165   GENEVA GRAHAM, as Personal Representative of the Estate of
WILLIE GRAHAM, deceased

166   BRENDA GRAY, as Personal Representative of the Estate of
EDWARD GRAY, deceased

167   WENDY L. HORTON, as Personal Representative of the Estate of
JACK GRAY, deceased

168   JOAN LANTZ, as Personal Representative of the Estate of
KENNETH GREEN, deceased

169   HELEN GREENBAUM, as Personal Representative of the Estate of
DOUGLASS GREENBAUM, deceased

170   J. MICHAEL GREEN, as Personal Representative of the Estate
of SHELDON GREENE, deceased

171   LINDA COPPERSMITH, as Personal Representative of the Estate
of LOUIS GROGER, deceased,

172   DOROTHY KING, as Personal Representative of the Estate of
JOSEPH GUSTAFSON, deceased

173   MELODYE CHASSEY, as Personal Representative of the Estate of
HELEN HAINES, deceased

174   RITA HALEY, as Personal Representative of the Estate of
WILLIAM HALEY, deceased,

175   WILMA HAMILTON, as Personal Representative of the Estate of
JAMES C. HAMILTON, deceased

176   DONNA HAMMESFAHR, as Personal Representative of the Estate
of JAMES HAMMESFAHR, deceased

177   CAROLYN HARDEE, as Personal Representative of the Estate of
RONALD HARDEE, deceased

178   LAVON HARRIS, as Personal Representative of the Estate of
DAVID HARRIS, deceased

179   IDA HARRIS, as Personal Representative of the Estate of
ROBERT HARRIS, deceased,

180  ROBYN ANN HAZARD, as Personal Representative of the Estate of MERVYN HAZARD, deceased

181  KINGSTON HEATH, as Personal Representative of the Estate of FRANK HEATH, deceased

182  FRANCIS HECHT, as Personal Representative of the Estate of MILTON HECHT, deceased

183  NANCY HEIDENREICH, as Personal Representative of the Estate of LEE HEIDENREICH, deceased

184  JUSTINE HEMBERGER, as Personal Representative of the Estate of ROBERT HEMBERGER, deceased,

185  SALLY HEMENWAY, as Personal Representative of the Estate of LAWRENCE HEMENWAY, deceased

186  JO ANNE HENDRIX, as Personal Representative of the Estate of HOWARD HENDRIX, deceased

187  DOROTHY HODGES, as Personal Representative of the Estate of HERBERT HODGES, deceased

188  MARGARET HODGES, as Personal Representative of the Estate of JOHN HODGES, deceased

189  HELEN HOLDEN, as Personal Representative of the Estate of JAMES HOLDEN, deceased

190  SHIRLEY MELVIN, as Personal Representative of the Estate of WILLIAM HOLLEY, deceased

191  JEAN HOLLOWAY, as Personal Representative of the Estate of HAYES HOLLOWAY, deceased

192  ELLEN LAGAMBA, as Personal Representative of the Estate of ALEX HORVATH, deceased

193  MARY JOHNSON, as Personal Representative of the Estate of WILLIAM HUGHES, deceased

194  CAROL HURTEAU, as Personal Representative of the Estate of RICHARD HURTEAU, deceased

195  MARIE DOUGHERTY and JAMES IACONE, as Personal Representative of the Estate of DOMINICK IACONE, deceased

196  BARBARA ANN SMITH, as Personal Representative of the Estate of ALPHONSUS IANNONE, deceased

197  PETER INFUSINO, as Personal Representative of the Estate of EMILY INFUSINO, deceased

198   ROSINA IORIO, as Personal Representative of the Estate of
      VINCENT IORIO, deceased

199   DORIS MAE IRRGANG, as Personal Representative of the Estate
      of GEORGE IRRGANG, deceased

200   FRANKIE ISON, as Personal Representative of the Estate of
      THOMAS ISON, deceased

201   SANDRA JENKINS, as Personal Representative of the Estate of
      RAYMOND JENKINS, deceased

202   LOIS JEROME, as Personal Representative of the Estate of
      OLIVER JEROME, deceased

203   MARY LEE JOHNSON, as Personal Representative of the Estate
      of SAM JOHNSON, deceased

204   FLETCHER JOINER, as Personal Representative of the Estate of
      MARY JOINER, deceased

205   MARY ANNE JONES, as Personal Representative of the Estate of
      DONALD JONES, deceased

206   ALICE JOYCE, as Personal Representative of the Estate of
      RICHARD JOYCE, deceased

207   FRANK KAPLAN and MARTHA KAPLAN, as co-Personal
      Representatives of the Estate of JACOB KAPLAN, deceased

208   MINA KAYE, as Personal Representative of the Estate of
      MILTON KAYE, deceased

209   DOLLIE KEISER, as Personal Representative of the Estate of
      CHARLES L. KEISER, deceased

210   JOHN KIERNAN, JR., as Personal Representative of the Estate
      of JOHN KIERNAN, deceased

211   CATHIE KIMMEL, as Personal Representative of the Estate of
      WILLIAM KIMMEL, Deceased

212   JANICE KIRBY, as Personal Representative of the Estate of
      MALCOLM KIRBY, deceased

213   EVA KIRKPATRICK, as Personal Representative of the Estate of
      RAY KIRKPATRICK, deceased,

214   SHEILA KIVNEY, as Personal Representative of the Estate of
      ANNETTE KIVNEY, deceased

215   IRENE KNOX, as Personal Representative of the Estate of
      FRANK KNOX, deceased

216   FRED KOELBER, as Personal Representative of the Estate of
      ROSE KOELBER, deceased

217   JOHN MILITANA, ESQ., as Personal Representative of the
      Estate of MONROE KOGGAN, deceased

218   STEVEN KOLBER, as Personal Representative of the Estate of
      SIDNEY KOLBER, deceased,

219   DANIEL L. KORN, as Personal Representative of the Estate of
      SAMUEL KORN, deceased

220   SUSAN KOZATEK, as Personal Representative of the Estate of
      FRANK KOZATEK, deceased

221   JEAN KRAMMES, as Personal Representative of the Estate of
      IRA KRAMMES, deceased

222   MINNIE KREPPEL, as Personal Representative of the Estate of
      JOSEPH KREPPEL, deceased

223   ALICE KUMER, as Personal Representative of the Estate of
      ALBERT KUMER, deceased,

224   LEONA KUNDERT, as Personal Representative of the Estate of
      RICHARD KUNDERT, deceased,

225   AGNES LACEFIELD, as Personal Representative of the Estate of
      BILLIE LACEFIELD, deceased

226   FRANCES LAMPHERE, as Personal Representative of the Estate
      of FRED LAMPHERE, deceased

227   ALINE LARIVIERE, as Personal Representative of the Estate of
      ROBERT LARIVIERE, deceased,

228   SILVIA LASPINA, as Personal Representative of the Estate of
      PAUL LASPINA, deceased

229   LUCY LEGER, as Personal Representative of the Estate of
      ROBERT LEGER, deceased

230   REGINA LEVINE, as Personal Representative of the Estate of
      HENRY LEVINE, deceased

231   FRANCES LEWIS, as Personal Representative of the Estate of
      LESTER LEWIS, deceased

232   MARY LEWIS, as Personal Representative of the Estate of JOHN
      LEWIS, SR., deceased

233   SHIRLEY CONWELL, as Personal Representative of the Estate of
      ROY LINDELL, deceased

234   CATHERINE LITRENTO, as Personal Representative of the Estate
      of FRANK LITRENTO, deceased


235   JOSEPHINE H. LOGAN, as Personal Representative of the Estate
      of RONALD LOGAN, deceased

236   ROSE LORD, as Personal Representative of the Estate of PHIL
      LORD, deceased

237   MADELINE LORUSSO, as Personal Representative of the Estate
      of JOSEPH LORUSSO, deceased

238   MARY LOVERIDGE, as Personal Representative of the Estate of
      DANIEL LOVERIDGE, deceased

239   HELEN LOWE, as Personal Representative of the Estate of
      CHARLES LOWE, deceased

240   EVELYN LUGIEWICZ, as Personal Representative of the Estate
      of ARNOLD LUGIEWICZ, deceased

241   CLAIRE MADELINE, as Personal Representative of the Estate of
      JOSEPH MADELINE, deceased

242   DORIS MAHLE, as Personal Representative of the Estate of
      JAMES MAHLE, deceased

243   ELAINE MANKES, as Personal Representative of the Estate of
      PHILIP MANKES, deceased

244   KATHRYN MARHENKE, as Personal Representative of the Estate
      of EDWARD MARHENKE, deceased

245   DORIS MARLOWE, as Personal Representative of the Estate of
      RAY MARLOWE, deceased,

246   ANN MARTO, as Personal Representative of the Estate of
      DANIEL MARTO, deceased

247   CHARLOTTE MARTOCCIA, as Personal Representative of the
      Estate of EUGENE MARTOCCIA, deceased,

248   MARY ROSS, as Personal Representative of the Estate of
      RUSSELL MASON, deceased

249   MELVENE COVINGTON, as Personal Representative of the Estate
      of EUNICE MAYES, deceased

250   JANICE A. MCGEE AND MAC R. MCGEE, as co-Personal
      Representatives of the Estate of JAMES MAZE, deceased

251   LILLIAN MAZZUCHELLI, as Personal Representative of the
      Estate of JOSEPH MAZZUCHELLI, deceased

252  GRACE KULBICKAS, as Personal Representative of the Estate of
     JOSEPH MC GRAW, deceased

253  SYRTA MCCALLY, as Personal Representative of the Estate of
     JAMES MCCALLY, deceased

254  MARIE MCCAULEY, as Personal Representative of the Estate of
     JOHN MCCAULEY, deceased

255  MARY MCELWREATH, as Personal Representative of the Estate of
     THOMAS MCELWREATH, deceased

256  HELEN MCKAIN, as Personal Representative of the Estate of
     JAMES MCKAIN, deceased

257  MARIANNE MC KENZIE, as Personal Representative of the Estate
     of AVERY MCKENZIE, deceased

258  LORI AUER, as Personal Representative of the Estate of
     JAMES MCLAUGHLIN, deceased

259  HELEN MCLEAN, as Personal Representative of the Estate of
     ROBERT MCLEAN, deceased

260  DORIS MCMATH, as Personal Representative of the Estate of
     JAMES MCMATH, deceased

261  JUNE MCPHERSON, as Personal Representative of the Estate of
     LESLIE MCPHERSON, deceased

262  SYLVIA MESSINGER, as Personal Representative of the Estate
     of CHARLES MESSINGER, deceased

263  DELRAY MEYER, as Personal Representative of the Estate of
     CHARLES MEYER, deceased

264  ROSEMARIE MICHALAK, as Personal Representative of the Estate
     of EUGENE MICHALAK, deceased

265  MARILYN DENNISON, as Personal Representative of the Estate
     of DONALD MICHELS, deceased

266  BETTY MILLER, as Personal Representative of the Estate of
     CECIL MILLER, deceased

267  LOIS MILLER, as Personal Representative of the Estate of
     PAUL MILLER, deceased

268  ROSEMARY MILLS, as Personal Representative of the Estate of
     BENJAMIN MILLS, deceased

269  KAREN MIRACLE, as Personal Representative of the Estate of
     ROY MIRACLE, deceased

270  MARILYN MONTGOMERY, as Personal Representative of the Estate of GEORGE MONTGOMERY, deceased

271  SARAH MORROW, as Personal Representative of the Estate of HUGH MORROW, deceased

272  HELEN MUDRICK, as Personal Representative of the Estate of MORRIS MUDRICK, deceased

273  BARBARA MUELLER, as Personal Representative of the Estate of CHARLES MUELLER, deceased

274  DOROTHY MULLINS, as Personal Representative of the Estate of OWNES MULLINS, deceased

275  BARBARA MUSKELLEY, as Personal Representative of the Estate of WILLIAM MUSKELLEY, deceased

276  EDWARD MYERS, as Personal Representative of the Estate of MARIE MYERS, deceased

277  VIRGINIA BOND, as Personal Representative of the Estate of L.W. NEUHAUS, deceased

278  GERTIE NEWSOME, as Personal Representative of the Estate of BILLY NEWSOME, deceased

279  GAIL SEMPIER, as Personal Representative of the Estate of LEO NICHTERN, deceased

280  DOROTHY NIGRO, as Personal Representative of the Estate of ALFRED NIGRO, deceased

281  CHRISTINE OHLHUES, as Personal Representative of the Estate of RAYMOND J. OHLHUES, deceased

282  CAROL OLSEN, as Personal Representative of the Estate of ROBERT OLSEN, deceased

283  PATRICIA ORBIK, as Personal Representative of the Estate of CARL ORBIK, deceased

284  PATRICIA ORDISH, as Personal Representative of the Estate of LELAND C. ORDISH, deceased

285  TOM OTTEN and LOUIS OTTEN, as co-Personal Representatives of the Estate of LOUIS OTTEN, deceased

286  PATRICIA PACIFICO, as Personal Representative of the Estate of JOHN PACIFICO, deceased

287  CORAZON PANLAQUI, as Personal Representative of the Estate of EDWARD PANLAQUI, deceased

288   KATHLEEN PARKS, as Personal Representative of the Estate of
      CLIFTON PARKS, deceased

289   LOUIS J. PATI, SR., as Personal Representative of the
      Estate of FRANCES PATI, deceased

290   SHIRLEY A. PEAL, as Personal Representative of the Estate of
      HERBERT, PEAL, deceased

291   BARBARA PERICH, as Personal Representative of the Estate of
      MICHAEL PERICH, deceased

292   DENISE S. LEAR, as Personal Representative of the Estate of
      OVIE PERKINS, deceased

293   SHIRLEY BALL, as Personal Representative of the Estate of
      CARL PETERS, deceased

294   MARIA PETRILLO, as Personal Representative of the Estate of
      RICHARD PETRILLO, deceased

295   LOTTE PHELAN, as Personal Representative of the Estate of
      DAVID PHELAN, deceased

296   JEAN PHELPS, as Personal Representative of the Estate of
      AVERIL PHELPS, deceased

297   GERTRUDE PIERCE, as Personal Representative of the Estate of
      ROBERT PIERCE, deceased

298   LAURA PINCUS, as Personal Representative of the Estate of
      WILLIAM PINCUS, deceased

299   JANET PINSON, as Personal Representative of the Estate of
      DONALD PINSON, deceased

300   HELEN POMARICO, as Personal Representative of the Estate of
      PETER POMARICO, deceased

301   HILDA POPPE, as Personal Representative of the Estate of
      CLARENCE POPPE, deceased

302   JOSEPH PRANCKEVICUS, as Personal Representative of the
      Estate of XAVIER PRANCKEVICUS, deceased

303   DORIS M. PULS, as Personal Representative of the Estate of
      ELLDEN PULS, deceased

304   BARBARA PUZZO, as Personal Representative of the Estate of
      PETER PUZZO, deceased

305   JANE RABER, as Personal Representative of the Estate of
      GUSTAVE RABER, deceased

306   LINDA E. RANKIN, as Personal Representative of the Estate of
      WILLIAM RANKIN, deceased

307   JERRY R. RASH, as Personal Representative of the Estate of
      JAMES RASH, deceased

308   RUTH REED, as Personal Representative of the Estate of
      FRANKLIN REED, deceased

309   JANET R. PARENTI, as Personal Representative of the Estate
      of FREEMAN REESER, deceased

310   LULA MAE REGISTER, as Personal Representative of the Estate
      of CHARLES REGISTER, deceased

311   GLADYS REINER, as Personal Representative of the Estate of
      HERMAN REINER, deceased

312   KENNETH REVIS, as Personal Representative of the Estate of
      WILLIAM REVIS, deceased

313   VIVIAN REZIN, as Personal Representative of the Estate of
      CLARENCE REZIN, deceased

314   FRANCIS RICHER, as Personal Representative of the Estate of
      LILLIAN RICHER, deceased

315   ELAINE RIGGS, as Personal Representative of the Estate of
      LEWIS RIGGS, deceased

316   SANDRA RINKER, as Personal Representative of the Estate of
      GLENN RINKER, deceased

317   MARION ROBINSON, as Personal Representative of the Estate of
      ERNEST ROBINSON, deceased

318   MARGARET ROBLES, as Personal Representative of the Estate of
      SAMUEL ROBLES, deceased

319   FRIEDA ROGAK, as Personal Representative of the Estate of
      LEONARD ROGAK, deceased

320   EDNA ROOT, as Personal Representative of the Estate of
      CHARLES ROOT, deceased

321   DOROTHY ROSENBERG, as Personal Representative of the Estate
      of MELVIN ROSENBERG, deceased

322   DORA ROSENBERG, as Personal Representative of the Estate of
      RUSSELL ROSENBERG, deceased

323   PATSY L. ROTHGERY, as Personal Representative of the Estate
      of ROBERT ROTHGERY, deceased

324   ROYANNA ROY, as Personal Representative of the Estate of
      WALTER ROY, deceased

325   LAEL RUDOFF, as Personal Representative of the Estate of
      JOSEPH RUDOFF, deceased

326   JOANNE SACCA, as Personal Representative of the Estate of
      JOSEPH SACCA, deceased

327   EVELYN SAGNER, as Personal Representative of the Estate of
      CHESTER SAGNER, deceased

328   FRANK SAID, as Personal Representative of the Estate of
      SAMUEL SAID, deceased

329   LINDA COHEN, as Personal Representative of the Estate of
      WILLIAM SAMEK, deceased

330   ROSE SAMEULSON, as Personal Representative of the Estate of
      STANLEY SAMUELSON, deceased

331   CLAIRE SANDERS, as Personal Representative of the Estate of
      CHARLES E. SANDERS, deceased

332   PHYLLIS SMITH AND MICHAEL SANDLER, as Personal
Representative of the Estate of HARRY SANDLER, deceased

333   MIRIAM SAVAGE, as Personal Representative of the Estate of
      ANTHONY SAVAGE, deceased

334   MARY SCHAEFER, as Personal Representative of the Estate of
      DONALD SCHAEFER, deceased

335   HILDA SCHATZ, as Personal Representative of the Estate of
      ABRAHAM SCHATZ, deceased

336   DONNA SCHEESLEY, as Personal Representative of the Estate of
      WALTER SCHEESLEY, deceased

337   HELEN SCHMIDT, as Personal Representative of the Estate of
      RUDOLF SCHMIDT, deceased

338   SHIRLEY SCHULES, as Personal Representative of the Estate of
      THOMAS SCHULES, deceased

339   ELLA SEESE, as Personal Representative of the Estate of
      HARRY SEESE, deceased

340   LAURENCE D. SELTZER, as Personal Representative of the
      Estate of NATHAN SELTZER, deceased

341   MARTHA SHAFFER, as Personal Representative of the Estate of
      GRANT SHAFFER, deceased

342   ESTELLE GORDON, as Personal Representative of the Estate of
      HERMAN SHERMAN, deceased

343   MARY M. CUSHWAY, as Personal Representative of the Estate of
      JOSEPH SHERMAN, deceased

344   SYLVIA SHERMAN, as Personal Representative of the Estate of
      LEONARD SHERMAN, deceased

345   ANN SHERMAN, as Personal Representative of the Estate of
      THEODORE SHERMAN, deceased

346   MARGARET SHERWOOD, as Personal Representative of the Estate
      of WILLIAM SHERWOOD, deceased

347   SYLVIA SHLUGER, as Personal Representative of the Estate of
      SOL SHLUGER, deceased

348   GLORIDA SHOEMAKER, as Personal Representative of the Estate
      of HOWARD SHOEMAKER, deceased

349   AMY SICKES, as Personal Representative of the Estate of
      JAMES SICKLES, deceased

350   JEAN SICKMAN, as Personal Representative of the Estate of
      ALBERT SICKMAN, deceased

351   SIDNEY SILVERMAN, as Personal Representative of the Estate
      of JOSEPHINE SILVERMAN, deceased

352   DANICA SIMIC, as Personal Representative of the Estate of
      STIPO SIMIC, deceased

353   MARY COOK SIMMONS , as Personal Representative of the Estate
      of GORDON SIMMONS, deceased

354   MARY LOU SIMPSON, as Personal Representative of the Estate
      of GEORGE SIMPSON, deceased

355   VELMA SINSKI, as Personal Representative of the Estate of
      PAUL SINSKI, deceased

356   BARBARA SISCO, as Personal Representative of the Estate of
      HAROLD SISCO, deceased

357   ALMA SITTON, as Personal Representative of the Estate of
      JAMES SITTON, deceased

358   ANDREW SMITH, as Personal Representative of the Estate of
      FAYE SMITH, deceased

359   PAMELA PUTNAM and PATRICIA OLIVE, as co-Personal
      Representatives of the Estate of JAMES SMITH, deceased

360   SUSAN LAUFER, as Personal Representative of the Estate of
      MAX SNEIDER, deceased

361   ANNA SNYDER, as Personal Representative of the Estate of
      MILTON SNYDER, deceased

362   EDWARD P. SOUTHERN, as Personal Representative of the Estate
      of MARY SOUTHERN, deceased

363   RUTH SPERGEL, as Personal Representative of the Estate of
      DAVID SPERGEL, deceased

364   SHIRLEY SPIRES, as Personal Representative of the Estate of
      JAMES SPIRES, deceased

365   BONITA M. SPURNY, as Personal Representative of the Estate
      of JOSEPH SPURNY, deceased

366   PAUL STALLINGS, as Personal Representative of the Estate of
      CLYDE STALLINGS, deceased

367   CHRISTINE J. STOKES, as Personal Representative of the
      Estate of ROBERT STOKES, deceased

368   MICHAEL STORACE, as Personal Representative of the Estate of
      SARAH STORACE, deceased

369   DEBRA RIVES, as Personal Representative of the Estate of
      LOWELL STRICKLAND, deceased

370   BETTY STUKES, as Personal Representative of the Estate of
      LYNN STUKES, deceased

371   ETTA SULAM, as Personal Representative of the Estate of
      ISAAC SULAM, deceased

372   MARK SULLIVAN, as Personal Representative of the Estate of
      JOSEPH SULLIVAN, deceased

373   NELLIE SURDOUSKY, as Personal Representative of the Estate
      of LEON SURDOUSKI, deceased

374   SHIRLEY SWAFFORD, as Personal Representative of the Estate
      of WILLIAM SWAFFORD, deceased

375   JOAN SYKES, as Personal Representative of the Estate of
      EDWARD SYKES, deceased

376   CAROL TAYLOR, as Personal Representative of the Estate of
      MARO TAYLOR, deceased

377   GERALDING THOMASON, as Personal Representative of the Estate
      of LEON THOMASON, deceased

378   ELIZABETH THOMPSON, as Personal Representative of the Estate
      of WILLIAM THOMPSON

379   SHIRLEY TIMINS, as Personal Representative of the Estate of
      SEYMOUR TIMINS, deceased

380   LAMONA TODD, as Personal Representative of the Estate of
      HANSEL TODD, deceased

381   EDNA TOE, as Personal Representative of the Estate of
      JAMES TOE, deceased

382   DOROTHY TOLLIVER, as Personal Representative of the Estate
      of DONALD TOLLIVER, deceased

383   JAMES TONEY, as Personal Representative of the Estate of
      GLENN TONEY, deceased

384   IRENE TOPPER, as Personal Representative of the Estate of
      HAROLD TOPPER, deceased

385   NORMA TRACEY, as Personal Representative of the Estate of
      RICHARD TRACEY, deceased

386   RUTH TRIMBLE, as Personal Representative of the Estate of
      ROBERT TRIMBLE, deceased

387   FRANCES TUCHFELD, as Personal Representative of the Estate
      of SIDNEY TUCHFELD, deceased

388   JULIA TYUKODI, as Personal Representative of the Estate of
      ALEX TYUKODI, deceased

389   MARGARET VELSOR, as Personal Representative of the Estate of
      GEORGE VELSOR, deceased

390   CHARLOTTE VILLANUEVA, as Personal Representative of the
      Estate of FRANK VILLANUEVA, deceased

391   THOMSA VINCENT, as Personal Representative of the Estate of
      ANN VINCENT, deceased

392   WILLIAM VIVEIROS and LAURIE VIVEIROS, as co-Personal
      Representatives of the Estate of WILLIAM VIVEIROS, deceased

393   JUNE S. VON VANGE, as Personal Representative of the Estate
      of WILLIAM J. VON VANGE, deceased

394   HENRY VRY, as Personal Representative of the Estate of
      LILLIAN VRY, deceased

395   MICHAEL WAGNER III, as Personal Representative of the Estate
      of MICHAEL WAGNER, deceased

396  ROBERT WALTERS, as Personal Representative of the Estate of
     DANIEL WALTERS, deceased

397  MARIE WANGER, as Personal Representative of the Estate of
     WILLIAM WANGER, deceased

398  RUTH WARRING, as Personal Representative of the Estate of
     NORMAN WARRING, deceased

399  JOYCE WAUGH, as Personal Representative of the Estate of
     OKEY WAUGH, deceased

400  MICHAEL WEINER, as Personal Representative of the Estate of
     DAPHNE WEINER

401  ESTELLE WEINGART, as Personal Representative of the Estate
     of JESSE WEINGART, deceased

402  EULA NELL WHITEHEAD, as Personal Representative of the
     Estate of HOSIE WHITEHEAD, deceased

403  MARIE WHITEHEAD, as Personal Representative of the Estate of
     SAMMIE WHITEHEAD, deceased

404  LOIS E. WIDNER, as Personal Representative of the Estate of
     JOSEPH WIDNER, deceased

405  CHARLES WILLEY, as Personal Representative of the Estate of
     MARY WILLEY, deceased

406  VIVIAN WILLINGHAM, as Personal Representative of the Estate
     of OSCAR R WILLINGHAM, deceased

407  JANETTE WINTERROWD, as Personal Representative of the Estate
     of DONALD WINTERROWD, deceased

408  MARION WISOTSKY, as Personal Representative of the Estate of
     AARON WISOTSKY, deceased

409  LEAH WOLFE, as Personal Representative of the Estate of
     BERNARD WOLFE, deceased

410  MOLLIE WOLFSON, as Personal Representative of the Estate of
     ERWIN WOLFSON, deceased

411  EVELYN WOLOSHIN, as Personal Representative of the Estate of
     SAM WOLOSHIN, deceased

412  DORIS WRIGHT, as Personal Representative of the Estate of
     JAMES WRIGHT, deceased

413  CLARA YELLIN, as Personal Representative of the Estate of
     SOL YELLIN, deceased

414   MARIE YLINEN, as Personal Representative of the Estate of
      ARTHUR YLINEN, deceased

415   WILLIAM A. RUHLMAN, as Personal Representative of the Estate
      of JOHN YOUNG, deceased

416   MAE VELTRI, as Personal Representative of the Estate of
      JOSEPH ZAGAMI, deceased

417   RACHEL ZARACHOV, as Personal Representative of the Estate of
      SOLOMON ZARACHOV, deceased

418   ISA ZECH, as Personal Representative of the Estate of
      HORST ZECH, deceased

419   ELEANOR ZICHERMAN, as Personal Representative of the Estate
      of SIDNEY ZICHERMAN, deceased

420   FRANK ZITNICK, as Personal Representative of the Estate of
      PATSY ZITNICK, deceased

2                    EXPOSURE SHEETS FOR ALL PLAINTIFFS

NAME OF DEFENDANT:  3-M MFG. CO.

| PRODUCTS | DATES AND JOBSITES | WITNESS |
| -------- | ------------------ | ------- |
| Sandpaper, asbestos cloth, sealers, adhesives, plasters, coatings, caulking | 1936-85: Various jobsites to be provided | PLAINTIFF |

```
13                          EXPOSURE SHEETS FOR ALL PLAINTIFFS

NAME OF DEFENDANT: BABCOCK & WILCOX

PRODUCTS                 DATES AND JOBSITES              WITNESS
--------                 ------------------              -------
Boilers                  1936-85: Various jobsites to    PLAINTIFF
                         be provided
```

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. *98. 29638*
*CA6*

ROBERT ABBOTT, et al.,

      Plaintiffs,

David M. Lipman: 280054

vs.

MINNESOTA MINING & MANUFACTURING COMPANY
  (a/k/a "3M")
a Delaware corporation,

      Defendant.

_____/

THE STATE OF FLORIDA:

To Each Sheriff of Said State:

     YOU ARE HEREBY COMMANDED to serve this summons, a copy of the Complaint in
this action, and Exposure Sheets on Defendant:

              MINNESOTA MINING & MANUFACTURING COMPANY
              through its Registered Agent
              C.T. Corporation System
              1200 South Pine Island Road
              Plantation, Florida  33324

Each defendant is required to serve written defenses to the Complaint or petition
on Plaintiffs' attorney, to wit, whose address is:

              DAVID M. LIPMAN, ESQ.
              DAVID M. LIPMAN, P.A.
              5901 S.W. 74 Street
              Suite 304
              Miami, Florida  33143
              (305) 662-2600

within twenty (20) days after service of this Summons on that defendant,
exclusive of the day of service, and to file the original of the defenses with
the Clerk of this Court either before service on Plaintiff(s)'s attorney or
immediately thereafter.  If a defendant fails to do so, a default will be entered
against that defendant for the relief demanded in the Complaint or petition.

DATED ON _____, 1998.

                                                        _____
                                                        as Clerk of Said Court

                                    by:_____
                                                    as Deputy Clerk
                                                    (Court Seal)



RECYCLED PAPER

**\*204710**    Prod.Liab.Rep. (CCH) P 15,236

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL
RELEASED, IT IS SUBJECT TO REVISION OR
WITHDRAWAL.

**OWENS-CORNING FIBERGLAS
CORPORATION, Appellant,**
v.
**Deward BALLARD, Appellee.**

**Nos. 97-1514, 97-1684.**

District Court of Appeal of Florida,

Fourth District.

April 29, 1998.

Plaintiff brought product liability action against
asbestos-product manufacturer. The Circuit Court,
Palm Beach County, Moses Baker, J., entered
judgment on jury verdict for plaintiff. Manufacturer
appealed. The District Court of Appeal, Polen, J.,
held that: (1) manufacturer was not entitled to
dismissal for forum non conveniens; (2) punitive
damages could be imposed for conduct unrelated to
Florida; and (3) punitive damages award of $31
million was not unconstitutional and excessive.

Affirmed; question certified.

**1. PRETRIAL PROCEDURE⊜ 554**

307A ----

307AIII  Dismissal
307AIII(B)  Involuntary Dismissal
307AIII(B)2  Grounds in General
307Ak554     Want of jurisdiction.

Fla.App. 4 Dist. 1998.

Trial court exercises sound discretion in
determining whether to dismiss case for forum non
conveniens, which is subject only to test of
reasonableness, which requires determination of
whether there is logic and justification for result.
West's F.S.A. RCP Rule 1.061(a).

**2. PRETRIAL PROCEDURE⊜ 554**

307A  ----

307AIII  Dismissal
307AIII(B)  Involuntary Dismissal
307AIII(B)2  Grounds in General
307Ak554     Want of jurisdiction.

[See headnote text below]

**2. PRETRIAL PROCEDURE⊜ 683**

307A  ----

307AIII  Dismissal
307AIII(B)  Involuntary Dismissal
307AIII(B)6  Proceedings and Effect
307Ak682     Evidence
307Ak683              Presumptions and burden of
proof.

Fla.App. 4 Dist. 1998.

Before court dismisses case based on forum non
conveniens, it must (1) establish whether adequate
alternative forum exists, (2) consider all relevant
factors of private interest, with presumption against
disturbing plaintiff's initial choice of forum, (3)
assuming it finds balance of private interests in
equipoise, determine whether factors of public
interest tip balance in favor of trial in another
forum, and (4) if balance favors such a forum,
ensure plaintiff may reinstate his suit in that forum
without undue inconvenience or prejudice.

**3. PRETRIAL PROCEDURE⊜ 554**

307A  ----

307AIII  Dismissal
307AIII(B)  Involuntary Dismissal
307AIII(B)2  Grounds in General
307Ak554     Want of jurisdiction.

Fla.App. 4 Dist. 1998.

Even if all factors for dismissal for forum non
conveniens are met, dismissal is not always
mandated if doing so would actually undermine
interests that doctrine seeks to preserve, including
avoiding waste of resources, avoiding forcing

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

1998 WL 204710, 23 Fla. L. Weekly D1077, Owens-Corning Fiberglas Corp. v. Ballard, (Fla.App. 4     **Page 2**
Dist. 1998)

plaintiff into forum where a statute of limitation may have expired, or other similar problems.

## 4. PRETRIAL PROCEDURE☞ 554

307A  ----

307AIII  Dismissal
307AIII(B)  Involuntary Dismissal
307AIII(B)2  Grounds in General
307Ak554        Want of jurisdiction.

[See headnote text below]

## 4. PRETRIAL PROCEDURE☞ 673

307A  ----

307AIII  Dismissal
307AIII(B)  Involuntary Dismissal
307AIII(B)6  Proceedings and Effect
307Ak673        Time for motion;  condition of
        cause.

Fla.App. 4 Dist. 1998.

Asbestos-product manufacturer was not entitled to dismissal for forum non conveniens of products liability action based on plaintiff's exposure to product in other states, where manufacturer waited over three years into litigation and shortly before trial to make motion, and trial court apparently concluded that both parties had engaged in sufficient discovery to be ready for trial.

## 5. STIPULATIONS☞ 18(8)

363  ----

363k15  Conclusiveness and Effect
363k18      Matters Concluded
363k18(8)    Stipulations as to trial.

Fla.App. 4 Dist. 1998.

Asbestos-product manufacturer waived argument that due process barred imposition of punitive damages by Florida jury on ground that conduct complained of was unrelated to Florida, where manufacturer stipulated that amount of punitive damages to be assessed against it under Florida law was issue to be determined by jury, and

manufacturer never specifically sought relief from stipulation. U.S.C.A. Const.Amend. 14.

## 6. DAMAGES☞ 94

115  ----

115V    Exemplary Damages
115k94      Amount of exemplary damages.

Fla.App. 4 Dist. 1998.

Punitive damages award of $31 million was not unconstitutional and excessive in products liability action against asbestos-product manufacturer, although award was approximately 17 times amount of compensatory damages award of $1.8 million; evidence showed that manufacturer knew of health risks associated with product for decades yet consciously made purely economic decision not to warn its consumers, change its process, remove asbestos, or replace fibers with readily available, asbestos-free fibers, and award, which was less than 2% of net worth, would not bankrupt manufacturer. West's F.S.A. § 768.73(1).

## 7. DAMAGES☞ 94

115  ----

115V    Exemplary Damages
115k94      Amount of exemplary damages.

Fla.App. 4 Dist. 1998.

Generally, verdict for punitive damages is excessive where award bears no relation to amount defendant is able to pay and where tort committed is lacking degree of maliciousness to sustain amount of verdict.

Larry L. Simms, Mark A. Perry of Gibson, Dunn & Crutcher LLP, Washington, DC; Steven R. Berger of Berger & Chafetz, Miami; Donna L. Harvey of Speziali, Greenwald, Kueny & Hawkins, Orlando; and Arthur J. England, Jr., of Greenberg Traurig Hoffman Lipoff Rosen & Quentel, P.A., Miami, for appellant.

John F. Venable of Venable and Venable, P.A., Tampa; Daniel F. O'Shea and Angel M. Reyes of Ratiner, Reyes & O'Shea, P.A., Miami, for

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

1998 WL 204710, 23 Fla. L. Weekly D1077, Owens-Corning Fiberglas Corp. v. Ballard, (Fla.App. 4      **Page 3**
Dist. 1998)

appellee.

POLEN, Judge.

**\*\*1**   In this products liability action, appellant, Owens-Corning Fiberglas Corp., the manufacturer of Kaylo, a carcinogenic asbestos-containing product, seeks reversal of judgment in favor of appellee, Deward Ballard, including an award of $31 million in punitive damages.  We affirm on all points raised.

Ballard, a non-Florida resident, brought the instant action against Owens-Corning, alleging he had been exposed to Kaylo during the 1960's and 1970's in six separate states, but not in Florida.  Three years after the complaint was filed, two months after the case was ordered set for trial and three months before the trial actually commenced, Owens-Corning filed a motion to dismiss based on *forum non conveniens*.  The court, finding the case was ready for trial, denied the motion.

The case proceeded to a bifurcated jury trial in January, 1997.  After Phase I ended, the jury found that Owens-Corning was negligent and strictly liable to Ballard for selling Kaylo.  It assessed compensatory damages of $1.8 million, and determined Owens-Corning also was liable for punitive damages.  Owens-Corning immediately moved for a directed verdict on punitive damages, arguing for the first time it could not be punished for conduct outside Florida.  The trial court reserved ruling on that issue.

In Phase II, Ballard presented evidence as to the company's financial position, and Owens-Corning testified as to both the small profits from Kaylo sales and the financial burdens placed on the company by a deluge of asbestos claims.  The jury awarded $31 million in punitive damages.

Owens-Corning then filed several post-trial motions, including a motion for new trial based on the previous denial of its motion to dismiss for *forum non conveniens*, and motions alleging that the punitive damages award was unconstitutional and excessive.  The court denied its motions and entered final judgment.

*I. Forum Non Conveniens*

[1] The trial court exercises sound discretion in determining whether or not to dismiss a case for *forum non conveniens*.  *Ciba-Geigy Ltd. v. Fish Peddler, Inc.*, 691 So.2d 1111, 1115 (Fla. 4th DCA), *rev. denied*, 699 So.2d 1372 (Fla.1997); Fla. R. Civ. P. 1.061(a) (1997).  This discretionary power is subject only to the test of reasonableness, which, in turn, requires a determination of whether there is logic and justification for the result.  *Canakaris v. Canakaris*, 382 So.2d 1197 (Fla.1980); *Ciba*, 691 So.2d at 1115.  Under these principles, we do not believe the court abused its discretion in denying Owens-Corning's motion.

[2] *Kinney System, Inc. v. Continental Insurance Co.*, 674 So.2d 86 (Fla.1996), is the seminal case governing the law of *forum non conveniens*.  *Kinney* requires that, before a court dismisses a case based on *forum non conveniens*, it must (1) establish whether an adequate alternative forum exists; (2) consider all relevant factors of private interest, with the presumption against disturbing the plaintiff's initial choice of forum; (3) assuming it finds the balance of private interests in equipoise, determine whether factors of public interest tip the balance in favor of trial in another forum; and (4) if the balance favors such a forum, ensure the plaintiff may reinstate his suit in that forum without undue inconvenience or prejudice.  *Id.* at 90.

**\*\*2**  [3] Even if these four factors are met, however, *Kinney* does not always mandate dismissal.  *Kinney* states that it would be contrary to the doctrine to order dismissal where the parties have substantially completed discovery or are now ready for a Florida trial.  *Id.* at 94.  In addition, it specifically directs lower courts not to order dismissal if doing so would actually undermine the interests that the doctrine seeks to preserve, including avoiding a waste of resources, avoiding forcing a plaintiff into a forum where a statute of limitation may have expired, or other similar problems.  *Id.* at 93-94.

[4] In light of these exceptions, and the fact that Owens-Corning waited over three years into litigation and shortly before trial to make the motion, the trial court below apparently concluded that both parties had engaged in sufficient discovery to be ready for trial.  As we are constrained by the limited record at bar, we cannot say that denial of its motions on these grounds was an abuse of

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

1998 WL 204710, 23 Fla. L. Weekly D1077, Owens-Corning Fiberglas Corp. v. Ballard, (Fla.App. 4     **Page 4**
Dist. 1998)

discretion.  *See Carenza v. Sun Int'l Hotels, Ltd.,* 699 So.2d 830 (Fla. 4th DCA 1997).

*II. Punishing Conduct Occurring Outside the State of Florida*

[5] Owens-Corning next argues that the imposition of punitive damages have been barred in this case under the Due Process Clause of the Fourteenth Amendment since the conduct of which Ballard complained was wholly unrelated to the State of Florida.  In this regard, it cites to *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

*BMW* involved a plaintiff who sued BMW in Alabama based on BMW's failure to disclose that a car that it sold to plaintiff in Alabama had been damaged and then repainted.  At trial, BMW acknowledged it had adopted a nationwide policy concerning cars that were damaged, whereby if the repair cost did not exceed 3% of the suggested retail price, the car was sold as new without advising the dealer that any repairs had been made.  On review of an award of punitive damages against BMW, the plaintiff argued to the Supreme Court that the large punitive damages award was necessary to induce BMW to change its nationwide policy.

In response to this argument, the Court first looked at other states' disclosure policies regarding repairs to previously damaged cars.  It found that several states had legislation which, in essence, allowed similar policies to that of BMW.  As such, it concluded that this demonstrated "that reasonable people may disagree about the value of a full disclosure requirement."  *Id.* at 570, 116 S.Ct. at 1597.  Accordingly, it reversed the award, holding that Alabama "may not impose economic sanctions on violators of its laws with the intent of changing tortfeasors' lawful conduct in other States."  *Id.* ( *citing Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.")).  However, since the verdict was based in part on out-of-state conduct that was lawful where it occurred, the Court specifically left open the question of whether one State may properly attempt to change a tortfeasor's unlawful conduct in another State.  *Id.,* 517 U.S. at 574 n. 20, 116 S.Ct. at 1598 n. 20.

**\*\*3**   Only one federal case since *BMW* has addressed this question.   In *Continental Trend Resources, Inc. v. OXY USA, Inc.,* 101 F.3d 634 (10th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997), which involved tort claims for interference with contracts and prospective business advantage, the Tenth Circuit noted that, unlike in *BMW,* the defendant's conduct below would be tortious in any state.  Still, the court held that, "we read the [*BMW* ] opinion to prohibit reliance upon inhibiting unlawful conduct in other states."  *Id.* at 637.

We do not find *Continental* 's interpretation of *BMW* helpful or persuasive.  The opinion ignores that, in *BMW,* the record specifically reflected that Alabama was seeking to impose the punitive damages award as a stance against BMW's nationwide policy.  Since the policy was not considered tortious in several other states, the Court found that the effect of the award would be to sanction lawful behavior.  In contrast, where the defendant's conduct is considered tortious in all 50 states, as here, the same due process concerns implicated in *BMW* do not arise.

In any event, we can better resolve this dispute by referring to the parties' pretrial stipulation.  Owens-Corning stipulated that the amount of punitive damages to be assessed against it under Florida law was an issue to be determined by the jury.  Since it never specifically sought relief from the stipulation, we find it waived this argument.  *See Henrion v. New Era Realty IV, Inc.,* 586 So.2d 1295, 1298 (Fla. 4th DCA 1991)(holding, under Florida law, to obtain relief from a stipulation, a party must make a reasonable motion to withdraw the stipulation supported by an affidavit showing good cause).

*III. Presumptively Excessive Punitive Damages Award*

[6]  [7]  Owens-Corning then argues that the punitive damages award in this case was unconstitutional and excessive, since it was approximately 17 times the amount of compensatory damages awarded.  Generally, a verdict for punitive damages is excessive where the award bears no relation to the amount the defendant is able to pay and where the tort committed is lacking the degree of maliciousness to sustain the amount of the

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

verdict. *Wackenhut Corp. v. Canty,* 359 So.2d 430, 435-36 (Fla.1978); *see also St. Regis Paper Co. v. Watson,* 428 So.2d 243, 248 (Fla.1983)(holding a punitive damages award must not bankrupt the defendant, and must be proportionate to the magnitude of the wrong committed). Moreover, when any punitive damages award is greater than three times the amount of compensatory damages awarded, the award is presumed excessive unless the plaintiff shows, through clear and convincing evidence, that the award is not excessive in light of the facts and circumstances which were presented to the trier of fact. § 768.73(1), Fla. Stat. (1993); *Jenkins,* 409 So.2d at 1042.

**\*\*4** While the presumptively excessive punitive damages award in this case raises our judicial eyebrows at first glance, it does not shock our judicial conscience given the instant facts. The evidence at trial showed that Owens-Corning knew of the deleterious health risks associated with Kayio for decades, yet consciously made a purely economic decision not to warn its consumers, change its process, remove the asbestos, and/or replace the fibers with readily available, asbestos-free fibers. As a result of this conduct, Ballard was exposed to Kaylo at several job sites and developed terminal lung cancer. Considering the level of reprehensibility of the conduct involved, and the actual harm done to Ballard, we find that the punitive damages award, while facially disproportionate to the amount of compensatory damages awarded, is not against the manifest weight of the evidence on this ground. *See, e.g., Owens-Corning Fiberglas Corp. v. Rivera,* 683 So.2d 154 (Fla. 3d DCA 1996), *rev. denied,* 691 So.2d 1080 (1997); *W.R. Grace & Company-Conn. v. Waters,* 638 So.2d 502 (Fla.1994); *Johns-Manville Sales Corp. v. Janssens,* 463 So.2d 242, 249 (Fla. 1st DCA 1984), *petition for rev. denied,* 467 So.2d 999 (Fla.1985).

Moreover, we do not find that the award will bankrupt Owens-Corning. Owens-Corning attempts to argue that, because it has 7,000 Kaylo-related claims currently pending, and has paid millions of dollars in punitive damages for other such claims in

the past, the award will ruin it financially. However, Owens-Corning did not tender any evidence at trial as to the amount of sums it had paid in punitive damages for similar conduct in the past; accordingly, it may not offer it here. *See Stevens v. Owens-Corning Fiberglas Corp.,* 49 Cal.App.4th 1645, 57 Cal.Rptr.2d 525 (1996)(rejecting the company's strategy of withholding evidence on prior punitive damages in an attempt to later attack a punitive damages award). Given that the record supports that the award was less than 2% of Owens-Corning's net worth, and that Owens-Corning conceded that an punitive damages award of $10 million would not hurt it financially, we do not find that the trial court's failure to reduce the award was an abuse of discretion. *See Siedlecki v. Arabia,* 699 So.2d 1040, 1041 (Fla. 4th DCA), *cause dismissed sub nom., Biscayne Ins. Co. v. Arabia,* 705 So.2d 7 (Fla.1997), *rev. dismissed,* 707 So.2d 1126 (Fla. Jan. 23, 1998)(Table No. 91, 789); *Bill Branch Chevrolet, Inc. v. Burkert,* 521 So.2d 153, 155 (Fla. 2d DCA), *rev. denied,* 531 So.2d 167 (Fla.1988). However, since we have been unable to locate any punitive damages award against Owens-Corning as large as that awarded in this case based on similar conduct, we certify the following question to the Supreme Court as one of great public importance:

**\*\*5.** IS THE STATUTORY PRESUMPTION AS TO EXCESSIVE PUNITIVE DAMAGES, FOUND IN SECTION 768.73(1), FLORIDA STATUTES, OVERCOME IN A CASE WHERE THE PUNITIVE DAMAGES AWARD IS ALMOST 18 TIMES THE COMPENSATORY DAMAGES AWARDED, WHEN IT IS BASED ON CLEAR AND CONVINCING EVIDENCE THAT THE AWARD WAS LESS THAN 2% OF THE DEFENDANT'S COMPANY'S NET WORTH, AND THAT THE DEFENDANT'S CONDUCT WAS MORE EGREGIOUS THAN THE STANDARD OF WANTON AND WILFUL DISREGARD FOR THE SAFETY OF THE PLAINTIFF?

AFFIRMED.

DELL and STEVENSON, JJ., concur.

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

(                                                          (

**\*492**  703 So.2d 492

22 Fla. L. Weekly D2741

**ACandS, INC. f/k/a Armstrong Contracting
& Supply Corporation, Appellant,
v.
Carol H. REDD, Appellee.**

No. 95-2822.

District Court of Appeal of Florida,

Third District.

Dec. 10, 1997.

Worker brought products liability action against manufacturer of asbestos-containing products, in which worker's wife filed derivative claim for loss of consortium. After worker died during course of trial, the Circuit Court, Dade County, Arthur Rothenberg, J., held that worker's claim abated with his death, but that wife's claim survived, and entered judgment on jury verdict awarding wife $7.2 million. Defendant appealed, and on rehearing, the District Court of Appeal, Goderich, J., held that: (1) wife's derivative consortium claim did not survive worker's death, which resulted in abatement of his cause of action; (2) admission of emotional testimony by wife regarding worker's death warranted new trial; and (3) damage award was excessive; and in an opinion by Cope, J., held that: (4) false testimony regarding worker's exposure to asbestos warranted new trial.

Reversed, and conflict certified.

Cope, J., concurred and filed opinion in which Nesbitt, J., concurred.

**1. ABATEMENT AND REVIVAL** ⟜ **58(1)**
    2     ----
    2V       Death of Party and Revival of Action
    2V(A)      Abatement or Survival of Action
    2k58            Actions and Proceedings Which
              Abate
    2k58(1)       Actions for personal injuries.

Fla.App. 3 Dist. 1997.
    Derivative cause of action for loss of consortium asserted by wife of plaintiff who brought products liability action against manufacturer of asbestos-

containing products did not survive plaintiff's death, which occurred during course of trial and which resulted in abatement of plaintiff's action. West's F.S.A. § 768.20.

**2. ABATEMENT AND REVIVAL** ⟜ **58(1)**
    2     ----
    2V       Death of Party and Revival of Action
    2V(A)      Abatement or Survival of Action
    2k58            Actions and Proceedings Which
              Abate
    2k58(1)       Actions for personal injuries.

Fla.App. 3 Dist. 1997.
    Derivative consortium claim asserted by spouse of individual who has asserted primary cause of action does not survive death of spouse who has suffered primary injury, which abates primary action. West's F.S.A. § 768.20.

**3. HUSBAND AND WIFE** ⟜ **209(3)**
    205     ----
    205VI    Actions
    205k206    Rights of Action by Husband or Wife
              or Both
    205k209       For Torts
    205k209(3)       Personal injuries to wife resulting
              in loss of services or consortium,
              impairment of earning capacity, or
              expenses.

    [See headnote text below]

**3. HUSBAND AND WIFE** ⟜ **209(4)**
    205     ----
    205VI    Actions
    205k206    Rights of Action by Husband or Wife
              or Both
    205k209       For Torts
    205k209(4)    Personal injuries to husband.

Fla.App. 3 Dist. 1997.
    Claim for loss of consortium is derivative in nature and wholly dependent on ability of spouse who suffered direct injury to recover.

**4. HUSBAND AND WIFE** ⟜ **209(3)**
    205     ----
    205VI    Actions
    205k206    Rights of Action by Husband or Wife
              or Both
    205k209       For Torts
    205k209(3)       Personal injuries to wife resulting

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

703 So.2d 492, 22 Fla. L. Weekly D2741, ACandS, Inc. v. Redd, (Fla.App. 3 Dist. 1997)     **Page 2**

in loss of services or consortium, impairment of earning capacity, or expenses.

[See headnote text below]

## 4. HUSBAND AND WIFE⊗⇒ 209(4)
    205    ----
    205VI    Actions
    205k206    Rights of Action by Husband or Wife or Both
    205k209    For Torts
    205k209(4)    Personal injuries to husband.

Fla.App. 3 Dist. 1997.
   Primary cause of action for personal injury, and derivative cause of action by plaintiff's spouse for loss of consortium, are separate and distinct, and thus, spouse can maintain consortium claim in situations where there has not been joinder of injured spouse or when injured spouse has executed consent judgment or release as to his or her claim.

## 5. TRIAL⊗⇒ 133.1
    388    ----
    388V    Arguments and Conduct of Counsel
    388k133    Action of Court
    388k133.1    In general; duty of court.

Fla.App. 3 Dist. 1997.
   Admission during loss of consortium action, which was brought by wife of worker who had died of asbestos-related disease, of highly emotional testimony regarding worker's death, which was admitted after extensive graphic, detailed testimony about pain worker had endured, was highly prejudicial and warranted mistrial; while some of testimony may have been relevant, testimony's effect was so pervasive that fair trial was impossible.

## 6. DAMAGES⊗⇒ 133
    115    ----
    115VII    Inadequate and Excessive Damages
    115k129    Injuries to the Person
    115k133    Loss of earnings, services, or consortium.

Fla.App. 3 Dist. 1997.
   Award of $7.2 million for five and one-half years of loss of consortium to wife of worker, who had suffered from asbestos-related disease, was excessive and warranted new trial.

## 7. NEW TRIAL⊗⇒ 90
    275    ----
    275II    Grounds
    275II(G)    Surprise, Accident, Inadvertence, or Mistake
    275k90    Testimony and conduct of witness.

Fla.App. 3 Dist. 1997.
   Admission of false testimony by worker who suffered from asbestos-related disease, which included testimony relating to dates of his asbestos exposure, warranted new trial on loss of consortium claim asserted by worker's wife during worker's products liability action, on which wife had prevailed after worker died during course of trial.

   **\*493** Blaire & Cole and Susan J. Cole, Coral Gables; Patillo & McKeever and Jean Bice, Ocala; Cooper & Wolfe, Marc Cooper and Maureen E. Lefebvre, Miami, for appellant.

   Holland & Knight, Daniel S. Pearson, Christopher N. Bellows and Lenore C. Smith, Miami, for appellee.

   Before NESBITT, COPE and GODERICH, JJ.

   *On Rehearing*

   GODERICH, Judge.

   We grant the appellee, Carol Redd's, unopposed motion for rehearing and substitute the opinion filed on July 30, 1997, with the following opinion.

   The defendant, ACandS, Inc., appeals from an adverse final judgment and from the denial of its post-judgment motion for a new trial. We reverse.

   In 1991, Dr. James V. Redd filed a personal injury suit against ACandS, and his wife, Carol Redd, filed a derivative claim for loss of consortium. Dr. Redd alleged that he was diagnosed with mesothelioma in October 1989, and that he had developed mesothelioma as a result of exposure to ACandS' asbestos products.

   On March 27, 1995, the cause proceeded to trial. The plaintiffs presented Dr. Redd's videotape deposition testimony and the live testimony of his surgeons and his wife. These witnesses gave explicit, graphic testimony about Dr. Redd's

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

physical condition, the surgeries that were performed, the radiation treatments he underwent, and the pain he endured as a result. On April 1st, during a weekend jury recess, Dr. Redd died from the mesothelioma.

When the trial resumed, the parties and the court discussed the impact that Dr. Redd's death would have on the trial. Based on *Taylor v. Orlando Clinic*, 555 So.2d 876 (Fla. 5th DCA 1989), *review denied*, 567 So.2d 435 (Fla.), and *review denied*, 567 So.2d 436 (Fla.1990), the trial court concluded that Dr. Redd's personal injury claim abated with his death, but that Carol Redd's consortium claim survived. The defense requested a mistrial on the basis that the jury would be influenced in the loss of consortium claim by the significant testimony that they heard regarding Dr. Redd's damages. The court denied the motion.

The court informed the jury of Dr. Redd's death, and the trial continued. Carol Redd resumed her testimony and when asked about the impact that Dr. Redd's illness had on their marriage, she continued to give testimony about Dr. Redd's suffering. The defense objected to her testimony, and Carol Redd apologized stating that she was having a difficult time expressing herself since her husband's death on Saturday. Carol Redd then continued to testify about her husband's suffering and eventually concluded with a highly emotional description of her husband's actual death. The defense then renewed its motion for a mistrial, and the court denied it.

The case proceeded, and the jury returned a verdict finding ACandS liable and awarding Carol Redd $7.2 million in damages for loss of consortium. Subsequently, the trial court denied ACandS post-trial motion for a new trial, and this appeal follows.

ACandS contends that the trial court erred by allowing the trial to continue on Carol Redd's loss of consortium claim after Dr. Redd died from mesothelioma. We agree.

The Florida Wrongful Death Act provides, in relevant part, that "[w]hen a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." § 768.20, Fla. Stat. (1995). Clearly, in the instant case, when Dr. Redd died from mesothelioma, the trial

court properly concluded that his personal injury action abated.

[1] [2] However, the issue before us is whether Carol Redd's derivative cause of action for loss of consortium survived Dr. Redd's death. We conclude that it did not.

[3] In *Gates v. Foley*, 247 So.2d 40, 45 (Fla.1971), the Florida Supreme Court found that where a husband's cause of action had been terminated by an adverse judgment on the merits, the wife's cause of action for loss of consortium was barred. The Florida Supreme Court held that "[a wife's] right of **\*494** action [for loss of consortium] is a derivative right and she may recover only if her husband has a cause of action against the same defendant." *Gates*, 247 So.2d at 45. In other words, "[a wife's] claim for loss of consortium is derivative in nature and wholly dependent on her husband's ability to recover." *Faulkner v. Allstate Ins. Co.*, 367 So.2d 214, 217 (Fla.1979)(citing *Gates* ).

Applying this rationale to the instant case, where the husband's cause of action for personal injury abated with his death, the wife's cause of action for loss of consortium also abated. See *Fuller v. Hahn*, 313 So.2d 419, 420-21 (Fla. 1st DCA 1975)(holding that where a spouse is killed as a result of the injuries giving rise to a negligence action, damages by reason of loss of services, society, affection, consortium and funeral expenses incurred as a result of death are recoverable only in a wrongful death action, as opposed to a negligence action).

[4] Carol Redd argues that this is the wrong conclusion and that we should follow the Fifth District's holding in *Taylor* that "[t]he wife's cause of action for loss of consortium, while derived from the personal injury to her husband, survives the death of her husband ..., whose own personal injury action did not survive his death." *Taylor*, 555 So.2d at 878. The *Taylor* court cites several cases in support of this proposition, including *Busby v. Winn & Lovett Miami, Inc.*, 80 So.2d 675 (Fla.1955); *Orange County v. Piper*, 523 So.2d 196 (Fla. 5th DCA), *review denied*, 531 So.2d 1354 (Fla.1988); *Ryter v. Brennan*, 291 So.2d 55 (Fla. 1st DCA), *cert. denied*, 297 So.2d 836 (Fla.1974); and *Resmondo v. International Builders of Florida, Inc.*, 265 So.2d 72 (Fla. 1st DCA 1972). We do not read these cases as the *Taylor* court did. Rather, instead of reading these cases as standing for the proposition

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

that the loss of consortium claim survives the primary action, we read these cases to stand for the proposition that the primary cause of action for personal injury and the derivative cause of action for loss of consortium are "separate and distinct." *Busby,* 80 So.2d at 676 (holding that a husband's consortium claim is "separate and distinct" from his wife's personal injury claim and may be maintained without joinder of the injured wife); *Piper,* 523 So.2d at 197-98 (holding that a wife's failure to give notice by filing her loss of consortium claim with the county or by joining her husband's personal injury claim warranted its dismissal); *Ryter,* 291 So.2d at 56-57 (holding that husband's release did not abate wife's cause of action for loss of consortium, which was a property right in her own name); *Resmondo,* 265 So.2d at 73-74 (holding that entry of a consent judgment in favor of husband did not abate wife's cause of action for loss of consortium).

By the term "separate and distinct," these courts do not mean that a derivative cause of action can exist in the absence of a primary cause of action. Instead, the term "separate and distinct" means that a spouse can maintain a consortium claim in situations where there has not been joinder of the injured spouse, *Busby,* or where the injured spouse has executed a consent judgment or a release as to his or her claim. *Ryter; Resmondo.* Accordingly, we decline to follow *Taylor* and certify conflict with the Fifth District.

We are further persuaded that the legislature did not intend for a spouse's consortium claim to survive an injured spouse's death from his or her injuries by the fact that the legislature has provided for wrongful death damages that are inclusive of a spouse's loss of consortium damages. The *Gates* court explained:

> [Loss of consortium means] the companionship and fellowship of husband and wife and the right of each to the company, cooperation and aid of the other in every conjugal relation.  Consortium means much more than mere sexual relation and consists, also, of that affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance so necessary to a successful marriage.

*Gates,* 247 So.2d at 43.   Similarly, the Florida Wrongful Death Act provides that "[t]he surviving

spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury." § 768.21(2), Fla. Stat. (1995). Further, the Act provides that "[e]ach survivor *495   [including the decedent's spouse (FN1)] may recover the value of lost support (FN2) and services (FN3) from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value." § 768.21(1), Fla. Stat. (1995). Because the Act allows recovery for these types of damages from the date of injury, rather than the date of death, they are inclusive of the types of damages that would be associated with a loss of consortium claim.

Accordingly, we find that the trial court erred by allowing the trial to continue on Carol Redd's loss of consortium claim after Dr. Redd died, and we reverse the resulting final judgment.

Although this issue is dispositive, we will address two of the other issues raised in this appeal. ACandS contends that the trial court abused its discretion by repeatedly denying its motions for mistrial and by denying its motion for a new trial on the basis that the verdict was excessive.  We agree.

[5] [6] In the instant case, the jury heard extensive graphic, detailed testimony about the pain and suffering Dr. Redd endured.   After Dr. Redd's cause of action abated with his death, the jury was presented with even more highly emotional testimony about Dr. Redd's suffering and his actual death.  Although some of this testimony may have been relevant to Carol Redd's claim for loss of consortium, we find that the jury's award of $7.2 million for five and a half years of loss of consortium (FN4) is so excessive that it is evidence that the prejudicial testimony complained of by the defendant was in fact so extensive that its influence pervaded the trial such that a fair trial was impossible. *Harbor Ins. Co. v. Miller,* 487 So.2d 46, 47 (Fla. 3d DCA), *review denied,* 496 So.2d 143 (Fla.1986).  Therefore, the trial court abused its discretion by denying the defendant's motions for mistrial, and as an alternative basis for reversal, we find that the defendant is entitled to a new trial.

Reversed; conflict certified.

NESBITT, J., concurs.

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

COPE, J., concurs with opinion.

COPE, Judge, concurring.

I join the opinion of the court.

By motion for rehearing, both parties have also requested that we address the appellant's third point on appeal, the claim that ACandS is entitled to a new trial because of false testimony. In my view, the defendant is entitled to a new trial for this reason as well.

The theory of Dr. Redd's case was that he had only been exposed to asbestos during a hospital renovation in Charleston, South Carolina, in the mid-1960s. On multiple occasions, Dr. Redd specifically testified that he had no earlier or later exposure. His exposure sheets revealed a claim of exposure to products of Fibreboard, another asbestos manufacturer, but Dr. Redd's testimony was unequivocal that his exposure was confined to the facility at Charleston, South Carolina, in the mid-1960s.

[7] After verdict, in order to calculate set-offs on account of settlement, counsel for the Redds gave defendant documentation for a settlement which had been reached with Fibreboard while the present case was pending. **\*496.** The documents disclosed that the claim against Fibreboard was for an exposure which occurred in 1957 during construction work in Nashville, Tennessee. According to defendant, the latency period for Dr. Redd's disease was short if measured from the mid-1960s, but within the midrange if measured from 1957. Defendant has also shown that there was untruthful testimony by Dr. Redd in another phase of the case, the details of which need not be reviewed here, which may have materially affected the defense of the consortium claim. Whether these material misrepresentations are considered individually or collectively, defendant is entitled to a new trial. See Southern Trenching, Inc.

*v. Diago,* 600 So.2d 1166 (Fla. 3d DCA 1992); *Sledge v. Richards,* 592 So.2d 316 (Fla. 3d DCA 1991); *McFarlin v. Jack Eckerd Corp.,* 581 So.2d 181 (Fla. 3d DCA 1991); *Kline v. Belco, Ltd.,* 480 So.2d 126 (Fla. 3d DCA 1985); *Roberto v. Allstate Ins. Co.,* 457 So.2d 1148 (Fla. 3d DCA 1984); *Gaiter v. Winn Dixie Stores, Inc.,* 376 So.2d 912 (Fla. 3d DCA 1979). If during the proceedings below, trial counsel knew that Dr. Redd's testimony was untruthful, counsel had an independent obligation to set the record straight.

NESBITT, J., concurs.

FN1. § 768.18(1), Fla. Stat. (1995).

FN2. Section 768.18(3), Florida Statutes (1995), defines "support" as "contributions in kind as well as money."

FN3. Section 768.18(4), Florida Statutes (1995), defines "services," in part, as "tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense for the survivors of the decedent."

FN4. Because Carol Redd proceeded with her loss of consortium claim on the theory that it survived Dr. Redd's death, she sought damages for the loss of consortium that she suffered during the five-and-one-half year period that Dr. Redd was ill with cancer, that is, from the date that Dr. Redd was diagnosed with mesothelioma in October 1989 until the date of his death in April 1995. Because Carol Redd's action was not brought pursuant to the wrongful death statute, she did not seek any damages for Dr. Redd's death or for any economic or non-economic damages resulting from his death. Accordingly, the $7.2 million award was solely to compensate her for the loss of Dr. Redd's consortium during the time of his illness until his death.

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

683 So.2d 154, 21 Fla. L. Weekly D2274, Owens-Corning Fiberglas Corp. v. Rivera, (Fla.App. 3     **Page 1**
Dist. 1996)

**\*154** 683 So.2d 154

21 Fla. L. Weekly D2274, Prod.Liab.Rep.
(CCH) P 14,786

**OWENS-CORNING FIBERGLAS
CORPORATION, Appellant,**
v.
**Ernestine I. RIVERA, as Personal
Representative of the Estate of Jesse Rivera,
deceased, Appellee.**

**Nos. 96-185, 95-3208.**

District Court of Appeal of Florida,

Third District.

Oct. 23, 1996.

Rehearing Denied Dec. 4, 1996.

Estate of worker who had died of injuries related
to asbestos exposure brought products liability action
against manufacturer of asbestos-containing product.
The Circuit Court, Dade County, Arthur J.
Rothenberg, J., entered judgment on jury verdict
awarding $3,545,000 in compensatory damages and
$1,500,000 in punitive damages, and manufacturer
appealed. The District Court of Appeal held that:
(1) rejection of manufacturer's statute of repose
defense on basis that worker had been unable to
timely discover injuries was proper, and (2) punitive
damages award, which followed imposition of
punitive damages against manufacturer in prior
actions, did not violate due process clause.

Affirmed.

**1. CONSTITUTIONAL LAW**☞ **328**
    92    ----
    92XIII    Right to Justice and Remedies for
        Injuries
    92k328    Courts to be open.

[See headnote text below]

**1. LIMITATION OF ACTIONS**☞ **4(2)**
    241    ----
    241I    Statutes of Limitation
    241I(A)    Nature, Validity, and Construction in
        General

    241k4    Validity of Statutes
    241k4(2)    Constitutionality of statute.

Fla.App. 3 Dist. 1996.
When injury has occurred but cause of action
cannot be pursued because results of injury could not
be discovered, statute of limitation barring action
bars access to courts and is constitutionally
impermissive.

**2. CONSTITUTIONAL LAW**☞ **328**
    92    ----
    92XIII    Right to Justice and Remedies for
        Injuries
    92k328    Courts to be open.

[See headnote text below]

**2. LIMITATION OF ACTIONS**☞ **4(2)**
    241    ----
    241I    Statutes of Limitation
    241I(A)    Nature, Validity, and Construction in
        General
    241k4    Validity of Statutes
    241k4(2)    Constitutionality of statute.

Fla.App. 3 Dist. 1996.
Application of statute of limitations to bar products
liability action based on exposure to asbestos which
occurred between 1963 and 1966, results of which
could not be timely discovered, would violate
plaintiff's constitutional right of access to courts, so
that rejection of limitations defense was proper.

**3. CONSTITUTIONAL LAW**☞ **303**
    92    ----
    92XII    Due Process of Law
    92k299    Creation or Discharge of Liability in
        General
    92k303    Penalties or forfeitures.

[See headnote text below]

**3. DAMAGES**☞ **94**
    115    ----
    115V    Exemplary Damages
    115k94    Amount of exemplary damages.

Fla.App. 3 Dist. 1996.
Award of $1,500,000 in punitive damages to
plaintiff in products liability action against
manufacturer of asbestos-containing product was not

Copyright (c) West Group 1998 No claim to original U.S. Govt. works

grossly excessive and did not violate due process clause, even though manufacturer had previously been subjected to imposition of punitive damages in separate actions; repetitive punitive damage awards are permissible, manufacturer while not availing itself of protection provided by bifurcation of proceeding was allowed to argue to jury the financial impact of asbestos litigation, and award was proportionate to compensatory damages award of $3,545,000. U.S.C.A. Const.Amend. 14.

*155 Berger & Chafetz and Steven R. Berger, Miami, for appellant.

Robles & Gonzalez and Juan P. Bauta, Miami, for appellee.

Before BARKDULL, NESBITT and COPE, JJ.

PER CURIAM.

In this product liability action, Owens-Corning Fiberglas Corp., the manufacturer of Kaylo, an asbestos containing product, seeks reversal of judgment in plaintiff's favor, including punitive damages. On the following brief analysis, we affirm.

Ernest J. Rivera, as personal representative of the estate of Jesse Rivera, deceased, brought the instant action against a number of defendants, alleging decedent had been exposed to Kaylo between 1963 and 1966. Owens-Corning answered asserting affirmative defenses including the statute of repose. Also, the manufacturer argued that repeated imposition of punitive damages was grossly excessive and violated the due process clause of the Fourteenth Amendment. All other named defendants settled and the cause went to trial solely against Owens-Corning. During the course of the trial, the manufacturer moved for a directed verdict, again posing the statute of repose defense, and again arguing a violation of due process would be occasioned by an award of punitive damages. Ultimately, final judgement was entered in Rivera's favor for $3,545,000, of that amount $1,500,000 being for punitive damages.

[1] [2] The manufacturer argues the same two issues on appeal. *Owens-Corning Fiberglass v. Corcoran,* 679 So.2d 291 (Fla. 3d DCA 1996) is dispositive of the manufacturer's statute of repose

defense. In *Corcoran,* we observed: "[w]hen an injury has occurred but a cause of action cannot be pursued because the results of the injury could not be discovered, a statute of limitation barring the action ... bar[s] access to the courts and is constitutionally impermissive." *Id.* (quoting *Diamond v. E.R. Squibb & Sons, Inc.,* 397 So.2d 671, 672 (Fla.1981)) (McDonald, J. concurring). Concluding *Corcoran* controls, we find that the trial court here properly rejected Owens-Corning's statute of repose defense.

[3] Likewise unmeritorious is Owens-Corning's argument that the instant punitive damages award constitutes excessive punishment. Our Supreme Court's opinion in *W.R. Grace & Co. Conn. v. Waters,* 638 So.2d 502 (Fla.1994) (FN1) approved repetitive punitive *156. damage awards. The case also provided a mechanism for affording a defendant the opportunity to show a jury how much it had already been punished for its behavior, and to argue against any further award as excessive.

Here, Owens-Corning introduced evidence to the jury regarding the company's financial status and the amount it had paid in prior punitive damage awards. Owens-Corning chose not to avail itself of the protection offered by the option of bifurcation. *Waters,* 638 So.2d at 504. However, the manufacturer certainly argued the financial impact of asbestos litigation.

Supporting its due process claim the manufacturer relies on *BMW of North America v. Gore,* --- U.S. ----, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The court in *BMW* recognized a grossly excessive punitive damages award violates the due process clause, and held that a $2 million punitive award against BMW for failing to disclose that the company had repainted a new $40,000 car, thereby reducing its value by $4000, was grossly excessive. In evaluating such a claim, *BMW* advises consideration of the level of reprehensibility of a manufacturer's conduct and analysis of the ratio between the damages awarded and the actual harm done to the injured party. We need go no further than consider the instant conduct, which was highly deleterious to human health, and the instant compensatory and punitive awards, which were clearly proportionate, to conclude this manufacturer's due process argument fails.

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

683 So.2d 154, 21 Fla. L. Weekly D2274, Owens-Corning Fiberglas Corp. v. Rivera, (Fla.App. 3    **Page 3**
Dist. 1996)

Accordingly, the order under review is affirmed.

FN1. *Waters,* 638 So.2d at 504 observed:

The courts of other jurisdictions have unanimously refused to limit the imposition of successive punitive damage awards in mass tort or products liability litigation. *E.g., Dunn v. HOVIC,* 1 F.3d 1371 (3d Cir.), *modified in part on other grounds,* 13 F.3d 58 (3d Cir.), *cert. denied,* 510 U.S. 1031, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993); *Glasscock v. Armstrong Cork Co.,* 946 F.2d 1085 (5th Cir.1991), *cert. denied,* 503 U.S. 1011, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992); *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394 (5th Cir.), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Moran v. Johns-Manville Sales Corp.,* 691 F.2d 811 (6th Cir.1982) . Three of Florida's district courts of appeal have reached the same conclusion. *Waters,* 610 So.2d at 20; *Baione v. Owens-Illinois, Inc.,* 599 So.2d 1377 (Fla. 2d DCA 1992); *Johns-Manville Sales Corp. v. Janssens,* 463 So.2d 242 (Fla. 1st DCA 1984), *review denied,* 467 So.2d 999 (Fla.1985); *Celotex Corp. v. Pickett,* 459 So.2d 375 (Fla. 1st DCA 1984), *approved,* 490 So.2d 35 (Fla.1986).

The court discarded the "first comer" theory of punitive damages ... as a theory "uniformly rejected." *Id.* and citing with approval *State ex rel Young v. Crookham,* 290 Or. 61, 618 P.2d 1268, 1272 (1980) for the proposition that a system which reduces civil justice to a race to the courthouse steps should not be endorsed.

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

683 So.2d 552, 21 Fla. L. Weekly D2224, Owens-Corning Fiberglas Corp. v. Crane, (Fla.App. 3 Dist.   **Page 1** 1996)

**\*552** 683 So.2d 552

21 Fla. L. Weekly D2224

**OWENS-CORNING FIBERGLAS CORPORATION, Appellant,**
**v.**
**Naomi CRANE, as Personal Representative of the Estate of Survivors of Carlton D. Crane, Deceased, Appellee.**

**Nos. 95-951, 95-1263.**

District Court of Appeal of Florida,

Third District.

Oct. 16, 1996.

Rehearing Denied Dec. 18, 1996.

Estate of deceased pipefitter brought wrongful death action against manufacturers of asbestos-laden products. Following jury trial of claims which remained against one manufacturer after other defendants settled, the Circuit Court, Dade County, Arthur L. Rothenberg, J., entered $950,900 judgment for plaintiff. Manufacturer appealed. The District Court of Appeal held that: (1) action was not barred by 12-year products liability statute of repose, though brought over 25 years after last exposure to manufacturer's product; but (2) comments by plaintiff's attorney during defendant's closing argument and during rebuttal argument, insinuating that opposing counsel had fabricated evidence, constituted fundamental error and warranted new trial.

Reversed and remanded for new trial.

**1. CONSTITUTIONAL LAW**⬳ **328**
    92    ----
    92XIII    Right to Justice and Remedies for Injuries
    92k328    Courts to be open.

[See headnote text below]

**1. DEATH**⬳ **37**
    117    ----
    117III  Actions for Causing Death
    117III(D)  Limitations

    117k37    Application of general statutes of limitations.

Fla.App. 3 Dist. 1996.
    Action against manufacturer of asbestos-containing products to recover for wrongful death of pipefitter the previous year was not barred by 12-year products liability statute of repose, though suit was brought over 25 years after pipefitter's last exposure to manufacturer's product; application of statute of repose would result in unlawful denial of plaintiff's access to the courts. F.S.1985, § 95.031(2).

**2. APPEAL AND ERROR**⬳ **1060.1(7)**
    30    ----
    30XVI    Review
    30XVI(J)  Harmless Error
    30XVI(J)12  Arguments and Conduct of Counsel
    30k1060.1    In General
    30k1060.1(2)    Particular Argument or Conduct
    30k1060.1(7)    Comments on character or conduct of parties or counsel.

Fla.App. 3 Dist. 1996.
    Comments by wrongful death plaintiff's attorney during opposing side's closing argument, repeatedly accusing opposing counsel of fabricating and misrepresenting evidence, and comments during rebuttal argument insinuating that opposing counsel had been less than forthright about the evidence, constituted fundamental error and warranted new trial.

**3. APPEAL AND ERROR**⬳ **1060.1(7)**
    30    ----
    30XVI    Review
    30XVI(J)  Harmless Error
    30XVI(J)12  Arguments and Conduct of Counsel
    30k1060.1    In General
    30k1060.1(2)    Particular Argument or Conduct
    30k1060.1(7)    Comments on character or conduct of parties or counsel.

Fla.App. 3 Dist. 1996.
    While trial attorneys may point out perceived discrepancies in evidence introduced at trial and opposing counsel's characterization of the same, it is never acceptable for one attorney to effectively impugn integrity or credibility of opposing counsel before the jury in the process; even in absence of contemporaneous objection, such comments about opposing counsel made during closing argument are

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

683 So.2d 552, 21 Fla. L. Weekly D2224, Owens-Corning Fiberglas Corp. v. Crane, (Fla.App. 3 Dist.    **Page 2**
1996)

fundamentally erroneous.

**\*553** Blaire & Cole, Coral Gables; Berger & Chafetz and Steven R. Berger, Miami, for appellant.

Robles & Gonzalez, P.A., Miami; A.J. Barranco & Associates, P.A. and Sam Daniels and Michael Pfundstein and Robert Kohlman, Miami, for appellee.

Robert A. Butterworth, Attorney General and Louis F. Hubener, Assistant Attorney General, for Amicus Curiae, State of Florida.

Before BARKDULL, LEVY and GREEN, JJ.

PER CURIAM.

Owens-Corning Fiberglas Corporation ("OCF") appeals from a final judgment awarding Naomi Crane as personal representative of the estate of Carlton Crane both compensatory and punitive damages in a wrongful death action after a jury trial.

Naomi Crane filed suit below in September 1992 against OCF and other defendants for the asbestos-related death of her husband, Carlton. Prior to his death in 1991, Carlton Crane had been employed as a pipefitter and had been exposed to asbestos-laden products manufactured by OCF from 1956 through 1966. This case proceeded to trial solely against OCF after all of the remaining defendants settled prior to trial for a total of $157,100. After a two week trial, the jury found in favor of Crane on the issues of negligence and strict liability and attributed 60% of the fault to OCF and 40% to "others". As compensatory damages, the jury awarded the Plaintiff $98,000 for past and future economic damages and $344,000 for past and future noneconomic damages. The jury further found OCF liable for punitive damages.

Approximately two weeks later, the same jury was reconvened to consider the amount of punitive damages to be awarded. Although OCF requested two days for the trial, the court limited this trial to one day. The jury awarded the plaintiff $666,000 in punitive damages.

Thereafter, final judgment was entered in the plaintiff's favor in the amount of $950,900 which represented the difference between the total amount

awarded by the jury ($1,108,000) and the amount paid by the settling defendants ($157,100). (FN1) The court declined to reduce the plaintiff's noneconomic damages further by the 40% of fault the jury attributed to "others" because it found that OCF's conduct "rose to the level of intentional, willful, or wanton." This appeal followed the judgment.

[1] We first address OCF's argument that this action is barred by the twelve year **\*554** products liability statute of repose formerly found at subsection 95.031(2), Florida Statutes. *See, e.g.,* § 95.031(2), Fla. Stat. (1985) (repealed in pertinent part by ch. 86-272, § 2 at 2020, Laws of Fla.). In support of this argument, OCF points to the fact that Mr. Crane's last possible exposure to its asbestos product occurred in either 1966 or 1967 and this suit was not brought until 1992, more than twenty-five years later. We recently considered this precise issue in *Owens-Corning Fiberglass Corp. v. Corcoran,* 679 So.2d 291 (Fla. 3d DCA 1996). Citing to *Diamond v. E.R. Squibb & Sons, Inc.,* 397 So.2d 671 (Fla.1981), we found that an application of the statute of repose under the facts of this case would result in an unlawful denial of the plaintiff's access to the courts, therefore, we concluded that the statute was not a bar to recovery. *Corcoran,* 679 So.2d at 293. Accordingly, the trial court did not err in denying OCF's motion to dismiss the complaint or motion for directed verdict.

[2] Next, OCF asserts that it is entitled to a new trial because of certain inflammatory, improper and prejudicial comments made by plaintiff's counsel during closing arguments. OCF asserts that its counsel's credibility was impugned before the jury during its closing argument when Crane's counsel repeatedly accused OCF's counsel of fabricating and misrepresenting the evidence in a speaking objection. (FN2) Further, when Crane's counsel began his rebuttal argument, he asked the jurors to rely upon their recollection of the evidence but he again insinuated that OCF's counsel had been less than forthright with them about the evidence. (FN3)

[3] The appellee, on the other hand, argues that the trial court correctly denied OCF's motion for a new trial on this issue where no objection was made to the statements during the trial, and where OCF otherwise failed to demonstrate that they constituted fundamental error. We disagree and find plaintiff's

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

683 So.2d 552, 21 Fla. L. Weekly D2224, Owens-Corning Fiberglas Corp. v. Crane, (Fla.App. 3 Dist.   **Page 3** 1996)

counsel's comments about opposing counsel to come within the purview of those improper comments repeatedly condemned by this court in *Owens Corning Fiberglas Corp. v. Morse*, 653 So.2d 409 (Fla. 3d DCA) (FN4), *rev. denied*, 662 So.2d 932 (Fla.1995), *Sun Supermarkets, Inc. v. Fields*, 568 So.2d 480 (Fla. 3d DCA 1990), *rev. denied*, 581 So.2d 164 (Fla.1991), and *Carnival *555. Cruise Lines, Inc. v. Rosania*, 546 So.2d 736 (Fla. 3d DCA 1989). While it is perfectly permissible for trial attorneys to point out perceived discrepancies in the evidence introduced at trial and opposing counsel's characterization of the same, it is never acceptable for one attorney to effectively impugn the integrity or credibility of opposing counsel before the jury in the process. Even in the absence of a contemporaneous objection, we have found such comments about opposing counsel made during closing argument to be fundamentally erroneous. *Morse*, 653 So.2d at 410-11; *Kaas v. Atlas Chemical Co.*, 623 So.2d 525, 526 (Fla. 3d DCA 1993) ("[A]rguments like these fall squarely within that category of fundamental error--requiring no preservation below--in which the basic right to a fair and legitimate trial has been fatally compromised.").

In conclusion, we find that these improper statements made by plaintiff's counsel sufficiently tainted this proceeding enough to warrant a new trial. We therefore do not reach OCF's remaining challenges to the damages awarded in this case.

Reversed and remanded for a new trial.

FN1. As the final judgment was entered on March 28, 1995, the trial court did not have the benefit of the supreme court's June 15, 1995 opinion in *Wells v. Tallahassee Memorial Regional Medical Ctr.*, 659 So.2d 249 (Fla.1995).

FN2. Specifically, the following transpired:

[OCF's Counsel]: The one last thing that I want to talk to you about is this business about the fibers in the lung. Kaylo is made up of amosite and chrysotile, about 15 percent. Unibestos, the stuff that Mr. Helser said was consistent with the description of the co-workers, 60 to 80 percent amosite. Zonolite, that was that spray on stuff that was talked about in the depositions made by W.R. Grace, that was talc with tremolite.

[Plaintiff's Counsel]: Your honor, I'm going to object at this time. Now that we have fabrication of evidence, this is not true. Unibestos--

THE COURT: Please, we will have no talking objections. Thank you. Sustained.

[OCF's Counsel]: Your Honor, I have--

THE COURT: Sustained. Let's finish up.

[Plaintiff's Counsel]: May it be stricken, Your Honor?

THE COURT: Yes, Let's finish up. Close your argument now if you would, Mrs. Cole.

[Plaintiff's Counsel]: Your Honor, I'm also concerned about the representation of the deposition of Dr. Schepers.

THE COURT: No further objections. I'll overrule your objection. Thank you. Anything else, Mrs. Cole? Move onto another area.

[OCF's Counsel]: Your Honor, may I come side bar briefly so that I can understand your ruling?

THE COURT: No side bar. Let's finish up your final argument, please.

[OCF's Counsel]: Dr. Roggli testified that unibestos was 60 percent amosite asbestos.

[Plaintiff's Counsel]: Your Honor, I object. That's a fabrication.

THE COURT: Overruled. Please go ahead, Mrs. Cole, overruled.

[OCF's Counsel]: Mr. Helser testified that amosite--that unibestos was 60 percent amosite.

[Plaintiff's Counsel]: Your Honor, that is absolutely a misrepresentation of Mr. Helser's-- We've read his transcripts.

THE COURT: Overruled.

[OCF's Counsel]: I can understand why this issue raises some blood pressure, because amosite was what Dr. Cagel and Dr. Roggli found in Mr.

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

683 So.2d 552, 21 Fla. L. Weekly D2224, Owens-Corning Fiberglas Corp. v. Crane, (Fla.App. 3 Dist.    **Page 4** 1996)

Crane's lung tissue.

FN3. Crane's counsel stated as follows:

"Its supposed to mean something to a lawyer to come in here and make representations to the jury. You have the duty and obligation to seek the truth.

Rely on your memory please."

FN4. It is ironic [and unfortunate] that the same attorney who was the object of such improper comments in *Morse* is now the offending counsel in this case.

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

661 So.2d 1301, W.R. Grace & Company-Conn. v. Pyke, (Fla.App. 3 Dist. 1995)          **Page 1**

**\*1301** 661 So.2d 1301

20 Fla. L. Weekly D2445, Prod.Liab.Rep. (CCH) P
14,422

**W.R. GRACE & COMPANY-CONN., and Owens
Corning Fiberglas, Appellants,
v.
Earl PYKE, Appellee.**

Nos. 94-791, 94-767.
District Court of Appeal of Florida,
Third District.

Nov. 1, 1995.

Worker brought personal injury action for damages
against two manufacturers of asbestos, alleging that
they were negligent in failing to warn of dangers of
inhaling asbestos dust. The Circuit Court, Dade
County, Alex Gordon and Arthur Rothenberg, JJ.,
entered judgment for worker, and defendants
appealed. The District Court of Appeal, Barkdull,
J., held that award of damages for loss of future
earning capacity, that awarded more money per year
than worker earned before he was injured, shocked
judicial conscience.

Affirmed in part, reversed in part, and remanded
with directions.

Cope, J., filed special concurring opinion.

1. DAMAGES ☜38
　　115　----
　　115III　Grounds and Subjects of Compensatory
　　　　Damages
　　115III(A)　Direct or Remote, Contingent, or
　　　　Prospective Consequences or Losses
　　115III(A)1　In General
　　115k35　　Pecuniary Losses
　　115k38　　Impairment of earning capacity.
Fla.App. 3 Dist. 1995.
　Purpose of jury's award of damages for loss of any
future earning capacity is to compensate plaintiff for
loss of capacity to earn income as opposed to actual
loss of future earnings.

2. DAMAGES ☜100
　　115　----
　　115VI　Measure of Damages
　　115VI(A)　Injuries to the Person
　　115k100　　Impairment of earning capacity.

[See headnote text below]

2. DAMAGES ☜187
　　115　----
　　115IX　Evidence
　　115k183　Weight and Sufficiency
　　115k187　　Impairment of earning capacity.
Fla.App. 3 Dist. 1995.
　To warrant award of damages for loss of future
earning capacity, plaintiff must demonstrate not only
reasonable certainty of injury, but must present
evidence which will allow jury to reasonably
calculate lost earning capacity, and then measure of
damages is loss of capacity to earn by virtue of any
impairment found by jury and jury must base its
decision on all relevant factors including plaintiff's
age, health, habits, occupation, surroundings, and
earnings before and after injury.

3. DAMAGES ☜216(8)
　　115　----
　　115X　Proceedings for Assessment
　　115k209　Instructions
　　115k216　　Measure of Damages for Injuries to
　　　　the Person
　　115k216(8)　　Loss of earnings, services, or
　　　　consortium, and impairment of earning
　　　　capacity.
Fla.App. 3 Dist. 1995.
　Plaintiff is entitled to instruction on loss of ability
to earn money in future where there is evidence of
injury and evidence which is sufficiently detailed to
allow trier of fact to quantify loss of earning
capacity.

4. DAMAGES ☜187
　　115　----
　　115IX　Evidence
　　115k183　Weight and Sufficiency
　　115k187　　Impairment of earning capacity.
Fla.App. 3 Dist. 1995.
　Pipefitter failed to present evidence regarding his
loss of future earning capacity, concerning
employment market for 53-year-old individual with
high school education, or to support finding that he
was totally disabled and could not earn any money
following his injury, and so was not entitled to
award of damages for loss of future earning
capacity.

5. DAMAGES ☜38
　　115　----

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

(

661 So.2d 1301, W.R. Grace & Company-Conn. v. Pyke, (Fla.App. 3 Dist. 1995)                    **Page 2**

115III   Grounds and Subjects of Compensatory
Damages
115III(A)   Direct or Remote, Contingent, or
Prospective Consequences or Losses
115III(A)1   In General
115k35   Pecuniary Losses
115k38   Impairment of earning capacity.
Fla.App. 3 Dist. 1995.
Florida law does not recognize claim for future
loss of earnings.

6. DAMAGES 🖙 38
115   ----
115III   Grounds and Subjects of Compensatory
Damages
115III(A)   Direct or Remote, Contingent, or
Prospective Consequences or Losses
115III(A)1   In General
115k35   Pecuniary Losses
115k38   Impairment of earning capacity.
Fla.App. 3 Dist. 1995.
Only future damages available relative to income
are damages for loss of earning capacity, which is
measured by plaintiff's diminished ability to earn
money in future;  jury is not to be concerned with
actual future loss of earnings, but with loss of power
to earn.

7. DAMAGES 🖙 134(1)
115   ----
115VII   Inadequate and Excessive Damages
115k129   Injuries to the Person
115k134   Impairment of Earning Capacity
115k134(1)   In general.
Fla.App. 3 Dist. 1995.
Verdict of $810,000 in personal injury action by
worker against manufacturers of asbestos was so
excessive as to shock judicial conscience in light of
evidence that jury could have considered loss of
earning capacity, if any, only for 12-year period,
and so resulting award per year exceeded yearly
income that worker earned prior to his injury.

Kubicki & Draper and Angela C. Flowers;
Crosby, Saad, Beebe & Crump;  Berger & Chafetz
and Steven R. Berger, Miami, for appellants.

Ferraro & Associates and Marjorie N. Salem and
James L. Ferraro, Miami, for appellee.

Before BARKDULL, COPE and GODERICH, JJ.

*1302 BARKDULL, Judge.

This is an appeal from a final judgment against
two defendants in an asbestos personal injury action.
Defendants/appellants are W.R. Grace & Co. Conn.
(Grace) and Owens-Corning Fiberglas Corporation
(OCF).   Plaintiff filed suit against 39 separate
defendants.  He claimed that all of the defendants
were manufacturers or distributors of asbestos-
containing products, that as a pipefitter he was
exposed to those products, and that he contracted an
asbestos-related disease as a result.  Plaintiff alleged
that the defendants were negligent in failing to warn
of the dangers of breathing asbestos dust.
Ultimately, all other defendants were dismissed,
received a directed verdict, or were otherwise
dropped from litigation before submission to the jury
.  The jury returned a verdict in favor of plaintiff
and against OCF and Grace.   Negligence was
apportioned at 70% against OCF and 30% against
Grace. (FN1)  Post-trial motions were denied and
timely    appeals    followed    which    have    been
consolidated.

The issues urged as error are 1) that the trial court
erred   in   denying   Grace's   verified   motion   to
disqualify the trial judge;  2) that the testimony of a
witness, who was shown to be incompetent, should
not have been admitted, or, if he was competent to
testify, the prejudicial effect of his testimony should
have excluded it from jury consideration;  3) that the
trial court erred in failing to instruct the jury to
consider the negligence of non-parties and failing to
include non-parties on the verdict form;  and 4) that
the trial court erred in failing to grant a directed
verdict or a new trial on damages for future loss of
earning capacity because of insufficiency of
evidence, excessiveness of award, and the jury's
failure to reduce the award to present value. (FN2)

We find no merit in the first three issues urged for
reversal,  Jackson v. State,  599  So.2d  103
(Fla.1992);    W.R. Grace and Co.--Conn. v.
Dougherty, 636 So.2d 746 (Fla. 2d DCA 1994),
review denied, 645 So.2d 454 (Fla.1994), and
review denied, 645 So.2d 457 (Fla.1994);  Matson
v. Wilco Office Supply and Equip. Co., 541 So.2d
767 (Fla. 1st DCA 1989);  Cardinal v. Wendy's of
South Florida, 529 So.2d 335 (Fla. 4th DCA 1988);
Zabrani v. Riveron, 495 So.2d 1195 (Fla. 3d DCA
1986);   compare A.W. Chesterton v. Fisher, 655
So.2d 170 (Fla. 3d DCA 1994);  Baione v. Owens-
Illinois, 642 So.2d 480 (Fla. 2d DCA 1994), but we
do find error in the award for loss of earning

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

capacity.

[1][2] The purpose of a jury's award of damages for loss of any future earning capacity is to compensate a plaintiff for loss of capacity to earn income as opposed to actual loss of future earnings. Renuart Lumber Yards, Inc. v. Levine, 49 So.2d 97 (Fla.1950). A plaintiff must demonstrate not only reasonable certainty of injury, but must present evidence which will allow a jury to reasonably calculate lost earning capacity. See Auto-Owners Ins. Co. v. Tompkins, 651 So.2d 89 (Fla.1995); Long v. Publix Super Markets, Inc., 458 So.2d 393 (Fla. 1st DCA 1984). Once sufficient evidence is presented, the measure of damages is the loss of capacity to earn by virtue of any impairment found by the jury and the jury must base its decision on all relevant factors including the plaintiff's age, health, habits, occupation, surroundings, and earnings before and after the injury. Atlantic Coast Line R.R. v. Ganey, 125 So.2d 576 (Fla. 3d DCA 1960). Once an amount is determined, a jury is required to reduce any award for loss of future earning capacity to present value. Section 768.77, Florida Statutes (1993); Townsend v. Gibson, 67 So.2d 225 (Fla.1953). Each of these steps is critical in the jury's determination of an award for loss of future earning capacity.

**\*1303** As the Second District wrote in University Community Hospital v. Martin, 328 So.2d 858 (Fla. 2d DCA 1976):

Even though the amount awarded a plaintiff in an action to recover damages for personal injuries rests largely in the discretion of the jury, nevertheless, where a verdict is so manifestly excessive as to shock the judicial conscience, or where it is apparent the jury has misconceived the merits of the case as relates to the damages recoverable, then so much of that verdict as appears excessive may be set aside by the trial court or by this court.

Id. at 862 (citation omitted). As this Court explained in Ganey, supra, "the proof [of loss of future earning capacity] must stand appellate scrutiny as to its sufficiency...." 125 So.2d at 579.

In the instant case, the trial court recognized that the evidence submitted by plaintiff was meager but the court deemed it sufficient to submit the issue to the jury. The trial court expressed concern on

several occasions that plaintiff's testimony was "thin" and "not very good" but did not direct a verdict and refused to instruct the jury on loss of future earning capacity. Plaintiff's own doctor testified that plaintiff's asbestos-related disease was essentially mild and in the early stages and plaintiff admitted that no doctor had ever told him that he could not work. No evidence was presented regarding the types of work for which plaintiff was suited or the types of employment which may have been available to plaintiff but for his alleged injury.

Plaintiff testified that he was currently earning approximately $40,000.00 per year working for his uncle and that he was being laid off as part of a forced reduction. He had earned $40,000.00 per year as a pipefitter before his illness, and continues to earn that amount in his current employment as an estimator. He still possesses an earning capacity, even if he cannot work as a pipefitter. The fact that a plaintiff is earning as much or more than he earned prior to an injury makes his burden of persuading the jury that he suffered an economic loss difficult. See Long, supra.

At trial, over objection, plaintiff was permitted to argue that he expected to be laid off from his current employment at some time in the future for reasons unrelated to his illness, and he needed to be compensated for that expectation. The testimony that there was a possibility he would lose his job was irrelevant, purely speculative and inappropriate. Any future loss of earnings due to a reduction in work force would not be caused by his asbestos-related illness and, therefore, should not have been the basis of an award of damages by the jury. Plaintiff did not testify that he was being laid off because of his asbestos disease nor did he testify as to any efforts to find other employment except vague references to "getting the word out."

[3][4] A plaintiff is entitled to an instruction on loss of ability to earn money in the future where there is evidence of an injury and evidence which is sufficiently detailed to allow the trier of fact to quantify the loss of earning capacity. Long, supra; Hatfield v. Wells Bros., Inc., 378 So.2d 33 (Fla. 2d DCA 1979), cert. denied, 388 So.2d 1119 (Fla.1980); Allstate Ins. Co. v. Shilling, 374 So.2d 611 (Fla. 4th DCA 1979). It was the jury's role to determine the amount plaintiff could earn in other occupations, as compared to his earnings as a pipefitter and award damages for any diminution in

Copyright (c) West Group 1998  No claim to original U.S. Govt. works

661 So.2d 1301, W.R. Grace & Company-Conn. v. Pyke, (Fla.App. 3 Dist. 1995)      **Page 4**

earning capacity. While there was some evidence that plaintiff had sustained an injury, there was no expert or lay testimony regarding his loss of future earning capacity. There was no testimony presented concerning the employment market for a 53 year old individual with high school education. The evidence showed that he had not suffered any economic loss due to his condition, and plaintiff introduced no evidence at trial to support a finding that he was totally disabled and could not earn any money following his injury. Given the total absence of evidence supporting a claim for loss of future earning capacity, the trial court should have granted a directed verdict on the issue.

[5][6] The trial court also permitted plaintiff to mischaracterize his future damages claim as one for future loss of earnings. This was error as Florida law does not recognize a *1304 claim for future loss of earnings. Under Florida law, the only future damages available relative to income are damages for loss of earning capacity. See Renuart Lumber Yards, supra. An award for loss of earning capacity is measured by the plaintiff's diminished ability to earn money in the future. Baggett v. Davis, 169 So. 372 (Fla.1936); Shilling, supra. The jury is not to be concerned with actual future loss of earnings, but with the loss of the power to earn. Ganey, supra; Florida Greyhound Lines, Inc. v. Jones, 60 So.2d 396 (Fla.1952).

[7] Plaintiff was 53 years old at the time of trial, and weighed 322 pounds. The mortality tables indicated a life expectancy of 22.7 years. The jury could reasonably assume that Mr. Pyke would work until age 65 as his attorney suggested during closing argument. Accordingly, the jury could have considered the loss of earning capacity, if any, only for a 12 year period. See Renuart Lumber Yards, supra, (jury must apply common sense in determining the number of years a plaintiff might reasonably be expected to work). Under no circumstances could the evidence support an award of $810,000.00 for loss of earning capacity. Dividing the award of $810,000.00 by the 12 years plaintiff could be expected to continue working, the jury awarded $67,500.00 per year for loss of earning capacity to age 65 without any basis and without any reduction for residual earning capacity. This yearly figure, which was not reduced to present value, is impermissibly high in that it is substantially greater than the yearly income plaintiff earned prior to his injury.

The trial court properly instructed the jury that an award of future loss of earning capacity damages must be reduced to present value. Section 768.77, Florida Statutes (1993). However, plaintiff failed to present evidence to guide the jury in reducing future damages to present money value; there was no testimony on any method to be used for reducing such future damages to present value. See Walt Disney World v. Blalock, 640 So.2d 1156 (Fla. 5th DCA 1994). It is apparent from the amount of the award that the jury failed to follow the court's instructions.

Even assuming plaintiff submitted sufficient evidence of injury, the evidence does not support the amount of damages awarded. The verdict of $810,000.00 is so excessive as to "shock the judicial conscience" and it cannot withstand "appellate scrutiny." Accordingly, the verdict cannot stand. See Vibrant Video, Inc. v. Dixie Pointe Associates, 567 So.2d 1003 (Fla. 3d DCA 1990); see also Haddigan v. Harkins, 441 F.2d 844 (3d Cir.1971); Seaboard Coast Line R.R. Co. v. Burdi, 427 So.2d 1048 (Fla. 3d DCA 1983). The judge who presided over the trial was not available to consider defendants' post-trial motions due to his death, and the power of the successor judge to grant relief was limited. Groover v. Walker, 88 So.2d 312 (Fla.1956); Smith v. Mobley, 95 Fla. 829, 116 So. 760 (1928); Better Constr., Inc. v. Camacho Enter., 311 So.2d 766 (Fla. 3d DCA 1975). Therefore, the award for future loss of earning capacity is now reversed with directions to enter a directed verdict for defendants. In all other respects the final judgment and post-trial orders are affirmed.

Affirmed in part; reversed in part, with directions.

GODERICH, J., concurs.

COPE, Judge (specially concurring).

I concur in all except footnote 2. In my view the appellants' initial briefs clearly and adequately raise as an issue the failure of the trial court to permit the reading of plaintiff Pyke's deposition. Although it may have been better if appellants had created a separate point or subpoint on appeal relative to the Pyke deposition, it was permissible for appellants to include this issue within their point under Fabre v. Marin, 623 So.2d 1182 (Fla.1993). Appellants

Copyright (c) West Group 1998 No claim to original U.S. Govt. works

661 So.2d 1301, W.R. Grace & Company-Conn. v. Pyke, (Fla.App. 3 Dist. 1995)                    **Page 5**

reason that the Pyke deposition, if read to the jury, would have provided the necessary showing to allow the inclusion of Fabre defendants on the verdict form.

Our policy should be to decide appeals on the merits, not on matters of form. Here the appellants' contention is perfectly clear and there is a logical basis for the organization of the appellate argument.

**\*1305.** On the merits, however, affirmance is in order. Although the trial court erred by excluding the Pyke deposition, see Fla.R.Civ.P. 1.330(a)(2), the error was harmless. The deposition did not contain enough information to assist the appellants in any material way in meeting their burden under W.R. Grace & Co.--Conn. v. Dougherty, 636 So.2d 746 (Fla. 2d DCA 1994), review denied, 645 So.2d 454 (Fla.1994), and review denied, 645 So.2d 457

(Fla.1994). For that reason I concur in affirming on this issue, and I concur in the remainder of the opinion of the court.

FN1. The verdict set forth total damages of $810,000.00 in future lost wages and $245,000.00 for pain and suffering, for a total recovery of $1,055,000.00.

FN2. Grace and OCF, in the argument sections of their briefs, attempt to raise error in the failure of the trial court to permit the reading of Mr. Pyke's deposition. However, Grace and OCF failed to adequately raise it as an issue on appeal, thus precluding review.     Fla.R.App.P.   9.210(b); Lester v. Arb, 658 So.2d 583 (Fla. 3d DCA 1995); Rodriguez v. State, 502 So.2d 18 (Fla. 3d DCA 1987); Singer v. Borbua, 497 So.2d 279 (Fla. 3d DCA 1986).

Copyright (c) West Group 1998  No claim to original U.S. Govt. works



RECYCLED PAPER

34

## DUVAL COUNTY (Continued)

STANLEY (Continued)

**AGE/SEX/OCCUPATION OF PLAINTIFF:** 54 / M / Toolmaker

**CAUSE OF INJURY:** *Fall/over/Private Home.* On January 25, 1992, Plaintiff fell into his septic tank when it caved in. The septic tank had been pumped earlier the same day by Defendant. Plaintiff alleged that Defendant replaced the septic tank lid in such a manner that the lid became cracked and eventually unsound and was insufficient for the purposes for which it was designed and ordinarily installed. Plaintiff also alleged that Defendant failed to warn Plaintiff of the corroded condition of the septic tank lid.

**NATURE OF INJURY:** Permanent aggravation asymptomatic arthritic low back; two ventral hernias.

**EXPERT WITNESSES:**
**PLAINTIFF'S:** William G. Pujedes, M.D., Orthopedic Surgery, Jacksonville (video depo)
Steven G. Webb, M.D., General Surgery, Jacksonville (video depo)
Abdol Chini, M.D., Structural Engineer, Gainesville
Randy Prokes, M.D., General Practice, Jacksonville
Paul M. Mason, Ph.D., Economist, Jacksonville
William Gray, Vocational Rehabilitation, Jacksonville

**DEFENDANT'S:** Jack Larks, P.E., Engineer, Houston, TX
Tal O. Nguyen, M.D., Neurosurgery, Jacksonville (depo)
Ciceron Lazo, M.D., Family Practice, Jacksonville (depo)

**VERDICT:** *For the Defendant on April 16, 1997.*

**EDITOR'S NOTE:** Plaintiff's motion for new trial is pending. Defendant's offer of judgment in the amount of $100,000 was rejected by Plaintiff.

## ESCAMBIA COUNTY

(35) JACK D. BROWN & BETTY K. BROWN, husband and wife vs. CHECKER'S DRIVE-IN RESTAURANTS, INC.

**COUNTY/DOCKET #/JUDGE:** Escambia / 95-1593 / William H. Anderson

**PLAINTIFF(S)/ATTORNEY(S):** Stephen H. Echsner of Levin, Middlebrooks, et al., Pensacola

**DEFENDANT(S)/ATTORNEY(S):** John M. Fite and Marcia Davis of Barron, Redding, et al., Pensacola

**AGE/SEX/OCCUPATION OF PLAINTIFF:** 54 / F / Office Manager

**CAUSE OF INJURY:** *Product Liability/Hamburger.* On January 2, 1995, Plaintiff purchased a hamburger from Defendant's store in Ocean Springs, Mississippi. Plaintiff ate the food and became violently ill, leading to subsequent hospitalization during which she suffered a stroke. Plaintiffs filed an action for damages on the basis of strict liability, breach of implied warranty, and negligence, alleging that Defendant sold food that was unwholesome and unfit for human consumption and unreasonably dangerous to the consumer in that it was uncooked and it contained E.Coli bacteria. Defendant denied that it had served an undercooked hamburger at its restaurant and stated that its hamburger was not the cause of Plaintiff's illness and subsequent problems.

---

36

## ESCAMBIA COUNTY (Continued)

BROWN (Continued)

**NATURE OF INJURY:** E.Coli septicemia. On January 13, 1995, Plaintiff had an exploratory laparotomy and subsequently a cholecystectomy and a liver biopsy; following the surgery, while still in the hospital, Plaintiff suffered a parietal-occipital cerebral infarction; a CT scan showed a nonhemorrhagic ischemia involving the parietal-occipital lobe.

**EXPERT WITNESSES:**
**PLAINTIFF'S:** James Picarol, M.D., Infectious Disease, Pace (video depo)
Mary J. Benson, M.D., Thoracic & Vascular Surgery, Pensacola (depo)
John F. Wade, M.D., Pulmonary Medicine, Pensacola (depo)

**VERDICT:** *For the Defendant on May 22, 1997.*

**EDITOR'S NOTE:** The jury found that the hamburger served to Plaintiff was not defective nor unfit for human consumption.

(36) GERALD LEE & MARGARET LEE, his wife vs. OWENS-CORNING FIBERGLAS CORP., et al.; HERBERT & ETTA TREHERN, husband and wife vs. OWENS-CORNING FIBERGLAS CORP., et al. (Consolidated Cases)

**COUNTY/DOCKET #/JUDGE:** Escambia / Lee: 89-1205; Trehern: 91-2098 / Frank L. Bell

**PLAINTIFF(S) ATTORNEY(S):** J. Michael Papentonio and Larry Morris of Levin, Middlebrooks, et al., Pensacola

**DEFENDANT(S) ATTORNEY(S):** Henry Perritt, Jr., Jacksonville

**AGE/SEX/OCCUPATION OF PLAINTIFF:** Gerald: 57 / M / Power House Operator (boiler room); Herbert: 60 / M / Maintenance Mechanic/Primary Skill Insulator

**CAUSE OF INJURY:** *Product Liability/Asbestos.* Plaintiff Gerald Lee was exposed to various products containing asbestos while working as a power house operator in the boiler room at Reichold Chemical in Florida, from 1950 to 1973. Plaintiff Herbert Trehern was exposed to asbestos while working as a maintenance mechanic and primary skill insulator at various job sites in Florida, mainly for Monsanto, James River, and Fiber Wheel North America, from 1957 to 1991. Plaintiffs alleged that Defendants breached a duty to use reasonable care for the health and safety of persons such as Plaintiffs who were foreseeable users of the asbestos and asbestos containing products. Plaintiffs alleged further that Defendants had actual knowledge of the health hazards since 1930 and in concert with other companies conspired to suppress information regarding such hazards by halting the publication of medical and scientific data. Defendant denied liability and asserted numerous affirmative defenses including contributory negligence and negligence of third parties.

**NATURE OF INJURY:** Asbestosis (scarring of the lungs) with a significant increased risk of lung cancer.

**EXPERT WITNESSES:** n/a

**VERDICT:** $4,059,800 for Plaintiffs on May 16, 1997 (*Gerald Lee:* $350,000 - past pain and suffering; $1,100,000 - future pain and suffering; $4,900 - future medical expenses; $500,000 - loss of consortium; *Herbert Trehern:* $400,000 - past pain and suffering; $1,300,000 - future pain and suffering; $4,900 - future medical expenses; $400,000 - loss of consortium).

LEE (Continued)

## ESCAMBIA COUNTY (Continued)

**EDITOR'S NOTE:** The jury found that: (1) Defendant's negligent failure to warn Plaintiffs was a legal cause of damage to Plaintiffs; (2) Defendant placed Krylub covering on the market with a defect which was a legal cause of damage to Plaintiffs; and (3) it was appropriate to award punitive damages as punishment and as a deterrent to others. Plaintiffs filed separate actions against Owens-Corning and several other Defendants; the two suits were consolidated and brought to trial together. The complaints against all Defendants other than Owens-Corning were dismissed or settled prior to this trial. Following the verdict, and while the jury was deciding the punitive damages amount, the parties settled out of court for an undisclosed amount.

## HILLSBOROUGH COUNTY

(37) **NANCY BENNETT vs. LUIS CRESPO and VIRGINIA CRESPO**

**COUNTY/DOCKET #/JUDGE:** Hillsborough / 95-4609 / Gasper Ficarrotta

**PLAINTIFF(S) ATTORNEY(S):** Weldon Earl Brennan and Alan Wagner of Wagner, Vaughan, McLaughlin, P.A., Tampa

**DEFENDANT(S) ATTORNEY(S):** Richard K. Bowers, Jr. of Fowler, White, et al., Tampa

**AGE/SEX/OCCUPATION OF PLAINTIFF:** 35 / F / Insurance Claims Attorney-Adjuster

**CAUSE OF INJURY:** *Motor Vehicle Accident/Rear-end Collision.* On August 14, 1994, Plaintiff was a passenger in a vehicle driven by her mother when their vehicle was struck in the rear by Defendant Virginia Crespo. Defendant was talking on her cellular phone moments before the accident. Defendant's vehicle did not sustain any damage. There was questionable property damage done to the rear of the vehicle in which Plaintiff was riding. Defendants admitted negligence and defended the case on medical causation and the no-fault threshold defense.

**NATURE OF INJURY:** Plaintiff was diagnosed as suffering from a herniated disc at C5-C6, C6-C7, and C7-T1. These were confirmed by MRI following the accident. Plaintiff's experts opined that Plaintiff was a candidate for surgery in the future at a cost of between $35,000 and $40,000. Additionally, she would need continued palliative care at approximately $2,000 per year for doctors' visits, medication, and physical therapy. Plaintiff was also assigned a 20% disability rating as a direct result of the accident. Defendants acknowledged that Plaintiff indeed had the findings as evidenced by MRI, but denied that this accident was of sufficient magnitude to have caused the same.

**EXPERT WITNESSES:**
PLAINTIFF'S:   Jim Murphy, M.D., Orthopedics, Tampa
                    Robert Martinez, M.D., Neurology, Tampa
DEFENDANT'S:   Lutz Schlicke, M.D., Orthopedics, Tampa
                    Lawrence Muroff, M.D., Radiology, Tampa

**VERDICT:** *For the Defendants on August 14, 1996.*

**JUDGMENT:** $13,167.06 for the Defendants on December 23, 1996.

**EDITOR'S NOTE:** Defendants offered $5,001; Plaintiff demanded $100,000 (policy limits).

## HILLSBOROUGH COUNTY (Continued)

BENNETT (Continued)

**DEFENDANT'S ATTORNEY'S COMMENTS:** This was a classic case of a low impact accident with no complaint of injury at the scene, wherein the jury found that Plaintiff's claimed injuries did not result from the accident in question. It is noteworthy that Plaintiff's own treating physician, Dr. Martinez, agreed with the defense that an accident of this nature had not caused Plaintiff's three levels of findings by MRI. Rather, Plaintiff's physician's opinion was that the accident somehow had made those herniations become symptomatic. The jury ultimately did not accept that opinion. Defendants obtained a judgment in excess of $13,000 against Plaintiffs pursuant to an offer of judgment filed in the case. The case was settled on appeal by Plaintiffs with payment of $7,500 to Defendants.

(38) **ROSE DOMKE, personal representative of the estate of RUSSELL F. DOMKE, deceased vs. MCNEIL-P.P.C., INC. (U.S. District Court, Middle District of Florida, Tampa Division)**

**COUNTY/DOCKET #/JUDGE:** Hillsborough / 95-382-CIV-T-17A / Mark A. Pizzo

**PLAINTIFF(S) ATTORNEY(S):** Barry A. Cohen and Christopher P. Jayson of Cohen, Jayson, et al., Tampa

**DEFENDANT(S) ATTORNEY(S):** David R. Tyrell of Hill, Ward & Henderson, P.A., Tampa; Robert W. Sparks of Jones, Day, et al., New York, NY

**AGE/SEX/OCCUPATION OF PLAINTIFF:** Decedent: 39 / M / Landscaper

**CAUSE OF INJURY:** *Product Liability/Tylenol.* On February 3, 1993, decedent began taking Extra-Strength Tylenol, an over-the-counter analgesic manufactured and marketed by Defendant, for the relief of flu symptoms. Decedent continued to consume between six and twelve beers daily at the same time he was taking the Tylenol medication. On February 7, 1993, decedent was admitted to the hospital with continued flu symptoms and severe liver problems. On February 8, 1993, decedent died from what was determined to be liver failure; however, the death certificate noted the secondary cause of death to be the toxic effect of acetaminophen, which is the active ingredient in Tylenol products. Plaintiff contended that: (1) Defendant was negligent in failing to adequately warn decedent of the dangers associated with combining therapeutic dosages of its medication with alcohol; (2) the product manufactured by Defendant contained a defect that rendered it unsafe and unreasonably dangerous for its intended use; and (3) Defendant was negligent in misrepresenting the safety of its product. Plaintiff also filed a claim for punitive damages against Defendant. Defendant contended that decedent died from hepatitis related to his long and heavy alcohol use. The key issues in the case centered around acetaminophen as the cause of decedent's death in combination over-the-counter analgesics with the consumption of alcohol. Issues at trial included: (1) whether the labeling on Defendant's product was adequate as of the date of decedent's alleged ingestion; (2) whether Defendant exercised due care in making its labeling decisions then (February 1993) and now; and (3) whether Defendant's conduct was that of a responsible manufacturer since February 1993, with respect to placing an alcohol warning on over-the-counter analgesic products. Tylenol products now carry a warning label regarding alcohol use as recommended by the U.S. Food & Drug Administration.

**NATURE OF INJURY:** Death. Decedent was survived by his ex-wife, Rose, and twin sons, Rand and Ryland, age ten. Dr. Garvey testified as to acetaminophen and the adverse reactions associated with the concomitant use of alcohol and as to regulations of the Food & Drug Administration on warning labels. Dr. Rumack testified as to his review of the literature pertinent to acetaminophen and as to his previous study related to acetaminophen.

## BROWARD COUNTY (Continued)

COHEN, A.R. (Continued)

**NATURE OF INJURY:** Fracture through the T10-T11 disc space; aggravation of pre-existing spondylitis. Plaintiff underwent three surgeries. Defendant Hanna alleged that Plaintiff's injury was not caused by this accident; the fracture did not show up at the emergency room, but it was found five days after the accident.

**EXPERT WITNESSES:**
**PLAINTIFF'S:**
Lawrence Forman, Rehabilitation, Miami
Robert Turner, M.D., Rheumatology, W. Palm Beach (depo)

**SETTLEMENT:** $510,000 for Plaintiff on September 24, 1996.

• • •

(3) LORI COHEN and GARY COHEN vs. DAVID HOFFMAN, M.D.; DAVID HOFFMAN, M.D., P.A.; WAYNE MAXSON, M.D.; WAYNE MAXSON, M.D., P.A.; and TERRY HUNG, M.D.

**COUNTY/DOCKET #/JUDGE:** Broward / 95-004040 07 / John Luzzo

**PLAINTIFF(S) ATTORNEY(S):** David J. Feingold of Feingold & Kam, W. Palm Beach; Robert D. Critton, Jr. of Burman, Critton & Luttier, N. Palm Beach

**DEFENDANT(S) ATTORNEY(S):** Kimberly A. Cook and Alix Michel of Fowler, White, et al., Miami for Dr. Hung; Jonathan P. Lynn of Stephens, Lynn, et al., Miami for Drs. Hoffman and Maxson

**AGE/SEX/OCCUPATION OF PLAINTIFF:** 34 / F / Not employed

**CAUSE OF INJURY:** *Medical Malpractice/Ovarian Cancer/Diagnosis and Treatment.* In March 1994, Plaintiff was diagnosed as having stage III ovarian carcinoma. Plaintiff received medical care and treatment from each of the Defendants prior to March 1994, and none of the Defendants ever disclosed or diagnosed Plaintiff as suffering from carcinoma while under their care and treatment. Defendants are obstetricians/ gynecologists, who specialize in infertility; Plaintiff went to them for invitro fertilization (IVS) and had ultrasound screenings which showed masses in her ovaries. Defendant Hung contended that Plaintiff had masses or scar tissue on her ovaries, tubes, uterus, and pelvic wall that were a result of Pelvic Inflammatory Disease which Plaintiff had at approximately age eighteen. Defendants Hoffman and Maxson agreed with Defendant Hung. Plaintiff underwent about forty ultrasounds which allegedly would have showed cancer; and she also underwent two laparoscopies which only showed scar tissue. Plaintiff alleged that something was seen on the ovaries that was abnormal and should have been biopsied; had this been done, the cancer would have been discovered. The defense experts stated that Plaintiff had no ovarian tumor or low malignant potential which was benign. Plaintiff experts stated that Plaintiff had cancer.

**NATURE OF INJURY:** Stage III ovarian carcinoma.

**EXPERT WITNESSES:**
**PLAINTIFF'S:**
Donald Levitt, M.D., Obstetrics/Gynecology, Rockville, MD
William Roberts, M.D., Pathology, Rockville, MD
John Hiemenz, M.D., Pathology, Tampa (depo)
Gerald Eifenbein, M.D., Oncology, Tampa (depo)
Santo Nicosis, M.D., Oncology, Tampa (depo)
Juergen Eisermann, M.D., Oncology, Tampa (depo)

## BROWARD COUNTY (Continued)

COHEN, L. (Continued)

**EXPERT WITNESSES (Continued):**
**DEFENDANT'S:**
Seth Herbst, M.D., Obstetrics/Gynecology, W. Palm Beach
Alex Bezjian, M.D., Ultrasonography, Miami
Phillip Caruso, M.D., Obstetrics/Gynecology, Tampa
Steven Silverberg, M.D., Pathology, Bethesda, MD
Gersen Weiss, M.D., Obstetrics/Gynecology
Andrew Berchuck, M.D., Gynecology/Oncology, Duke Univ., Durham, NC
Robert Kurman, M.D., Pathology, Johns Hopkins Univ., Baltimore, MD (video depo)

**VERDICT:** For the Defendant on October 9, 1996.

• • •

(4) MIA DERRY vs. SCHOOL BOARD OF BROWARD COUNTY

**COUNTY/DOCKET #/JUDGE:** Broward / 95-11148 05 / Estella Moriarty

**PLAINTIFF(S) ATTORNEY(S):** Lawrence J. Bohannon, Ft. Lauderdale

**DEFENDANT(S) ATTORNEY(S):** Mark Morrow of Solomon & Morrow, Ft. Lauderdale

**AGE/SEX/OCCUPATION OF PLAINTIFF:** 25 / F / Not employed

**CAUSE OF INJURY:** *Falldown/School.* On December 11, 1991, Plaintiff was at Tedder Elementary School in Pompano to pick-up her daughter from school when she fell in a hole covered by grass. Plaintiff alleged that Defendant was responsible for the care and maintenance of the property.

**NATURE OF INJURY:** Severe ankle sprain; herniated disc at L5-S1. Dr. Schnell stated that there was no herniation. Dr. Silverstein stated that there was a herniation, but he could not relate it to this incident.

**EXPERT WITNESSES:**
**PLAINTIFF'S:**
Peter Merkle, M.D., Orthopedic Surgery, Pompano Beach
**DEFENDANT'S:**
Roger Schnell, M.D., Neurology, Ft. Lauderdale
Martin Silverstein, M.D., Orthopedic Surgery, Ft. Lauderdale

**VERDICT:** $95,000 for Plaintiff on September 20, 1996 ($25,000 - past medical expenses and lost earnings; $45,000 - future medical expenses and lost earnings; $5,000 - past pain and suffering; $10,000 - future pain and suffering).

**EDITOR'S NOTE:** Defendant offered nothing; Plaintiff demanded $100,000.

• • •

(5) MARY E. ENGLER, as personal representative of the estate of NOEL V. ENGLER, deceased vs. OWENS-CORNING

**COUNTY/DOCKET #/JUDGE:** Broward / 94-007227 27 / Arthur Franza

**PLAINTIFF(S) ATTORNEY(S):** Daniel O'Shea of Ratiner, Reyes & O'Shea, Miami; John Venable of Venable & Venable, Tampa

## BROWARD COUNTY (Continued)

ENGLER (Continued)

**DEFENDANT(S) ATTORNEY(S):** Michael Orlando of Law Offices of Roland Gomez, Miami Lakes; Donna Harvey, Boca Grande

**AGE/SEX/OCCUPATION OF PLAINTIFF:** Decedent: 67 / M / Mechanical Maintenance

**CAUSE OF INJURY:** *Product Liability/Asbestos.* From 1953 to 1985, decedent worked in a power plant in Kansas. He was diagnosed with an asbestos related disease as a result of his exposure in his trade/occupation to the asbestos containing products of Defendant.

**NATURE OF INJURY:** Death. Decedent died on January 22, 1995, as a result of mesothelioma. Decedent was survived by his wife, Mary.

**EXPERT WITNESSES:**
**PLAINTIFF'S:** Victor Roggli, M.D., Pathology, Durham, NC (video depo)

**VERDICT:** *$1,750,000 for Plaintiff on August 13, 1996 ($500,000 - past loss of consortium and pain and suffering; $1,250,000 - future loss of consortium and pain and suffering).*

**EDITOR'S NOTE:** Despite the fact that Mr. Engler testified to exposure from a number of asbestos products, the case proceeded solely against the product Kaylo, manufactured by Defendant. The Judge refused the inclusion of others on the verdict form.

(6) **DOROTHY FREY, as personal representative of the estate of ROBERT KOMAR vs. CONCRETE PLACEMENT, INC., d/b/a ATLANTIC COAST CONCRETE PUMPING and EDWARD GILLESPY**

**COUNTY/DOCKET #/JUDGE:** Broward / 95-12532 (03) / Patti Englander Henning

**PLAINTIFF(S) ATTORNEY(S):** Jeffrey M. Fenster, Stacie L. Cohen, and Jene P. Williams of Fenster & Faerber, P.A., Plantation

**DEFENDANT(S) ATTORNEY(S):** Robert Beuroth and Kenneth Miller of Wicker, Smith, et al., Ft. Lauderdale

**AGE/SEX/OCCUPATION OF PLAINTIFF:** Decedent: 28 / M / Carpenter

**CAUSE OF INJURY:** *Worksite Accident/Worker Struck by Unfinished Wall.* On May 25, 1995, decedent was killed while working as a carpenter at a construction project in Kendall. At that time, decedent was vibrating concrete along an unfinished concrete block wall when the arm of a concrete boom pump/crane hit the top portion of the wall causing it to fall over onto the decedent. Plaintiff sued the owner and operator of the concrete pump truck for negligence. Defendants denied liability and argued that other individuals, including the general contractor and the decedent's employer, were at fault. Defendants claimed that the concrete block wall was not braced in accordance with OSHA and ANSI regulations by the decedent's employer and general contractor and that this was a contributing cause of the incident. Defendants also asserted that workers on the other side of the wall could have pushed the concrete boom arm into the wall.

**NATURE OF INJURY:** Death. Decedent was a single man who resided with his mother.

## BROWARD COUNTY (Continued)

FREY (Continued)

**EXPERT WITNESSES:**
**PLAINTIFF'S:** Ron Zollo, Ph.D., Construction Site Safety, Coral Gables

**DEFENDANT'S:** John Pistorino, P.E., Construction Site Safety, Miami; Leslie Dalmen, M.A., Rehabilitation, Davie; Phillip Dieque, J.D., Economist, Miami

**SETTLEMENT:** *$750,000 for Plaintiff on August 16, 1996.*

**PLAINTIFF'S ATTORNEY'S COMMENTS:** This case was settled on the second day of trial. Defendant operator of the concrete boom truck had confessed to the police that he knocked the wall over. At his deposition, Defendant changed his story and testified that he had no idea how the wall fell. Defendants concentrated their defense on blaming immune parties and intended to place at least four non-parties on the verdict form.

(7) **JILL MARIE GALANG, an individual; and TONY GALANG, an individual vs. CLAUDIA C. MCGRATH, an individual; and ROBERT MCGRATH, an individual**

**COUNTY/DOCKET #/JUDGE:** Broward / 96-2114 12 / John Miller

**DEFENDANT(S) ATTORNEY(S):** Den Cynyn, Tamarac

**AGE/SEX/OCCUPATION OF PLAINTIFF:** John Donahoe of Donahoe & Pecaro, Ft. Lauderdale 36 / F / Medical Assistant

**CAUSE OF INJURY:** *Motor Vehicle Accident/Failure to Yield.* On February 2, 1995, Defendant was heading west on N.W. 11th Court, stopped at a stop sign, looked both ways, then proceeded to cross northbound lanes of Coral Ridge Drive to the median strip. Defendant stopped, then proceeded across the southbound lanes of Coral Ridge Drive when her van was struck in the right rear by Plaintiff's vehicle. Defendant alleged that she did not observe Plaintiff's vehicle prior to impact, and that Plaintiff was speeding. Plaintiff alleged that Defendant went through the intersection without stopping. Defendant was ticketed for failure to yield at an intersection. There was an issue as to whether Plaintiff was wearing a seat belt. An eyewitness went over to Plaintiff about sixty seconds after the accident and stated that Plaintiff was not wearing a seat belt. An eyewitness also stated that Defendant went through the median without stopping.

**NATURE OF INJURY:** Compound fracture of the patella with removal of the lower pole; minor low back complaints. Dr. Uribe stated that Plaintiff may need patella reconstruction which may not be successful.

**EXPERT WITNESSES:**
**PLAINTIFF'S:** Rick Swope, Accident Reconstruction, Davie; Jeffrey Hains, M.D., Orthopedic Surgery, Coral Springs (video depo); John Uribe, M.D., Sports Medicine, Coral Gables (video depo); Frederick Gerard, M.D., Orthopedic Surgery, Coral Springs (depo)

**DEFENDANT'S:** Stephen Wender, M.D., Orthopedic Surgery, N. Miami Beach; Bertan Morrow, Ph.D., Accident Reconstruction, Miami

## DADE COUNTY (Continued)

GARCIA (Continued)

**DEFENDANT'S ATTORNEY'S COMMENTS:** Plaintiff gave conflicting testimony. At trial he said he fell on anti-freeze; and then he did not know. In his depo he said he fell on grease and anti-freeze. In his interrogatories he said he fell on oil and water. Defendant alleged Plaintiff could not prove he had an accident at Defendant's place at all and that Plaintiff was injured the day before while getting on a boat.

• • •

(25) FRANK KRESSE, JR. and DENISE KRESSE **vs.** RYDER TRUCK RENTAL, INC.

**COUNTY/DOCKET #/JUDGE:** Dade / 89-54290 25 / Philip Bloom

**PLAINTIFF(S) ATTORNEY(S):** John Abramson of Abramson & Magidson, Miami

**DEFENDANT(S) ATTORNEY(S):** Michael Murphy of Gaebe, Murphy, et al., Coral Gables

**AGE/SEX/OCCUPATION OF PLAINTIFF:** 37 / M / n/a

**CAUSE OF INJURY:** Product Liability/Truck. On February 2, 1988, Plaintiff agreed to rent a truck from Defendant to use for a trip to Maine. The rental contract was executed by the parties in Dade County. On February 4, 1988, Plaintiff was operating the truck on I-95, about two miles west of Florence, South Carolina when the electrical system unexpectedly malfunctioned which caused the truck to veer out-of-control, and crash into a guardrail, overturning on a bridge. Plaintiff alleged that Defendant breached its duty to maintain the truck in a reasonably safe condition to include appropriate inspection, testing, and other commitments to assure lessees that the truck would not malfunction. Plaintiff further alleged that Defendant had a duty to warn Plaintiff of dangerous conditions it knew or should have known of, relating to the lack of maintenance or improper operation of the truck. Defendant alleged that Plaintiff had fallen asleep at the wheel; the truck had been serviced and there was no mechanical reason that the truck should have gone off the road.

**NATURE OF INJURY:** Leg fracture.

**EXPERT WITNESSES:**
**PLAINTIFF'S:** Harry Wiseman, P.E., Mechanical Engineer/Accident Reconstruction, Miami

**DEFENDANT'S:** Michael Aprman, M.D., Neurology, Miami
Samuel Steiner, M.D., Orthopedic Surgery, Miami

**VERDICT:** For the Defendant on March 18, 1996.

**EDITOR'S NOTE:** The jury found no negligence on the part of Defendant and found that the truck was not defective when rented to Plaintiff.

• • •

(26) ELLISON MILLER & LORRAINE MILLER, his wife **vs.** SHOWLITES, INC.

**COUNTY/DOCKET #/JUDGE:** Dade / 93-16656 CA 23 / Amy Steele Donner

**PLAINTIFF(S) ATTORNEY(S):** Marvin Nodel of Abramowitz & Pomerantz, Sunrise

**DEFENDANT(S) ATTORNEY(S):** Charles Watkins of Kubicki, Draper, et al., Miami

## DADE COUNTY (Continued)

MILLER (Continued)

**AGE/SEX/OCCUPATION OF PLAINTIFF:** 63 / M / Stage Technician

**CAUSE OF INJURY:** Falldown/Performing Arts Center. On May 30, 1991, Plaintiff was employed by the producers of a show at the Knight Center in Miami. Plaintiff was loading an equipment box onto the company truck when the box slid to the bottom of the truck ramp, which carried Plaintiff forward causing him to fall. A caster on the box was defective and the box then had to be manually manipulated up the ramp which compounded Plaintiff's injuries. Defendant alleged that Plaintiff did not act appropriately by attempting to lift a five hundred pound box.

**NATURE OF INJURY:** Left inguinal hernia requiring surgery; right inguinal hernia -- no surgery required; torn meniscus in the right knee; dislocated wrist bone with torn cartilage and loss of range of motion and weakness; herniated lumbar disc.

**EXPERT WITNESSES:** n/a

**VERDICT:** For the Defendant on March 26, 1996.

**DEFENDANT'S ATTORNEY'S COMMENTS:** The case was tried on liability only. Plaintiff focused on the defective caster; Defendant focused on the actions of Plaintiff.

• • •

(27) CLARE SNOOZY as personal representative of the estate and survivors of EDWARD SNOOZY **vs.** CROWN CORK & SEAL CO., et al.

**COUNTY/DOCKET #/JUDGE:** Dade / 93-22664 CA 42 / Arthur Rothenberg

**PLAINTIFF(S) ATTORNEY(S):** Ervin Gonzalez and Juan Bauta of Robles & Gonzalez, Miami

**DEFENDANT(S) ATTORNEY(S):** Albert Parnell and J. Bruce Welch of Hawkins & Parnell, Atlanta, GA

**AGE/SEX/OCCUPATION OF PLAINTIFF:** Decedent: 52 / M / Carpenter

**CAUSE OF INJURY:** Product Liability/Asbestos. Plaintiffs alleged that decedent was exposed to asbestos containing products manufactured by numerous entities, including U.S. Gypsum. Plaintiffs further alleged that as a result of the decedent's exposure to asbestos containing products, he developed an asbestos-related disease known as mesothelioma, and died on February 10, 1994.

**NATURE OF INJURY:** Death. Decedent was survived by his wife, Clare Snoozy, and two adult children, Janet and Gerald Snoozy. Dr. Dail was a treating physician.

**EXPERT WITNESSES:**
**PLAINTIFF'S:** David R. Williams, Ph.D., Economist, Miami
Victor Roggli, M.D., Pathology, Durham, NC
David Dail, M.D., Pathology, Seattle, WA

**DEFENDANT'S:** Edward Geensler, M.D., Thoracic Surgery, Mill Valley, CA
John Craighead, M.D., Pathology, Univ. of Vermont, Burlington, VT

## 20

### DADE COUNTY (Continued)

SNOOZY (Continued)

VERDICT: *$1,153,536 for Plaintiff on April 12, 1996 (decedent's estate: $4,000 - past net accumulations; $46,000 - future net accumulations (over 10 years); Clare: $55,268 - past loss of support and services; $635,582 - future loss of support and services (over 25 years); $16,000 - past pain and suffering and loss of companionship; $384,000 - future pain and suffering and loss of companionship; $12,686 - funeral expenses).*

U.S. Gypsum's Negligence: 25%; Others' Negligence: 75%

JUDGMENT: Entry of judgment is pending.

EDITOR'S NOTE: The jury awarded zero for the pain and suffering and loss of companionship suffered by decedent's adult children.

● ● ●

(28) MICHAEL BRUCE SOLOMON & TUNNY SOLOMON, his wife vs. MARC SEYMOUR and CY SEYMOUR

COUNTY/DOCKET #/JUDGE: Dade / 92-2740 CA 15 / Celeste Muir

PLAINTIFF(S) ATTORNEY(S): Arnold Levy, Miami

DEFENDANT(S) ATTORNEY(S): Dean Mitchell, Miami

AGE/SEX/OCCUPATION OF PLAINTIFF: Early 50's / M / Attorney

CAUSE OF INJURY: *Motor Vehicle Accident/Pedestrian Struck.* On February 7, 1988, Plaintiff was attempting to cross the street when he was struck by Defendant's vehicle. Defendant alleged that Plaintiff stepped off the curb while looking in the opposite direction and that he failed to use the crosswalk available to pedestrians for crossing the roadway. A policeman, who was an eyewitness, stated that Plaintiff darted out in front of Defendant's vehicle.

NATURE OF INJURY: Dislocated shoulder; multiple leg fractures; head injury which resulted in plastic reconstructive surgery.

EXPERT WITNESSES:
PLAINTIFF'S: Bertan Morrow, Ph.D., Accident Reconstruction, Miami
Charles Weiss, M.D., Orthopedic Surgery, Miami Beach

DEFENDANT'S: William Fogarty, Ph.D., Accident Reconstruction, Miami
Michael Apirman, M.D., Neurology, Miami
Salvador Ramirez, M.D., Orthopedic Surgery, Miami

VERDICT: *For the Defendant on April 2, 1996.*

DEFENDANT'S ATTORNEY'S COMMENTS: Defendant offered $1,000; Plaintiff demanded $125,000. The trial lasted eight days.

● ● ●

## 21

### DADE COUNTY (Continued)

(29) GONZALO VILLAZON & FRINE VILLAZON, his wife vs. CAC MEDICAL CENTERS; FRANCISCO GONZALEZ-ABREU, M.D.; CARLOS E. FERNANDEZ, M.D.; ELDA HERNANDEZ, M.D.; and ELDA HERNANDEZ, M.D., P.A.

COUNTY/DOCKET #/JUDGE: Dade / 95-397 CA 22 / Robert P. Kaye

PLAINTIFF(S) ATTORNEY(S): Tim Martin of Sams, Martin, et al., Miami Lakes

DEFENDANT(S) ATTORNEY(S): Charles Patrick, Miami for CAC Medical

AGE/SEX/OCCUPATION OF PLAINTIFF: 75 / M / Part-time Clerical Worker

CAUSE OF INJURY: *Medical Malpractice/Failure to Diagnose Prostate Cancer.* In July 1990, Plaintiff began treatment at Defendant CAC Medical Centers under Defendants, Drs. Gonzalez-Abreu, Fernandez, and Hernandez. In December 1993, Plaintiff was diagnosed with poorly differentiated adenocarcinoma of the prostate. Plaintiff alleged that as a result of Defendants' failure to diagnose, he is dying of prostate cancer.

NATURE OF INJURY: Prostate cancer.

EXPERT WITNESSES: n/a

SETTLEMENT: *$800,000 for Plaintiffs on March 25, 1996 (from all Defendants).*

● ● ●

(30) FRANCES D. WILLIFORD vs. MEDICAL TRANSPORTATION MANAGEMENT, d/b/a MEDICAL TRANSPORTATION and YVES VEVELA, individually

COUNTY/DOCKET #/JUDGE: Dade / 95-2005 CA 22 / Robert P. Kaye

PLAINTIFF(S) ATTORNEY(S): Roland Gomez and Richard Gomez of Law Offices of Roland Gomez, Miami Lakes

DEFENDANT(S) ATTORNEY(S): Michael Rudd of Hightower & Rudd, Miami

AGE/SEX/OCCUPATION OF PLAINTIFF: 53 / F / Waitress

CAUSE OF INJURY: *Motor Vehicle Accident/Intersection Collision.* On December 13, 1994, Defendant Vevela was operating a vehicle leased from Defendant Medical Transportation at the intersection of E. 9th Street and E. 4th Avenue in Hialeah, when a collision occurred with Plaintiff's vehicle. There was a question as to whether Plaintiff or Defendant ran a red light.

NATURE OF INJURY: Displaced and comminuted fracture of the distal ulna; open fracture of the medial malleolus; displaced fracture of the distal radius. This accident caused an aggravation of the swelling of the lymph nodes, due to a prior mastectomy. Dr. Lawson assigned Plaintiff a 12% disability to the body as a whole.

EXPERT WITNESSES:
PLAINTIFF'S: Kenneth Bynum, P.E., Accident Reconstruction, Miami
Marvin Diaz-LaCayo, M.D., Oncology, N. Miami Beach
Rodolfo Lawson, M.D., Orthopedic Surgery, Miami

## DADE COUNTY (Continued)

FRAMPTON (Continued)

AGE/SEX/OCCUPATION OF PLAINTIFF: 26 / M / Construction Worker

CAUSE OF INJURY: *Premises Liability/Restaurant.* On May 10, 1994, Plaintiff was a business invitee upon the premises owned by Defendant Rancho Luna Restaurant for the purposes of doing certain renovations, new construction and/or repairs upon Defendant's buildings as directed by Defendant. Plaintiff used equipment supplied by Defendant for his use during work performed on the premises. Plaintiff, while using a ladder provided to him by the Defendant fell from the ladder as a result of its displacement and/or its defective condition rendering the ladder unstable, unsafe, and inadequate for use by Plaintiff.

NATURE OF INJURY: Broken leg; developed reflex sympathetic dystrophy. Plaintiff is totally disabled.

EXPERT WITNESSES:
PLAINTIFF'S: Ronald Zollo, Ph.D., P.E., Engineer, Miami
Alan Wagshul, M.D., Neurology, Miami

VERDICT: *For the Defendant on March 1, 1996.*

• • •

(21) DONNA HAMMESFAHR as personal representative of the estate of JAMES HAMMESFAHR, deceased vs. OWENS CORNING FIBERGLASS CORP.

COUNTY/DOCKET #/JUDGE: Dade / 95-9837 CA 42 / Arthur Rothenberg

PLAINTIFF(S) ATTORNEY(S): David Lipman, Miami

DEFENDANT(S) ATTORNEY(S): Robert Rich of Wright, Robinson, et al., Los Angeles, CA

AGE/SEX/OCCUPATION OF PLAINTIFF: Decedent: 64 / M / Electrician

CAUSE OF INJURY: *Product Liability/Asbestos.* Throughout his working career, decedent worked with and was exposed to asbestos containing products manufactured and/or distributed by Defendant. This exposure caused decedent to contract mesothelioma.

NATURE OF INJURY: Death. Decedent was survived by his wife, Donna.

VERDICT: *$455,000 for Plaintiff on February 16, 1996 ($450,000 - future pain and suffering; $5,000 - funeral expenses).*

Defendant's Negligence: 25%; Negligence of Others: 75%

• • •

## DADE COUNTY (Continued)

(22) ALVIN HAYES vs. K-MART CORP. and O'GORMAN LONG, INC.

COUNTY/DOCKET #/JUDGE: Dade / 94-3082 CA 32 / Arthur Rothenberg

PLAINTIFF(S) ATTORNEY(S): Daryl Merl and Jeffrey Davis of Merl & Davis, Miami

DEFENDANT(S) ATTORNEY(S): Anthony Upshaw of Adorno & Zeder, Miami

AGE/SEX/OCCUPATION OF PLAINTIFF: 40 / F / Mental Health Technician

CAUSE OF INJURY: *Falldown/Discount Store.* On January 16, 1994, Plaintiff was at K-Mart in N. Miami Beach when she slipped and fell on grease in the parking area. Defendant O'Gorman Long, Inc. maintained the parking area.

NATURE OF INJURY: Bimalleolar fracture of the left ankle.

EXPERT WITNESSES:
PLAINTIFF'S: Ronald Zollo, Ph.D., P.E., Engineer, Miami
Marie Williams, D.P.M., Podiatry, N. Miami

DEFENDANT'S: Jay Stein, M.D., Orthopedic Surgery, Miami Shores

VERDICT: *For the Defendant on February 24, 1996.*

PLAINTIFF'S ATTORNEY'S COMMENTS: Jeffrey Davis: If Plaintiff's motion for new trial is denied, the case will be appealed.

• • •

(23) DEBRA-ANNE LETTMAN vs. MIRIAM FELDMAN SILBERMAN

COUNTY/DOCKET #/JUDGE: Dade / 94-23797 CA 04 / Robbie Barr

PLAINTIFF(S) ATTORNEY(S): Michael Seth Cohen and John Selig of Michael Seth Cohen, P.A., Miami

DEFENDANT(S) ATTORNEY(S): Guy Junger of Barnett & Barnard, Miami

AGE/SEX/OCCUPATION OF PLAINTIFF: 23 / F / Restaurant Manager

CAUSE OF INJURY: *Motor Vehicle Accident/Exiting Driveway.* On October 4, 1994, Defendant owned and operated a vehicle and was exiting a private driveway on 132nd Street in Miami when she collided with Plaintiff's vehicle. Liability was not admitted. Defendant alleged that she was pulling straight out and that Plaintiff was speeding and could have stopped.

NATURE OF INJURY: Torn meniscus requiring surgery.

EXPERT WITNESSES:
PLAINTIFF'S: Stephen Wender, M.D., Orthopedic Surgery, N. Miami Beach

DEFENDANT'S: Gary Ziegler, M.D., Orthopedic Surgery, Miami

## BROWARD COUNTY (Continued)

DOUGHTY (Continued)

**CAUSE OF INJURY:** *Motor Vehicle Accident/Head-on Collision.* On October 16, 1987, on U.S. 301 in Tampa, Plaintiffs were passengers in a vehicle which was struck head-on by another vehicle driven by a drunk driver who was underinsured. Plaintiffs claimed that they are entitled to uninsured/underinsured motorist benefits from Defendant for injuries alleged to have occurred as a result of this accident.

**NATURE OF INJURY:** Lauren: Broken kneecap. Andrea: Sacroiliac fusion; cervical musculoskeletal injuries. Plaintiff had been treating since 1987 for low back and sacroiliac problems. Defendant alleged Plaintiff's injuries were soft tissue and that she had psychological problems that caused her to be in pain. There was no need for surgery.

**EXPERT WITNESSES:**
**PLAINTIFF'S:** John Frymoyer, M.D., Orthopedic Surgery, Burlington, VT (video depo)
Luis Fuchs, M.D., Orthopedic Surgery, Providence, RI
Catherine Kresser, M.D., Neurology, Rhode Island (video depo)
Albert Hamel, Ph.D., Psychology, Rhode Island (video depo)
Ira Singer, M.D., Orthopedic Surgery, Rhode Island (video depo)
for Lauren

**DEFENDANT'S:** Norman Moskowitz, M.D., Orthopedic Surgery, Hallandale
Jeffrey B. Gelblum, M.D., Neurology, N. Miami Beach

**VERDICT: $186,000 for Plaintiffs on August 3, 1995** *(Andrea: $140,000 - medical expenses and lost earnings: $15,000 - past pain and suffering; $15,000 - future pain and suffering; Lauren: $6,000 - past medical expenses; $10,000 - past pain and suffering)*

**DEFENDANT'S ATTORNEY'S COMMENTS:** Plaintiffs were each paid $100,000 from the tortfeasor. Defendant offered $50,000 to Andrea and $15,000 to Lauren. Plaintiffs were asking for the policy limits of $500,000.

• • •

(7)   RODNEY DRYDEN & SHARON S. DRYDEN **vs.** AETNA CASUALTY CO. OF CONNECTICUT

**COUNTY/DOCKET #/JUDGE:** Broward / 94-2487 11 / John Fusciente

**PLAINTIFF(S) ATTORNEY(S):** Robert Rogers of Bohannon, Rogers & Fox, Ft. Lauderdale

**DEFENDANT(S) ATTORNEY(S):** Andrea Kessler of Pyszka, Kessler, et al., Ft. Lauderdale

**AGE/SEX/OCCUPATION OF PLAINTIFF:** 37 / M / Delivery Driver

**CAUSE OF INJURY:** *Motor Vehicle Accident/Intersection Collision.* On January 16, 1993, at the intersection of N.W. 10th Avenue and Hi Street in Lake Worth, the tortfeasor ran a stop sign from a side street, causing a collision with Plaintiff's vehicle. Defendant issued an uninsured/underinsured motorist policy to Plaintiff's employer which was in effect at the time of the accident.

**NATURE OF INJURY:** Plaintiff alleged aggravation of a pre-existing bulging disc. Plaintiff had a prior accident in 1990 and was treated by Dr. Silverstein. Plaintiff had an MRI at that time which showed the bulging disc and was given a 8-9% disability rating at that time. In 1993, Plaintiff had an MRI with the same results. Plaintiff went to the same doctor and had to be treated for six months that he hadn't seen the doctor for two years).

---

BRIGANTI (Continued)

**VERDICT: $3,219.44 for Plaintiff on August 4, 1995** *(past medical expenses).*

Defendant's Negligence: 80%; Island Sunburst's Negligence: 20%

• • •

(5)   CARMELLA BRILLO, personal representative of the estate and survivors of EDWARD BRILLO, deceased **vs.** OWENS CORNING FIBERGLAS CORP.

**COUNTY/DOCKET #/JUDGE:** Broward / 94-7114 27 / Arthur Franza

**PLAINTIFF(S) ATTORNEY(S):** Jim Ferraro of Ferraro & Associates, Miami

**DEFENDANT(S) ATTORNEY(S):** Bob Brown of Akerman, Senterfitt & Eidson, Miami

**AGE/SEX/OCCUPATION OF PLAINTIFF:** Decedent: 77 / M / Shipyard Painter

**CAUSE OF INJURY:** *Product Liability/Asbestos.* Decedent was exposed to Keylo, an asbestos-containing product sold, and manufactured by Defendant, between 1953 and 1972. Keylo allegedly contained 15% asbestos fibers. Decedent died on December 2, 1993, as a result of mesothelioma caused by and related to his exposure to the asbestos-containing product.

**NATURE OF INJURY:** Death. Decedent was survived by his wife, Carmella.

**EXPERT WITNESSES:**
**PLAINTIFF'S:** Douglas Pohl, M.D., Pathology, Boca Raton
Gerritt Schepers, M.D., Pathology, Alexandria, VA (video depo)

**DEFENDANT'S:** Thomas Howard, M.D., Pathology, Ocala

**VERDICT: $357,000 for Plaintiff on June 20, 1995** *($187,000 - economic losses; $120,000 - past pain and suffering; $50,000 - future pain and suffering).*

Defendant's Negligence: 80%; Others' Negligence: 20%

**PLAINTIFF'S ATTORNEY'S COMMENTS:** The case settled prior to a proceeding on punitive damages. The settlement amount is confidential.

• • •

(6)   ANDREA DOUGHTY & PHILIP DOUGHTY, individually and ANDREA DOUGHTY and PHILIP DOUGHTY, as parents and natural guardians of LAUREN DOUGHTY, a minor **vs.** INSURANCE COMPANY OF NORTH AMERICA, a/k/a CIGNA

**COUNTY/DOCKET #/JUDGE:** Broward / 92-27161 15 / John Miller

**PLAINTIFF(S) ATTORNEY(S):** Walter Campbell of Krupnick, Campbell, et al., Ft. Lauderdale

**DEFENDANT(S) ATTORNEY(S):** Rodney Favor of Law Offices of Peter Stassun, Ft. Lauderdale

**AGE/SEX/OCCUPATION OF PLAINTIFF:** Andrea: 36 / F / Not Employed; Lauren: 9 / F / n/a



RECYCLED PAPER

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 94-18082 CA 42

MARSHALL COGGINS and DORIS
COGGINS, his wife,

        Plaintiffs,

vs.

ARMSTRONG WORLD INDUSTRIES, INC.;
et al.,

        Defendants.

_____/

David M. Lipman:  28005

RECORDED

JAN 17 1996

Clerk of Circuit
& County Courts

FILED FOR RECORD
96 JAN 12 PM 3:41
CLERK, CIRCUIT & COUNTY COURTS
DADE COUNTY, FLA.
CIVIL #102

NOTICE OF VOLUNTARY DISMISSAL OF LAWSUIT

    Plaintiff(s), by and through undersigned counsel, hereby

file(s) the following Notice of Voluntary Dismissal of Lawsuit,

pursuant to Fla.R.Civ.P. 1.420(a)(1)(A), each party to bear its

own costs and attorneys' fees.

    I HEREBY CERTIFY that a true and correct copy of the
foregoing has been mailed to all counsel of record this _ll_ day
of _January_ , 1996.

               Respectfully submitted,

               DAVID M. LIPMAN
               Fla. Bar No. 280054

                  DAVID M. LIPMAN, P.A.
                  5901 S.W. 74 Street
                  Suite 304
                  Miami, Florida  33143
                  (305) 662-2600

                  ATTORNEY FOR PLAINTIFF(S)

OFF REC BK
17062PG0855

```
                                                          DATE: 01/15/1999
TIME: 13:22:53              CASE STATUS DISPLAY

CASE NO : 94 - 18082 - CA - 01        SECTION : 42           *** CLOSED ***
CASE STYLE :   COGGINS, MARSHALL                     PRINTER:
           VS  ARMSTRONG WORLD INDUSTRIES INC        PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 09/28/1994 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  110034   COMPANION CASE NO: 00 -     -     -

PI: PN01  NAME: COGGINS, MARSHALL
ATTY: DAVID MICHAEL LIPMAN                DISP:      DATE           TRN

PI: PN02  NAME: COGGINS, DORIS
ATTY: DAVID MICHAEL LIPMAN                DISP:      DATE           TRN

PI: DN01  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                    DISP: VOLD DATE 01/02/1996 TRN

PI: DN02  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                    DISP: VOLD DATE 01/12/1996 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/15/1999
TIME: 13:23:09              DOCKET DISPLAY                 PAGE:    1

CASE NO : 94 -  18082 - CA - 01      JUDICIAL SECTION : 42   *** CLOSED ***
                                              PRINTER:
CASE STYLE:    COGGINS, MARSHALL                PRINTOFF:
           VS ARMSTRONG WORLD INDUSTRIES INC    RECEIPT NO :   110034

   DATE       CODE                    PLEADING DESCRIPTION
05/27/1998   MOTI    MOTION:
                     TO SET CASES ON TRAILING DOCKET
05/27/1998   ORDD    ORDER:
                     GRANITNG MTN TO SET CASES ON TRAILING DOCKET
01/12/1996   VOLD    VOLUNTARY DISMISSAL               BK:17062 PG: 855
                     DN02
01/02/1996   VOLD    VOLUNTARY DISMISSAL               BK:17048 PG: 970
                     DN01     DN03     DN06
12/29/1995   VOLD    VOLUNTARY DISMISSAL               BK:17048 PG:  22
                     DN04


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL   7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

HIRAM PARNELL,

       Plaintiff,

vs.

OWENS-CORNING FIBERGLAS CORP.;
et al.,

       Defendants.

CASE NO. 96-14213 CA 42

David M. Lipman:  280054

_____/

## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF DEFENDANT BABCOCK & WILCOX COMPANY

Plaintiff(s), by and through undersigned counsel, hereby file(s) the following Notice of Voluntary Dismissal Without Prejudice of Defendant BABCOCK & WILCOX COMPANY, pursuant to Fla.R.Civ.P. 1.250(b) and 1.420(a)(1)(A), each party to bear its own costs and attorneys' fees.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to all counsel of record this __20th__ day of _April_, 1998.

Respectfully submitted,

DAVID M. LIPMAN
Fla. Bar No. 280054

DAVID M. LIPMAN, P.A.
5901 S.W. 74 Street
Suite 304
Miami, Florida  33143
(305) 662-2600

ATTORNEY FOR PLAINTIFF(S)

RECORDED
APR 2 9 1998
Clerk of Circuit
& County Courts

OFF REC BK
18077PG2860

```
                              DATE: 01/21/1999                 CIVIL DIVISION
TIME: 14:51:38              CASE STATUS DISPLAY

CASE NO : 96 -  14213 - CA - 01        SECTION : 42           **** OPEN ****
CASE STYLE :   PARNELL, HIRAM                                PRINTER:
         VS  OWENS CORNING FIBERGLAS CORP                   PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 07/18/1996 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:       .00
FEE STATUS: P   RECEIPT NO:  113979   COMPANION CASE NO: 00 -      -     -

PI: PN01  NAME: PARNELL, HIRAM
ATTY: DAVID MICHAEL LIPMAN                 DISP:       DATE              TRN

PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
ATTY: ATTORNEY UNKNOWN                     DISP:       DATE              TRN

PI: DN02  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                     DISP: VOLD DATE 09/04/1998 TRN

PI: DN03  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                     DISP: VOLD DATE 04/23/1998 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/21/1999
TIME: 14:50:58              DOCKET DISPLAY              PAGE:    1

CASE NO : 96 - 14213 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:    PARNELL, HIRAM                 PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :   113979

   DATE      CODE              PLEADING DESCRIPTION
09/04/1998   VOLD   VOLUNTARY DISMISSAL              BK:18266 PG: 470
                    DN02      DN07      DN09      DN13
08/03/1998   SVRT   SERVICE RETURNED        BADGE #    555 S 06/11/1998
                    DN09
07/01/1998   TEXT   SPECIFIC WITNESS AND EXHIBIT LIST
07/01/1998   NOTI   NOTICE:
                    OF ADOPTION
07/01/1998   TEXT   EXPERT WITNESS TESTIMONY SUMMARY
07/01/1998   NIAN   NOTICE OF ANSWER TO INTERROGATORIES
05/22/1998   SVRT   SERVICE RETURNED        BADGE #    555 S 04/10/1998
                    DN07

PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                         DATE: 01/21/1999
TIME: 14:51:02              DOCKET DISPLAY              PAGE:    2

CASE NO : 96 -  14213 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:    PARNELL, HIRAM                 PRINTOFF:
           VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :   113979

  DATE        CODE                  PLEADING DESCRIPTION
05/19/1998   ANSW    ANSWER                         ATTORNEY:88888888
                     DN02     DN07    DN13
04/23/1998   VOLD    VOLUNTARY DISMISSAL            BK:18077 PG:2860
                     DN03
04/13/1998   SVRT    SERVICE RETURNED     BADGE #   251 P 03/02/1998
                     DN02
04/13/1998   SVRT    SERVICE RETURNED     BADGE #   251 P 03/02/1998
                     DN13
04/03/1998   MOTI    MOTION:
                     TO SET CASES ON TRAILING DOCKET


PF1=CASE  2=PRINT  3=NAME   4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
TIME: 14:51:11              DOCKET DISPLAY            PAGE:    3

CASE NO : 96 -  14213 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                               PRINTER:
CASE STYLE:    PARNELL, HIRAM                  PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :   113979

    DATE      CODE              PLEADING DESCRIPTION
 04/03/1998   ORDD    ORDER:
                      GRANTING MOTION TO SET CASES ON TRAILING DOCKET
 03/12/1998   VOLD    VOLUNTARY DISMISSAL              BK:18017 PG:3512
                      DN11
 12/01/1997   VOLD    VOLUNTARY DISMISSAL              BK:17886 PG:1108
                      DN08
 12/01/1997   AUDT    VOLD ENTERED OR DUPLICATED IN ERROR
 11/20/1997   RDOC    RECORDED DOCUMENT                BK:17877 PG:2051
                      NOTICE OF VOLUNTARY DISMISSAL OF W.R. GRACE & CO.
 10/29/1997   VOLD    VOLUNTARY DISMISSAL              BK:17849 PG: 771
                      DN15

 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 01/21/1999
 TIME: 14:51:22              DOCKET DISPLAY              PAGE:    4

 CASE NO : 96 -  14213 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                                 PRINTER:
 CASE STYLE:    PARNELL, HIRAM                    PRINTOFF:
           VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :  113979

   DATE     CODE                    PLEADING DESCRIPTION
 06/10/1997  VOLD    VOLUNTARY DISMISSAL              BK:17668 PG:4635
                     DN06
 06/06/1997  VOLD    VOLUNTARY DISMISSAL              BK:17668 PG: 618
                     DN10
 05/19/1997  VOLD    VOLUNTARY DISMISSAL              BK:17645 PG: 615
                     DN04
 05/12/1997  VOLD    VOLUNTARY DISMISSAL              BK:17636 PG:1265
                     DN14
 02/26/1997  NOAD    NOTICE OF ADOPTION
                     ALL MASTER LIST OF WITNESSES, ETC.


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 01/21/1999
TIME: 14:51:25          DOCKET DISPLAY          PAGE:    5

CASE NO : 96 -  14213 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                        PRINTER:
CASE STYLE:    PARNELL, HIRAM            PRINTOFF:
          VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  113979

   DATE       CODE                    PLEADING DESCRIPTION
02/06/1997   TEXT    MTN AND PROFFER TO REINSTATE, ETC.
12/20/1996   VOLD    VOLUNTARY DISMISSAL               BK:17470 PG:1431
                     DN05
10/17/1996   NOAD    NOTICE OF ADOPTION
10/15/1996   SVRT    SERVICE RETURNED         BADGE # 555555 P 09/25/1996
                     DN11
10/11/1996   NAAN    NOTICE OF ADOPTION OF ANSWER
10/02/1996   SVRT    SERVICE RETURNED         BADGE # 555555 P 09/24/1996
                     DN01
09/25/1996   NOAD    NOTICE OF ADOPTION


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
 TIME: 14:51:28            DOCKET DISPLAY            PAGE:    6

 CASE NO : 96 -  14213 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                 PRINTER:
 CASE STYLE:    PARNELL, HIRAM                    PRINTOFF:
             VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  113979

    DATE      CODE                 PLEADING DESCRIPTION
 09/25/1996   NOAD    NOTICE OF ADOPTION
 09/25/1996   MDIS    MOTION TO DISMISS
                      W.R.GRACE & CO.
 09/25/1996   SVRT    SERVICE RETURNED      BADGE #    507 P 09/09/1996
                      DN15
 09/25/1996   SVRT    SERVICE RETURNED      BADGE #    251 P 09/09/1996
                      DN03
 09/25/1996   SVRT    SERVICE RETURNED      BADGE #    251 P 09/09/1996
                      DN08
 09/25/1996   SVRT    SERVICE RETURNED      BADGE #    251 P 09/09/1996
                      DN04


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/21/1999
TIME: 14:51:31            DOCKET DISPLAY                  PAGE:   7

CASE NO : 96 - 14213 - CA - 01     JUDICIAL SECTION : 42  **** OPEN ****
                                                 PRINTER:
CASE STYLE:    PARNELL, HIRAM                    PRINTOFF:
          VS OWENS CORNING FIBERGLAS CORP        RECEIPT NO :  113979

   DATE       CODE                      PLEADING DESCRIPTION
09/25/1996   SVRT    SERVICE RETURNED        BADGE #    251 P 09/09/1996
                         DN10
09/24/1996   ANSW    ANSWER                            ATTORNEY:88888888
                         DN01
09/24/1996   LCOR    LETTER OF CORRESPONDENCE
                     SEPTEMBER 19, 96 TO CLERK FROM GABRIEL SANTIESTEBAN
09/23/1996   NOTI    NOTICE:
                     OF PLTF'S RESPONSE TO DEF'S INTERROGATORIES
07/18/1996   CICO    CIVIL COVER
07/18/1996   SMIS    SUMMONS ISSUED
                         DN01     DN02     DN03     DN04     DN05     DN06     DN07

PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
TIME: 14:51:34              DOCKET DISPLAY            PAGE:    8

CASE NO : 96 - 14213 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                             PRINTER:
CASE STYLE:    PARNELL, HIRAM                PRINTOFF:
          VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :   113979

  DATE       CODE                    PLEADING DESCRIPTION
07/18/1996  CMPT   COMPLAINT




PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155   END OF INFORMATION.
```

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 96-07876 CA 42

MICHAEL DIVIETRO and OFELIA
DIVIETRO, his wife,

        Plaintiffs,             David M. Lipman:  280054

vs.

OWENS-CORNING FIBERGLAS CORP.;
et al.,

        Defendants.
_____/

## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF
## DEFENDANT BABCOCK & WILCOX COMPANY

      Plaintiff(s), by and through undersigned counsel, hereby

file(s) the following Notice of Voluntary Dismissal Without

Prejudice of Defendant BABCOCK & WILCOX COMPANY, pursuant to

Fla.R.Civ.P. 1.250(b) and 1.420(a)(1)(A), each party to bear its

own costs and attorneys' fees.

      I HEREBY CERTIFY that a true and correct copy of the
foregoing has been mailed to all counsel of record this _20th_
day of _April_, 1998.

                    Respectfully submitted,

                    _____
                    DAVID M. LIPMAN
                    Fla. Bar No. 280054

**RECORDED**

**APR 2 9 1998**

Clerk of Circuit
& County Courts

                    DAVID M. LIPMAN, P.A.
                    5901 S.W. 74 Street
                    Suite 304
                    Miami, Florida  33143
                    (305) 662-2600

                    ATTORNEY FOR PLAINTIFF(S)

OFF REC BK
18077PG2842

```
DATE: 01/21/1999              CIVIL DIVISION                  CIVM2510
TIME: 15:02:11              CASE STATUS DISPLAY

CASE NO : 96 -  7876 - CA - 01       SECTION : 42        **** OPEN ****
CASE STYLE :  DIVIETRO, MICHAEL                        PRINTER:
          VS  OWENS CORNIG FIBERGLAS CORP              PRINTOFF:
NEXT CLDR DATE:            TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 04/19/1996 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  119045   COMPANION CASE NO: 00 -      -     -

PI: PN01  NAME: DIVIETRO, MICHAEL
ATTY: DAVID MICHAEL LIPMAN                DISP:      DATE           TRN

PI: DN01  NAME: OWENS CORNIG FIBERGLAS CORP
ATTY: ATTORNEY UNKNOWN                    DISP:      DATE           TRN

PI: DN02  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                    DISP: VOLD DATE 04/23/1998 TRN

PI: DN03  NAME: OWENS ILLINOIS INC
ATTY: ATTORNEY UNKNOWN                    DISP: VOLD DATE 06/13/1997 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
TIME: 15:02:19              DOCKET DISPLAY              PAGE:    1

CASE NO : 96 -   7876 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                PRINTER:
CASE STYLE:   DIVIETRO, MICHAEL                 PRINTOFF:
              VS OWENS CORNIG FIBERGLAS CORP    RECEIPT NO :  119045

   DATE      CODE                   PLEADING DESCRIPTION
08/03/1998   SVRT    SERVICE RETURNED      BADGE #    555 S 06/11/1998
                       DN07
06/23/1998   TEXT    EXPERT WITNESS SUMMARIES
06/18/1998   SVRT    SERVICE RETURNED      BADGE #    251 P 03/02/1998
                       DN08
06/15/1998   SVRT    SERVICE RETURNED      BADGE #    251 S 03/02/1998
                       DN05
05/27/1998   MOTI    MOTION:
                     TO SET CASES ON TRAILING DOCKET
05/27/1998   ORDD    ORDER:


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                           DATE: 01/21/1999
TIME: 15:02:28          DOCKET DISPLAY              PAGE:    2

CASE NO : 96 -   7876 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                          PRINTER:
CASE STYLE:   DIVIETRO, MICHAEL            PRINTOFF:
          VS OWENS CORNIG FIBERGLAS CORP   RECEIPT NO :  119045

   DATE       CODE                  PLEADING DESCRIPTION
                    GRANTING MTN TO SET CASES ON TRAILING DOCKET
05/22/1998   SVRT   SERVICE RETURNED      BADGE #   555 S 04/10/1998
                         DN06
05/19/1998   AAMC   ANSWER TO AMENDED COMPLAINT
                         DN05      DN06      DN08
04/23/1998   VOLD   VOLUNTARY DISMISSAL                 BK:18077 PG:2842
                         DN02
06/13/1997   VOLD   VOLUNTARY DISMISSAL                 BK:17674 PG:2897
                         DN03
06/11/1997   VOLD   VOLUNTARY DISMISSAL                 BK:17674 PG:1428
                         DN04

PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/21/1999
TIME: 15:02:33            DOCKET DISPLAY                 PAGE:    3

CASE NO : 96 -   7876 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:   DIVIETRO, MICHAEL                PRINTOFF:
              VS OWENS CORNIG FIBERGLAS CORP   RECEIPT NO :   119045

   DATE      CODE                PLEADING DESCRIPTION
10/02/1996   NFIL   NOTICE OF FILING:
                    SUMMARY OF EXPERT OPINIONS
10/02/1996   MOTI   MOTION:
                    TO BIFURCATE
10/02/1996   NOAD   NOTICE OF ADOPTION
10/02/1996   NOAD   NOTICE OF ADOPTION
10/02/1996   NOAD   NOTICE OF ADOPTION
10/02/1996   NOAD   NOTICE OF ADOPTION
10/02/1996   NOAD   NOTICE OF ADOPTION
10/02/1996   RQAD   REQUEST FOR ADMISSIONS


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

RECORDED
MAY 18 1993
Clerk of Circuit
& County Courts

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

HARRY KARP and BESSIE KARP,
his wife,

        Plaintiffs,

vs.

AMCHEM PRODUCTS, INC.;
et al.,

        Defendants.
_____/

CASE NO. 92-09093 CA 42

David M. Lipman: 280054

## NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE OF DEFENDANTS AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD INDUSTRIES, INC.; BABCOCK & WILCOX CO.; FLEXITALLIC GASKET CO.; GAF CORPORATION; NATIONAL GYPSUM COMPANY; and OWENS-CORNING FIBERGLAS CORPORATION

Plaintiffs, by and through undersigned counsel, hereby file the following Notice of Voluntary Dismissal With Prejudice of Defendants AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD INDUSTRIES, INC.; BABCOCK & WILCOX CO.; FLEXITALLIC GASKET CO.; GAF CORPORATION; NATIONAL GYPSUM COMPANY; and OWENS-CORNING FIBERGLAS CORPORATION, pursuant to Fla.R.Civ.P. 1.420(a)(1)(i), each party to bear its own costs and attorneys' fees.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to all counsel of record contained on the attached Service List, this ____ day of May, 1993.

DAVID M. LIPMAN

DAVID M. LIPMAN, P.A.
5901 S.W. 74 Street
Suite 304
Miami, Florida 33143-5186
(305) 662-2600

DATED: ___ May, 1993

ATTORNEY FOR PLAINTIFFS

15915 P6 4579

(

```
                                        DATE: 01/26/1999
TIME: 09:55:55              DOCKET DISPLAY          PAGE:    1

CASE NO : 92 -  9093 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:    KARP, HARRY                     PRINTOFF:
           VS AMCHEM PRODUCTS INC          RECEIPT NO :   79296

   DATE      CODE               PLEADING DESCRIPTION
12/10/1993  ODIS    ORDER OF DISMISSAL              BK:16163 PG:2150
                       DN13
06/04/1993  ANSW    ANSWER                          ATTORNEY:  217778
                       DN13
05/27/1993  TEXT    SERVICE RTD. ON GARLOCK, 05-19-93
05/18/1993  OAAC    ORDER TO AMEND COMPLAINT
05/18/1993  MACO    MOTION TO FILE AMENDED COMPLAINT
05/18/1993  ACOM    AMENDED COMPLAINT
05/12/1993  VOLD    VOLUNTARY DISMISSAL             BK:15915 PG:4579
                       DN01    DN02    DN03    DN06    DN08    DN10    DN11


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                    DATE: 01/26/1999
TIME: 09:56:15               CASE STATUS DISPLAY

CASE NO : 92 -   9093 - CA - 01        SECTION : 42          **** OPEN ****
CASE STYLE :   KARP, HARRY                          PRINTER:
            VS  AMCHEM PRODUCTS INC                  PRINTOFF:
NEXT CLDR DATE:            TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 04/21/1992 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:   79296   COMPANION CASE NO: 00 -      -     -

PI: PN01  NAME: KARP, HARRY
ATTY: DAVID MICHAEL LIPMAN                 DISP:     DATE          TRN

PI: PN02  NAME: KARP, BESSIE
ATTY: DAVID MICHAEL LIPMAN                 DISP:     DATE          TRN

PI: DN01  NAME: AMCHEM PRODUCTS INC
ATTY: ATTORNEY UNKNOWN                     DISP: VOLD DATE 05/12/1993 TRN

PI: DN02  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                     DISP: VOLD DATE 05/12/1993 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

(

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 92-09980 CA 42

JAMES BREWINGTON and ANEIDA
BREWINGTON, his wife,

        Plaintiffs,        David M. Lipman:

vs.

AMCHEM PRODUCTS, INC.;
et al.,

        Defendants.
_____/

### NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE OF DEFENDANTS AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD INDUSTRIES, INC.; BABCOCK & WILCOX CO.; FLEXITALLIC GASKET CO.; GAF CORPORATION; NATIONAL GYPSUM COMPANY; OWENS-CORNING FIBERGLAS CORPORATION; and UNITED STATES GYPSUM COMPANY

    Plaintiffs, by and through undersigned counsel, hereby file the following Notice of Voluntary Dismissal With Prejudice of Defendants AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD INDUSTRIES, INC.; BABCOCK & WILCOX CO.; FLEXITALLIC GASKET CO.; GAF CORPORATION; NATIONAL GYPSUM COMPANY; OWENS-CORNING FIBERGLAS CORPORATION; and UNITED STATES GYPSUM COMPANY, pursuant to Fla.R.Civ.P. 1.420(a)(1)(i), each party to bear its own costs and attorneys' fees.

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to all counsel of record contained on the attached Service List, this ___ day of May, 1993.



OFF RECORD
15915 PG 4627

```
                              DATE: 01/24/1999              CIVIL DIVISION
TIME: 11:10:05           CASE STATUS DISPLAY

CASE NO : 92 -   9980 - CA - 01        SECTION : 42            **** OPEN ****
CASE STYLE :   BREWINGTON, JAMES                         PRINTER:
           VS  AMCHEM PRODUCTS INC                       PRINTOFF:
NEXT CLDR DATE:              TIME:                 HRG TYPE:
TRIAL DATE:
FILING DATE: 05/01/1992 ACTION: 022 PRODUCTS LIABILITY     AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  114616   COMPANION CASE NO: 00 -      -      -

PI: PN01  NAME: BREWINGTON, JAMES
ATTY: DAVID MICHAEL LIPMAN                   DISP:      DATE            TRN

PI: PN02  NAME: BREWINGTON, ANEIDA
ATTY: DAVID MICHAEL LIPMAN                   DISP:      DATE            TRN

PI: DN01  NAME: AMCHEM PRODUCTS INC
ATTY: ATTORNEY UNKNOWN                       DISP: VOLD DATE 05/12/1993 TRN

PI: DN02  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                       DISP: VOLD DATE 05/12/1993 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 01/24/1999
TIME: 11:10:31              DOCKET DISPLAY                PAGE:   1

CASE NO : 92 -  9980 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                                 PRINTER:
CASE STYLE:   BREWINGTON, JAMES                  PRINTOFF:
          VS AMCHEM PRODUCTS INC        RECEIPT NO :  114616

   DATE      CODE               PLEADING DESCRIPTION
01/27/1994  VOLD    VOLUNTARY DISMISSAL              BK:16228 PG:1624
                      DN05
12/10/1993  ODIS    ORDER OF DISMISSAL               BK:16163 PG:2043
                      DN14
12/10/1993  AUDT    VOLD ENTERED OR DUPLICATED IN ERROR
06/04/1993  ANSW    ANSWER                        ATTORNEY:  217778
                      DN14
05/26/1993  TEXT    SERVICE RTD. ON GARLOCK, 05-19-93
05/18/1993  OAAC    ORDER TO AMEND COMPLAINT
05/18/1993  MACO    MOTION TO FILE AMENDED COMPLAINT


PF1=CASE  2=PRINT  3=NAME   4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/24/1999
 TIME: 11:10:56              DOCKET DISPLAY              PAGE:    2

 CASE NO : 92 -   9980 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
 CASE STYLE:   BREWINGTON, JAMES                  PRINTOFF:
               VS AMCHEM PRODUCTS INC          RECEIPT NO :   114616

    DATE     CODE                    PLEADING DESCRIPTION
 05/18/1993  ACOM   AMENDED COMPLAINT
 05/12/1993  VOLD   VOLUNTARY DISMISSAL                BK:15915 PG:4627
                    DN10
 05/12/1993  VOLD   VOLUNTARY DISMISSAL                BK:15915 PG:4627
                    DN01     DN02     DN03     DN06     DN08    DN11     DN13
 02/11/1993  VOLD   VOLUNTARY DISMISSAL                BK:15811 PG:2540
                    DN12
 01/29/1993  NOTI   NOTICE:
                    OF ADOPTION OF MASTER WITNESS AND EXIBIT LIST
 12/23/1992  NOTI   NOTICE:


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```



IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

ANTHONY SAVAGE and MIRIAM
SAVAGE, his wife,

  CASE NO. 92-06397 CA 42

   Plaintiffs,

  David M. Lipman: 280054

vs.

ARMSTRONG WORLD INDUSTRIES, INC.;
et al.,

   Defendants.
_____/

NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE OF
DEFENDANTS ARMSTRONG WORLD INDUSTRIES, INC.;
BABCOCK & WILCOX CO.; GAF CORPORATION; NATIONAL
GYPSUM COMPANY; OWENS-CORNING FIBERGLAS
CORPORATION; and UNITED STATES GYPSUM COMPANY

  Plaintiffs, by and through undersigned counsel, hereby file

the following Notice of Voluntary Dismissal With Prejudice of

Defendants ARMSTRONG WORLD INDUSTRIES, INC.; BABCOCK & WILCOX

CO.; GAF CORPORATION; NATIONAL GYPSUM COMPANY; OWENS-CORNING

FIBERGLAS CORPORATION; and UNITED STATES GYPSUM COMPANY,

pursuant to Fla.R.Civ.P. 1.420(a)(1)(i), each party to bear its

own costs and attorneys' fees.

  I HEREBY CERTIFY that a true and correct copy of the
foregoing has been mailed to all counsel of record contained on
the attached Service List, this ____ day of May, 1993.

       DAVID M. LIPMAN

       DAVID M. LIPMAN, P.A.
       5901 S.W. 74 Street
       Suite 304
       Miami, Florida 33143-5186
       (305) 662-2600

DATED: ____ May, 1993  ATTORNEY FOR PLAINTIFFS

15915 PG4587

```
                              DATE: 01/24/1999              CIVIL DIVISION
TIME: 11:19:21            CASE STATUS DISPLAY

CASE NO : 92 -  6397 - CA - 01       SECTION : 42          **** OPEN ****
CASE STYLE :    SAVAGE, ANTHONY                       PRINTER:
           VS  ARMSTRONG WORLD INDUSTRIES INC         PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 03/18/1992 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:       .00
FEE STATUS: P   RECEIPT NO:  110391   COMPANION CASE NO: 00 -      -      -

PI: PN01  NAME: SAVAGE, ANTHONY
ATTY: DAVID MICHAEL LIPMAN                 DISP:      DATE              TRN

PI: PN02  NAME: SAVAGE, MIRIAM
ATTY: DAVID MICHAEL LIPMAN                 DISP:      DATE              TRN

PI: DN01  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: CHRIS N KOLOS                        DISP: VOLD DATE 02/11/1993 TRN

PI: DN02  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                     DISP: VOLD DATE 05/12/1993 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                         DATE: 01/24/1999
TIME: 11:19:47              DOCKET DISPLAY                 PAGE:    1

CASE NO : 92 -  6397 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:    SAVAGE, ANTHONY                PRINTOFF:
          VS ARMSTRONG WORLD INDUSTRIES INC     RECEIPT NO :  110391

   DATE      CODE              PLEADING DESCRIPTION
09/21/1994   ODIS   ORDER OF DISMISSAL           BK:16522 PG: 119
                      DN11
12/10/1993   ODIS   ORDER OF DISMISSAL           BK:16163 PG:2146
                      DN16
06/04/1993   ANSW   ANSWER                       ATTORNEY:  217778
                      DN16
05/26/1993   TEXT   SERVICE RTD. ON GARLOCK AND C.T. CORP., 05-19-93
05/18/1993   OAAC   ORDER TO AMEND COMPLAINT
05/18/1993   MACO   MOTION TO FILE AMENDED COMPLAINT
05/18/1993   ACOM   AMENDED COMPLAINT


PF1=CASE  2=PRINT 3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/24/1999
 TIME: 11:19:57              DOCKET DISPLAY          PAGE:    2

 CASE NO : 92 -   6397 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
 CASE STYLE:    SAVAGE, ANTHONY                PRINTOFF:
           VS ARMSTRONG WORLD INDUSTRIES INC   RECEIPT NO :   110391

   DATE      CODE                    PLEADING DESCRIPTION
 05/12/1993  VOLD     VOLUNTARY DISMISSAL              BK:15915 PG:4587
                      DN02      DN05      DN08    DN09    DN13
 04/29/1993  VOLD     VOLUNTARY DISMISSAL              BK:15896 PG:3420
                      DN15
 04/06/1993  VOLD     VOLUNTARY DISMISSAL              BK:15869 PG:4428
                      DN12
 03/18/1993  ODIS     ORDER OF DISMISSAL               BK:15849 PG:2947
                      DN03
 03/12/1993  VOLD     VOLUNTARY DISMISSAL              BK:15844 PG:1876
                      DN06


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```



IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 92-06398 CA 42

RUSSELL ROSENBERG and DORA
ROSENBERG, his wife,

       Plaintiffs,         David M. Lipman:  280054

vs.

AMCHEM PRODUCTS, INC.;
et al.,

       Defendants.
_____/

NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE OF
DEFENDANTS AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD
INDUSTRIES, INC.; BABCOCK & WILCOX CO.; FLEXITALLIC
GASKET CO.; GAF CORPORATION; NATIONAL GYPSUM COMPANY;
OWENS-CORNING FIBERGLAS CORPORATION; UNITED STATES
GYPSUM COMPANY; and U.S. MINERAL PRODUCTS CO.

    Plaintiffs, by and through undersigned counsel, hereby file

the following Notice of Voluntary Dismissal With Prejudice of

Defendants AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD INDUSTRIES,

INC.; BABCOCK & WILCOX CO.; FLEXITALLIC GASKET CO.; GAF

CORPORATION; NATIONAL GYPSUM COMPANY; OWENS-CORNING FIBERGLAS

CORPORATION; UNITED STATES GYPSUM COMPANY; and U.S. MINERAL

PRODUCTS CO., pursuant to Fla.R.Civ.P. 1.420(a)(1)(i), each

party to bear its own costs and attorneys' fees.


    I HEREBY CERTIFY that a true and correct copy of the
foregoing has been mailed to all counsel of record contained on
the attached Service List, this _10_ day of May, 1993.


OFF RECORD
15915 PG 4584

```
                                                        DATE: 01/24/1999
TIME: 11:21:13              CASE STATUS DISPLAY

CASE NO : 92 -   6398 - CA - 01       SECTION : 42            **** OPEN ****
CASE STYLE :   ROSENBERG, RUSSELL                      PRINTER:
        VS  AMCHEM PRODUCTS INC                         PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 03/18/1992 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:        .00
FEE STATUS: P   RECEIPT NO:  110391   COMPANION CASE NO: 00 -       -      -

PI: PN01  NAME: ROSENBERG, RUSSELL
ATTY: DAVID MICHAEL LIPMAN                   DISP:     DATE           TRN

PI: PN02  NAME: ROSENBERG, DORA
ATTY: DAVID MICHAEL LIPMAN                   DISP:     DATE           TRN

PI: DN01  NAME: AMCHEM PRODUCTS INC
ATTY: ATTORNEY UNKNOWN                       DISP: VOLD DATE 05/12/1993 TRN

PI: DN02  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                       DISP: VOLD DATE 05/12/1993 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 01/24/1999
TIME: 11:21:25              DOCKET DISPLAY              PAGE:    1

CASE NO : 92 -   6398 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                      PRINTER:
CASE STYLE:    ROSENBERG, RUSSELL                     PRINTOFF:
               VS AMCHEM PRODUCTS INC                 RECEIPT NO :  110391

  DATE       CODE                 PLEADING DESCRIPTION
09/21/1994   ODIS    ORDER OF DISMISSAL                    BK:16522 PG: 110
                        DN13
12/10/1993   ODIS    ORDER OF DISMISSAL                    BK:16163 PG:2148
                        DN16
06/04/1993   ANSW    ANSWER                            ATTORNEY:  217778
                        DN16
05/26/1993   TEXT    SERVICE RTD. ON GARLOCK, 05-19-93
05/18/1993   OAAC    ORDER TO AMEND COMPLAINT
05/18/1993   MACO    MOTION TO FILE AMENDED COMPLAINT
05/18/1993   ACOM    AMENDED COMPLAINT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL   7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/24/1999
 TIME: 11:21:34              DOCKET DISPLAY            PAGE:    2

 CASE NO : 92 -   6398 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
 CASE STYLE:    ROSENBERG, RUSSELL              PRINTOFF:
           VS AMCHEM PRODUCTS INC           RECEIPT NO :  110391

    DATE      CODE                    PLEADING DESCRIPTION
 05/12/1993   VOLD    VOLUNTARY DISMISSAL          ,  BK:15915 PG:4584
                         DN01    DN02    DN03    DN06    DN08    DN10    DN11
 04/07/1993   VOLD    VOLUNTARY DISMISSAL             BK:15872 PG: 397
                         DN04
 02/11/1993   VOLD    VOLUNTARY DISMISSAL             BK:15811 PG:2530
                         DN12
 01/26/1993   NOAD    NOTICE OF ADOPTION
                         WITNESS AND EXHIBIT LIST, MEMO OF LAW, AND ETC.
 01/26/1993   NOAD    NOTICE OF ADOPTION
                         WITNESS AND EXHIBIT LIST, MEMO OF LAW AND ETC.


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```



IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

RUSSELL HULST and LORRAINE
HULST, his wife,

CASE NO. 92-10241 CA 42

       Plaintiffs,

David M. Lipman:   280054

vs.

ARMSTRONG WORLD INDUSTRIES, INC.;
et al.,

       Defendants.

_____/

**NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE OF
DEFENDANTS ARMSTRONG WORLD INDUSTRIES, INC.;
BABCOCK & WILCOX CO.; BAIRNCO CORPORATION; GAF
CORPORATION; NATIONAL GYPSUM COMPANY; UNITED
STATES GYPSUM COMPANY; and U.S. MINERAL PRODUCTS CO.**

Plaintiffs, by and through undersigned counsel, hereby file
the following Notice of Voluntary Dismissal With Prejudice of
Defendants ARMSTRONG WORLD INDUSTRIES, INC.; BABCOCK & WILCOX
CO.; BAIRNCO CORPORATION; GAF CORPORATION; NATIONAL GYPSUM
COMPANY; UNITED STATES GYPSUM COMPANY; and U.S. MINERAL
PRODUCTS CO., pursuant to Fla.R.Civ.P. 1.420(a)(1)(i), each
party to bear its own costs and attorneys' fees.

    I HEREBY CERTIFY that a true and correct copy of the
foregoing has been mailed to all counsel of record contained on
the attached Service List, this ___ day of May, 1993.

                     DAVID M. LIPMAN

                     DAVID M. LIPMAN, P.A.
                     5901 S.W. 74 Street
                     Suite 304
                     Miami, Florida 33143-5186
                     (305) 662-2600

DATED: ___ May, 1993         ATTORNEY FOR PLAINTIFFS

15915PG4598

```
                              DATE: 01/24/1999              CIVIL DIVISION
TIME: 11:40:43          CASE STATUS DISPLAY

CASE NO : 92 -  10241 - CA - 01        SECTION : 42          **** OPEN ****
CASE STYLE :  HULST, RUSSELL                             PRINTER:
           VS  ARMSTRONG WORLD INDUSTRIES INC            PRINTOFF:
NEXT CLDR DATE:              TIME:            HRG TYPE:
TRIAL DATE:
FILING DATE: 05/05/1992 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:       .00
FEE STATUS: P   RECEIPT NO:  114916   COMPANION CASE NO: 00 -       -     -

PI: PN01  NAME: HULST, RUSSELL
ATTY: DAVID MICHAEL LIPMAN                  DISP:      DATE            TRN

PI: PN02  NAME: HULST, LORRAINE
ATTY: DAVID MICHAEL LIPMAN                  DISP:      DATE            TRN

PI: DN01  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                      DISP: VOLD DATE 05/12/1993 TRN

PI: DN02  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                      DISP: VOLD DATE 05/12/1993 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/24/1999
TIME: 11:41:16               DOCKET DISPLAY             PAGE:    1

CASE NO : 92 - 10241 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:   HULST, RUSSELL                  PRINTOFF:
              VS ARMSTRONG WORLD INDUSTRIES INC    RECEIPT NO :   114916

    DATE       CODE                 PLEADING DESCRIPTION
09/21/1994   ODIS    ORDER OF DISMISSAL                 BK:16526 PG:1829
                       DN10
04/19/1994   VOLD    VOLUNTARY DISMISSAL                BK:16327 PG: 572
                       DN08
04/05/1994   TEXT    BRIEF IN SUPPORT OF MOTION IN LIMINE TO PROHIBIT
04/05/1994   TEXT    MTN LIMINE TO PROHIBIT FROM INTRODUCING EVIDENCE
04/05/1994   TEXT    MOTION IN LIMINE REGARDING EXCLUSION FROM USE OF
04/05/1994   TEXT    MOTION IN LIMINE TO EXCLUDE RECORDS OF WORKERS
04/05/1994   TEXT    BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
04/05/1994   TEXT    BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE WORKERS


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 01/24/1999
TIME: 11:41:26            DOCKET DISPLAY            PAGE:    2

CASE NO : 92 - 10241 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                            PRINTER:
CASE STYLE:    HULST, RUSSELL                PRINTOFF:
               VS ARMSTRONG WORLD INDUSTRIES INC      RECEIPT NO :  114916

   DATE      CODE                PLEADING DESCRIPTION
04/05/1994   TEXT    MOTION IN LIMINE OF DEFENDANT OWENS-CORNING FIBERGLAS
04/05/1994   TEXT    MTN IN LIMINE REQUESTING JUDICAL NOTICE OF THE ADOPTION
04/05/1994   TEXT    MOTION IN LIMINE REGARDING EVIDENCE OF PLANT
04/05/1994   TEXT    MOTION TO ADMIT PRIOR TESTIMONY
04/05/1994   TEXT    MOTION IN LIMINE TO EXCLUDE COMMON REFERENCE TO COMPANIE
04/05/1994   TEXT    MEMO IN SUPPORT OF MTN IN LIMINE TO EXCLUDE EVIDENCE ETC
03/24/1994   NHRG    NOTICE OF HEARING-SPECIAL APPT   03/28/1994 AT  2:00 PM
03/10/1994   MLAW    MEMORANDUM OF LAW
03/10/1994   TEXT    MTN TO CONSOLIDATE CASES
02/04/1994   VOLD    VOLUNTARY DISMISSAL              BK:16238 PG:1967
                DN04


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 01/24/1999
 TIME: 11:41:37              DOCKET DISPLAY            PAGE:    3

 CASE NO : 92 - 10241 - CA - 01      JUDICIAL SECTION : 42  **** OPEN ****
                                             PRINTER:
 CASE STYLE:   HULST, RUSSELL               PRINTOFF:
          VS ARMSTRONG WORLD INDUSTRIES INC      RECEIPT NO :  114916

    DATE      CODE                PLEADING DESCRIPTION
 02/03/1994  NOAD    NOTICE OF ADOPTION
                     MASTER NOTICE OF MOTION AND MOTION TO STRIKE, ETC
 01/19/1994  TEXT    MOTION AND PROFFER TO REINSTATE DAMAGES
 12/10/1993  ODIS    ORDER OF DISMISSAL              BK:16163 PG:2158
                          DN14
 12/10/1993  AUDT    VOLD ENTERED OR DUPLICATED IN ERROR
 06/04/1993  ANSW    ANSWER                     ATTORNEY:  217778
 05/26/1993  TEXT    SERVICE RTD. GARLOCK AND C.T. CORP., 05-19-93
 05/18/1993  ORDD    ORDER:


 PF1=CASE  2=PRINT  3=NAME   4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160    <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/24/1999
 TIME: 11:41:49               DOCKET DISPLAY            PAGE:    4

 CASE NO : 92 - 10241 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
 CASE STYLE:   HULST, RUSSELL                     PRINTOFF:
             VS ARMSTRONG WORLD INDUSTRIES INC    RECEIPT NO :  114916


    DATE       CODE                    PLEADING DESCRIPTION
                      ON JOINT NOTICE OF STATUS OF SETTLEMENT
 05/18/1993   NOTI   NOTICE:
                      OF STATUS OF SETTLEMENT DISCUSSIONS, ETC.
 05/18/1993   OAAC   ORDER TO AMEND COMPLAINT
 05/18/1993   MACO   MOTION TO FILE AMENDED COMPLAINT
 05/18/1993   ACOM   AMENDED COMPLAINT
 05/12/1993   VOLD   VOLUNTARY DISMISSAL              BK:15915 PG:4598
                      DN01     DN02     DN03     DN05     DN07    DN11     DN12
 04/29/1993   ORDD   ORDER:
                      ON NOTICE OF STATUS OF SETTLEMENT


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160    <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```



RECORDED
MAY 18 1993
Clerk of Circuit
& County Courts

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

ELEANOR TARR and MALCOLM TARR,
her husband,

CASE NO. 92-13646 CA 42

        Plaintiffs,

David M. Lipman:   28005

vs.

AMCHEM PRODUCTS, INC.;
et al.,

        Defendants.

**NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE OF
DEFRNDANTS AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD
INDUSTRIES, INC.; BABCOCK & WILCOX CO.; BAIRNCO
CORPORATION; FLEXITALLIC GASKET CO.; GAF
CORPORATION; and TURNER & NEWALL, PLC.**

Plaintiffs, by and through undersigned counsel, hereby file the following Notice of Voluntary Dismissal With Prejudice of Defendants AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD INDUSTRIES, INC.; BABCOCK & WILCOX CO.; BAIRNCO CORPORATION; FLEXITALLIC GASKET CO.; GAF CORPORATION; and TURNER & NEWALL, PLC., pursuant to Fla.R.Civ.P. 1.420(a)(1)(i), each party to bear its own costs and attorneys' fees.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to all counsel of record contained on the attached Service List, this _10_ day of May, 1993.

DAVID M. LIPMAN

DAVID M. LIPMAN, P.A.
5901 S.W. 74 Street
Suite 304
Miami, Florida 33143-5186
(305) 662-2600

DATED: _10_ May, 1993      OFF REC BK      ATTORNEY FOR PLAINTIFFS

15915PG4571

```
                                          DATE: 01/24/1999
TIME: 11:43:09              CASE STATUS DISPLAY

CASE NO : 92 -  13646 - CA - 01      SECTION : 42           **** OPEN ****
CASE STYLE :   TARR, ELEANOR                          PRINTER:
        VS  AMCHEM PRODUCTS INC                       PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 06/16/1992 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  118768   COMPANION CASE NO: 00 -       -      -

PI: PN01  NAME: TARR, ELEANOR
ATTY: DAVID MICHAEL LIPMAN                 DISP:      DATE          TRN

PI: PN02  NAME: TARR, MALCOLM
ATTY: DAVID MICHAEL LIPMAN                 DISP:      DATE          TRN

PI: DN01  NAME: AMCHEM PRODUCTS INC
ATTY: HOWARD K CHERNA                      DISP: VOLD DATE 05/12/1993 TRN

PI: DN02  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                     DISP: VOLD DATE 05/12/1993 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                           DATE: 01/24/1999
TIME: 11:43:35              DOCKET DISPLAY           PAGE:    1

CASE NO : 92 - 13646 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                   PRINTER:
CASE STYLE:   TARR, ELEANOR                        PRINTOFF:
              VS AMCHEM PRODUCTS INC               RECEIPT NO :  118768

   DATE      CODE                 PLEADING DESCRIPTION
09/29/1994   NHRG    NOTICE OF HEARING-SPECIAL APPT   10/19/1994 AT  9:00 AM
06/02/1994   MSJU    MOTION FOR SUMMARY JUDGMENT
06/02/1994   NHRG    NOTICE OF HEARING-SPECIAL APPT   06/15/1994 AT  9:00 AM
05/25/1994   VOLD    VOLUNTARY DISMISSAL                  BK:16379 PG: 435
                     DN05
04/05/1994   TEXT    MOTION TO ADMIT PRIOR TESTIMONY
04/05/1994   TEXT    MEMO IN SUPPORT OF MTN IN LIMINE TO EXCLUDE EVIDENCE
03/24/1994   NHRG    NOTICE OF HEARING-SPECIAL APPT   03/28/1994 AT  2:00 PM
03/07/1994   RQAD    REQUEST FOR ADMISSIONS
02/24/1994   SOSC    STIPULATION AND ORDER SUBSTITUTING COUNSEL  ATY:  217778
                     DN01

PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/24/1999
TIME: 11:43:55              DOCKET DISPLAY              PAGE:    2

CASE NO : 92 - 13646 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                               PRINTER:
CASE STYLE:    TARR, ELEANOR                   PRINTOFF:
               VS AMCHEM PRODUCTS INC          RECEIPT NO :   118768


   DATE      CODE              PLEADING DESCRIPTION
02/10/1994   NAPR    NOTICE OF APPEARANCE             ATTORNEY: 88888888
                        DN01
02/03/1994   NOAD    NOTICE OF ADOPTION
                     MASTER NOTICE OF MOTION AND MOTION TO STRIKE, ETC
02/03/1994   SOSC    STIPULATION AND ORDER SUBSTITUTING COUNSEL  ATY:  217778
                        DN12
01/19/1994   TEXT    MOTION AND PROFFER TO REINSTATE DAMAGES
06/04/1993   ANSW    ANSWER                           ATTORNEY:   217778
                        DN12
05/26/1993   TEXT    SERVICE RTD. ON GARLOCK, 05-19-93


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL   7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                    DATE: 01/24/1999
TIME: 11:44:08              DOCKET DISPLAY                 PAGE:    3

CASE NO : 92 -  13646 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                    PRINTER:
CASE STYLE:    TARR, ELEANOR                        PRINTOFF:
           VS AMCHEM PRODUCTS INC                   RECEIPT NO :  118768

   DATE        CODE                   PLEADING DESCRIPTION
05/18/1993   ORDD    ORDER:
                     ON JOINT NOTICE OF STATUS OF SETTLEMENT
05/18/1993   NOTI    NOTICE:
                     OF STATUS OF SETTLEMENT DISCUSSIONS, ETC.
05/18/1993   OAAC    ORDER TO AMEND COMPLAINT
05/18/1993   MACO    MOTION TO FILE AMENDED COMPLAINT
05/18/1993   ACOM    AMENDED COMPLAINT
05/12/1993   VOLD    VOLUNTARY DISMISSAL              BK:15915 PG:4571
                     DN01     DN02     DN03     DN04     DN06     DN07     DN11
04/30/1993   VOLD    VOLUNTARY DISMISSAL              BK:15899 PG: 247
                     DN10

PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```



IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

MILDRED WITHROW and EDWARD
WITHROW, her husband,

CASE NO. 92-13647 CA 42

      Plaintiffs,

David M. Lipman:   280054

vs.

AMCHEM PRODUCTS, INC.;
et al.,

      Defendants.
_____/

**NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE OF
DEFENDANTS AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD
INDUSTRIES, INC.; BABCOCK & WILCOX CO.; BAIRNCO
CORPORATION; FLEXITALLIC GASKET CO.; GAF
CORPORATION; and TURNER & NEWALL, PLC.**

Plaintiffs, by and through undersigned counsel, hereby file

the following Notice of Voluntary Dismissal With Prejudice of

Defendants AMCHEM PRODUCTS, INC.; ARMSTRONG WORLD INDUSTRIES,

INC.; BABCOCK & WILCOX CO.; BAIRNCO CORPORATION; FLEXITALLIC

GASKET CO.; GAF CORPORATION; and TURNER & NEWALL, PLC.,

pursuant to Fla.R.Civ.P. 1.420(a)(1)(i), each party to bear its

own costs and attorneys' fees.

I HEREBY CERTIFY that a true and correct copy of the
foregoing has been mailed to all counsel of record contained on
the attached Service List, this _10_ day of May, 1993.

_____
DAVID M. LIPMAN

DAVID M. LIPMAN, P.A.
5901 S.W. 74 Street
Suite 304
Miami, Florida 33143-5186
(305) 662-2600

DATED: 10 May, 1993 OFF. REC BK        ATTORNEY FOR PLAINTIFFS

15915PG4575

```
                                               DATE: 01/24/1999
TIME: 11:45:44                 CASE STATUS DISPLAY

CASE NO : 92 -  13647 - CA - 01        SECTION : 42           **** OPEN ****
CASE STYLE :   WITHROW, MILDRED                        PRINTER:
          VS  AMCHEM PRODUCTS INC                      PRINTOFF:
NEXT CLDR DATE:               TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 06/16/1992 ACTION: 022 PRODUCTS LIABILITY     AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  118767   COMPANION CASE NO: 00 -      -      -

PI: PN01  NAME: WITHROW, MILDRED
ATTY: DAVID MICHAEL LIPMAN                   DISP:      DATE           TRN

PI: PN02  NAME: WITHROW, EDWARD
ATTY: DAVID MICHAEL LIPMAN                   DISP:      DATE           TRN

PI: DN01  NAME: AMCHEM PRODUCTS INC
ATTY: HOWARD K CHERNA                        DISP: VOLD DATE 05/12/1993 TRN

PI: DN02  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                       DISP: VOLD DATE 05/12/1993 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/24/1999
 TIME: 11:45:57            DOCKET DISPLAY                PAGE:    1

 CASE NO : 92 - 13647 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
 CASE STYLE:    WITHROW, MILDRED                  PRINTOFF:
              VS AMCHEM PRODUCTS INC             RECEIPT NO :   118767

    DATE      CODE                PLEADING DESCRIPTION
 12/02/1996  VOLD    VOLUNTARY DISMISSAL              BK:17443 PG:2368
                       DN09
 09/29/1994  NHRG    NOTICE OF HEARING-SPECIAL APPT   10/19/1994 AT  9:00 AM
 06/02/1994  MSJU    MOTION FOR SUMMARY JUDGMENT
 06/02/1994  NHRG    NOTICE OF HEARING-SPECIAL APPT   06/15/1994 AT  9:00 AM
 04/05/1994  TEXT    MEMO IN SUPPORT OF MTN IN LIMINE TO EXCLUDE EVIDENCE
 03/24/1994  NHRG    NOTICE OF HEARING-SPECIAL APPT   03/28/1994 AT  2:00 PM
 03/23/1994  NOAD    NOTICE OF ADOPTION
 03/07/1994  RQAD    REQUEST FOR ADMISSIONS
 02/24/1994  SOSC    STIPULATION AND ORDER SUBSTITUTING COUNSEL  ATY:   217778
                       DN01

 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                DATE: 01/24/1999
TIME: 11:46:05              DOCKET DISPLAY       PAGE:      2

CASE NO : 92 - 13647 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                 PRINTER:
CASE STYLE:    WITHROW, MILDRED                  PRINTOFF:
              VS AMCHEM PRODUCTS INC             RECEIPT NO :   118767

   DATE        CODE                PLEADING DESCRIPTION
02/15/1994    NAPR    NOTICE OF APPEARANCE              ATTORNEY: 88888888
                         DN12
02/03/1994    NOAD    NOTICE OF ADOPTION
                      MASTER NOTICE OF MOTION AND MOTION TO STRIKE, ETC
02/03/1994    SOSC    STIPULATION AND ORDER SUBSTITUTING COUNSEL  ATY:  217778
                         DN12
01/19/1994    TEXT    MOTION AND PROFFER TO REINSTATE DAMAGES
06/04/1993    ANSW    ANSWER                           ATTORNEY:  217778
                         DN12
05/26/1993    TEXT    SERVICE RTD. ON GARLOCK, 05-19-93


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/24/1999
TIME: 11:46:12              DOCKET DISPLAY              PAGE:    3

CASE NO : 92 - 13647 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                             PRINTER:
CASE STYLE:   WITHROW, MILDRED                PRINTOFF:
         VS AMCHEM PRODUCTS INC           RECEIPT NO :  118767

  DATE      CODE              PLEADING DESCRIPTION
05/18/1993  ORDD   ORDER:
                   ON JOINT NOTICE OF STATUS OF SETTLEMENT
05/18/1993  NOTI   NOTICE:
                   OF STATUS OF SETTLEMENT DISCUSSIONS, ETC.
05/18/1993  OAAC   ORDER TO AMEND COMPLAINT
05/18/1993  MACO   MOTION TO FILE AMENDED COMPLAINT
05/18/1993  ACOM   AMENDED COMPLAINT
05/12/1993  VOLD   VOLUNTARY DISMISSAL          BK:15915 PG:4575
                     DN01    DN02    DN03    DN04   DN06    DN07    DN11
04/29/1993  ORDD   ORDER:


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                        DATE: 01/15/1999
 TIME: 13:09:28              CASE STATUS DISPLAY

 CASE NO : 98 -  8531 - CA - 01        SECTION : 13          **** OPEN ****
 CASE STYLE :   SCHEESLEY, DONNA                        PRINTER:
            VS  OWENS CORNING FIBERGLAS CORP            PRINTOFF:
 NEXT CLDR DATE:             TIME:              HRG TYPE:
 TRIAL DATE:
 FILING DATE: 04/14/1998 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
 FEE STATUS: P   RECEIPT NO:  114369   COMPANION CASE NO: 00 -     -    -

 PI: PN01  NAME: SCHEESLEY, DONNA
 ATTY: DAVID MICHAEL LIPMAN                  DISP:      DATE           TRN

 PI: PN02  NAME: SCHEESLEY, WALTER (ESTATE OF)
 ATTY: DAVID MICHAEL LIPMAN                  DISP:      DATE           TRN

 PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
 ATTY: ATTORNEY UNKNOWN                      DISP:      DATE           TRN

 PI: DN02  NAME: ARMSTRONG WORLD INDUSTRIES INC
 ATTY: ATTORNEY UNKNOWN                      DISP:      DATE           TRN
 PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
 2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

(

```
                                             DATE: 01/15/1999
  TIME: 13:09:28              CASE STATUS DISPLAY

  CASE NO : 98 -   8531 - CA - 01       SECTION : 13          **** OPEN ****
  CASE STYLE :   SCHEESLEY, DONNA                      PRINTER:
          VS  OWENS CORNING FIBERGLAS CORP             PRINTOFF:
  NEXT CLDR DATE:            TIME:              HRG TYPE:
  TRIAL DATE:
  FILING DATE: 04/14/1998 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
  FEE STATUS: P   RECEIPT NO:  114369  COMPANION CASE NO: 00 -      -     -

  PI: DN03  NAME: A W CHESTERTON CO
  ATTY: ATTORNEY UNKNOWN                      DISP:     DATE           TRN

  PI: DN04  NAME: BABCOCK & WILCOX CO
  ATTY: ATTORNEY UNKNOWN                      DISP:     DATE           TRN

  PI: DN05  NAME: CROWN CORK & SEAL CO INC
  ATTY: DANIEL BRONSON GUERNSEY               DISP:     DATE           TRN

  PI: DN06  NAME: FLINTKOTE CO
  ATTY: ATTORNEY UNKNOWN                      DISP:     DATE           TRN
  PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
  2519-RP-50  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/15/1999
 TIME: 12:41:12            DOCKET DISPLAY              PAGE:    1

 CASE NO : 98 -   8531 - CA - 01     JUDICIAL SECTION : 13   **** OPEN ****
                                                  PRINTER:
 CASE STYLE:   SCHEESLEY, DONNA                   PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP        RECEIPT NO :  114369


   DATE        CODE                    PLEADING DESCRIPTION
 12/21/1998  VOLD    VOLUNTARY DISMISSAL                 BK:18396 PG:2726
                       DN11
 09/29/1998  MOTI    MOTION:
                       IN LIMINE
 09/29/1998  TEXT    WITNESS AND EXHIBIT LIST
 09/29/1998  TEXT    SUMMARY OF EXPERT OPINIONS
 09/29/1998  MOTI    MOTION:
                       TO BIFURCATE
 09/29/1998  RQAD    REQUEST FOR ADMISSIONS
 09/29/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
DATE: 01/15/1999          CIVIL DIVISION                 CIVM2520
TIME: 13:10:15            DOCKET DISPLAY                 PAGE:    2

  CASE NO : 98 -  8531 - CA - 01      JUDICIAL SECTION : 13   **** OPEN ****
                                                    PRINTER:
  CASE STYLE:   SCHEESLEY, DONNA                    PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  114369

   DATE        CODE                    PLEADING DESCRIPTION
  09/29/1998   NIAN   NOTICE OF ANSWER TO INTERROGATORIES
  09/29/1998   MLAW   MEMORANDUM OF LAW
  09/29/1998   MOTI   MOTION:
                      IN LIMINE
  09/15/1998   NIAN   NOTICE OF ANSWER TO INTERROGATORIES
  08/28/1998   NOTI   NOTICE:
                      OF ADOPTION
  07/29/1998   SVRT   SERVICE RETURNED        BADGE #   251 P 04/24/1998
                      DN04
  07/29/1998   SVRT   SERVICE RETURNED        BADGE #   251 P 04/24/1998
                      DN08


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/15/1999
 TIME: 13:10:24              DOCKET DISPLAY              PAGE:    3

 CASE NO : 98 -   8531 - CA - 01      JUDICIAL SECTION : 13   **** OPEN ****
                                                    PRINTER:
 CASE STYLE:    SCHEESLEY, DONNA                    PRINTOFF:
           VS OWENS CORNING FIBERGLAS CORP          RECEIPT NO :   114369

    DATE       CODE                      PLEADING DESCRIPTION
 07/29/1998   SVRT    SERVICE RETURNED          BADGE #    251 P 04/24/1998
                      DN02
 07/29/1998   SVRT    SERVICE RETURNED          BADGE #    251 S 04/24/1998
                      DN14
 07/29/1998   SVRT    SERVICE RETURNED          BADGE #    720 S 04/24/1998
                      DN09
 07/23/1998   NOTI    NOTICE:
                      OF SERVICE OF ADOPTION OF ANSWERS TO INTERROGATORIES
 07/23/1998   NAAN    NOTICE OF ADOPTION OF ANSWER
 07/23/1998   AUDT    NOAD ENTERED OR DUPLICATED IN ERROR


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/15/1999
  TIME: 13:10:28              DOCKET DISPLAY            PAGE:    4

  CASE NO : 98 -   8531 - CA - 01    JUDICIAL SECTION : 13   **** OPEN ****
                                                    PRINTER:
  CASE STYLE:    SCHEESLEY, DONNA                    PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP        RECEIPT NO :   114369

    DATE       CODE                     PLEADING DESCRIPTION
  07/23/1998   NOAD    NOTICE OF ADOPTION
  07/23/1998   NOAD    NOTICE OF ADOPTION
  07/23/1998   NOAD    NOTICE OF ADOPTION
  07/10/1998   SVRT    SERVICE RETURNED          BADGE # 555555 P 06/11/1998
                         DN10
  07/06/1998   TEXT    ANSWER TO CROSS CLAIM
  07/02/1998   ANSW    ANSWER                             ATTORNEY:  972551
                         DN08
  07/01/1998   ANSW    ANSWER                             ATTORNEY:  137278
                         DN05


  PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
  9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
  2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

(

```
                                              DATE: 01/15/1999
TIME: 13:10:32              DOCKET DISPLAY               PAGE:    5

CASE NO : 98 -   8531 - CA - 01     JUDICIAL SECTION : 13   **** OPEN ****
                                                      PRINTER:
CASE STYLE:    SCHEESLEY, DONNA                       PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP        RECEIPT NO :  114369

   DATE      CODE                   PLEADING DESCRIPTION
06/29/1998   NOTI    NOTICE:
                     OF ADOPTION
06/17/1998   TEXT    EXPERT WITNESS SUMMARIES
06/16/1998   NAAN    NOTICE OF ADOPTION OF ANSWER
06/16/1998   MSJU    MOTION FOR SUMMARY JUDGMENT
06/16/1998   TEXT    WITNESS AND EXHIBIT LIST
06/15/1998   SVRT    SERVICE RETURNED         BADGE #    555 S 05/26/1998
                         DN12
06/11/1998   SVRT    SERVICE RETURNED         BADGE #    778 P 05/26/1998
                         DN15


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/15/1999
TIME: 13:10:35             DOCKET DISPLAY              PAGE:    6

CASE NO : 98 -  8531 - CA - 01     JUDICIAL SECTION : 13   **** OPEN ****
                                              PRINTER:
CASE STYLE:    SCHEESLEY, DONNA                PRINTOFF:
            VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :   114369

   DATE     CODE                  PLEADING DESCRIPTION
06/11/1998  SVRT    SERVICE RETURNED       BADGE #     778 P 05/26/1998
                      DN15
06/11/1998  SVRT    SERVICE RETURNED       BADGE # 555555 P 05/21/1998
                      DN05
06/11/1998  SVRT    SERVICE RETURNED       BADGE # 555555 P 05/27/1998
                      DN07
06/11/1998  SVRT    SERVICE RETURNED       BADGE # 555555 P 05/21/1998
                      DN13
06/11/1998  SVRT    SERVICE RETURNED       BADGE #     251 S 04/24/1998
                      DN01


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/15/1999
TIME: 13:10:38          DOCKET DISPLAY              PAGE:    7

CASE NO : 98 -  8531 - CA - 01     JUDICIAL SECTION : 13   **** OPEN ****
                                               PRINTER:
CASE STYLE:    SCHEESLEY, DONNA              PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  114369

   DATE      CODE                  PLEADING DESCRIPTION
06/09/1998  MDIS    MOTION TO DISMISS
                    OWENS CORNING FIBERGLAS CORPORATION'S CROSS-CLAIM
06/01/1998  ORDD    ORDER:
                    RESERVES RULING ON MTN TO REINSTATE PUNITIVE DAMAGES
05/27/1998  ANSW    ANSWER                         ATTORNEY:88888888
                       DN02     DN09    DN14
05/19/1998  NOAD    NOTICE OF ADOPTION
                    MASTER MTN TO STRIKE
05/15/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES
04/14/1998  CICO    CIVIL COVER


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                               DATE: 01/15/1999
TIME: 13:10:47             DOCKET DISPLAY                PAGE:    8

CASE NO : 98 -  8531 - CA - 01      JUDICIAL SECTION : 13   **** OPEN ****
                                               PRINTER:
CASE STYLE:    SCHEESLEY, DONNA                PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :   114369

   DATE       CODE                   PLEADING DESCRIPTION
04/14/1998   DJTR    DEMAND FOR JURY TRIAL
04/14/1998   CMPT    COMPLAINT




PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155   END OF INFORMATION.
```

```
                           DATE: 01/21/1999          CIVIL DIVISION
TIME: 15:13:34          CASE STATUS DISPLAY


CASE NO : 97 -  25517 - CA - 01      SECTION : 42          **** OPEN ****
CASE STYLE :   ROSENBERGER, DONALD                       PRINTER:
           VS  OWENS CORNING FIBERGLAS CORP              PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 11/07/1997 ACTION: 002 MORTGAGE FORECLOSURE   AMT CLAIM:       .00
FEE STATUS: P   RECEIPT NO:  113650   COMPANION CASE NO: 00 -     -    -

PI: PN01  NAME: ROSENBERGER, DONALD
ATTY: DAVID MICHAEL LIPMAN                  DISP:     DATE          TRN

PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
ATTY: ATTORNEY UNKNOWN                      DISP:     DATE          TRN

PI: DN02  NAME: ANCHOR PACKING CO
ATTY: ATTORNEY UNKNOWN                      DISP:     DATE          TRN

PI: DN03  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                      DISP: VOLD DATE 08/26/1998 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                 DATE: 01/21/1999
TIME: 15:13:34              CASE STATUS DISPLAY

CASE NO : 97 -  25517 - CA - 01       SECTION : 42        **** OPEN ****
CASE STYLE :   ROSENBERGER, DONALD                     PRINTER:
           VS  OWENS CORNING FIBERGLAS CORP            PRINTOFF:
NEXT CLDR DATE:              TIME:            HRG TYPE:
TRIAL DATE:
FILING DATE: 11/07/1997 ACTION: 002 MORTGAGE FORECLOSURE   AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  113650   COMPANION CASE NO: 00 -        -     -

PI: DN04  NAME: A W CHESTERTON CO
ATTY: ATTORNEY UNKNOWN                     DISP:       DATE           TRN

PI: DN05  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                     DISP:       DATE           TRN

PI: DN06  NAME: CROWN CORK & SEAL CO INC
ATTY: DANIEL BRONSON GUERNSEY              DISP: VOLD DATE 07/15/1998 TRN

PI: DN07  NAME: FLINTKOTE CO
ATTY: ATTORNEY UNKNOWN                     DISP:       DATE           TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2519-RP-50  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

(

```
                                      DATE: 01/21/1999
TIME: 15:13:54              DOCKET DISPLAY                PAGE:    1

CASE NO : 97 -  25517 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                          PRINTER:
CASE STYLE:    ROSENBERGER, DONALD         PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :  113650

    DATE       CODE                  PLEADING DESCRIPTION
 12/21/1998   MDIS    MOTION TO DISMISS
                      THE ANCHOR PACKING CO.
 10/20/1998   VOLD    VOLUNTARY DISMISSAL              BK:18318 PG:2141
                      DN12
 08/26/1998   VOLD    VOLUNTARY DISMISSAL              BK:18250 PG:1606
                      DN03     DN08    DN10     DN13
 07/15/1998   VOLD    VOLUNTARY DISMISSAL              BK:18190 PG:2844
                      DN06
 06/04/1998   ANSW    ANSWER                       ATTORNEY:  972551
                      DN09


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 01/21/1999
TIME: 15:14:04           DOCKET DISPLAY              PAGE:    2

CASE NO : 97 - 25517 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                    PRINTER:
CASE STYLE:    ROSENBERGER, DONALD              PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  113650

     DATE     CODE                      PLEADING DESCRIPTION
06/01/1998   ORDD    ORDER:
                     RESERVES RULING ON MTN TO REINSTATE PUNITIVE DAMAGES
04/30/1998   MOTI    MOTION:
                     AND PROFFER TO REINSTATE PUNITIVE DAMAGES
03/10/1998   MDIS    MOTION TO DISMISS
                      THE ANCHOR PACKING COMPANY
03/10/1998   ANSW    ANSWER                               ATTORNEY:88888888
                       DN02
03/09/1998   TEXT    DEFT'S EXPERT WITNESS SUMMARIES
02/17/1998   NAAN    NOTICE OF ADOPTION OF ANSWER


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/21/1999
TIME: 15:14:08          DOCKET DISPLAY               PAGE:    3

CASE NO : 97 - 25517 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                             PRINTER:
CASE STYLE:   ROSENBERGER, DONALD             PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :   113650

   DATE     CODE                  PLEADING DESCRIPTION
02/13/1998  ANSW    ANSWER                            ATTORNEY:  137278
                     DN06
02/10/1998  ANSW    ANSWER                            ATTORNEY:88888888
                     DN03     DN08     DN10     DN13
01/27/1998  ANSW    ANSWER                            ATTORNEY:88888888
                     DN01
01/26/1998  TEXT    ANSWER TO CROSSCLAIM
01/26/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES
01/26/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES
01/26/1998  EXLT    EXHIBIT LIST


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/21/1999
TIME: 15:14:13          DOCKET DISPLAY              PAGE:    4

CASE NO : 97 - 25517 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:   ROSENBERGER, DONALD              PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :  113650

   DATE       CODE              PLEADING DESCRIPTION
01/26/1998   NOTI   NOTICE:
                    OF ADOPTION OF DEF ANSWER,AFFIR'DEFENSES AND ETC
11/07/1997   SMIS   SUMMONS ISSUED
                       DN08    DN09    DN10    DN11    DN12    DN13
11/07/1997   CICO   CIVIL COVER
11/07/1997   SMIS   SUMMONS ISSUED
                       DN01    DN02    DN03    DN04    DN05    DN06    DN07
11/07/1997   NOTI   NOTICE:
                    OF PLTFF. RESP TO DEFTS. INTERROGATORIES
11/07/1997   CMPT   COMPLAINT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                    DATE: 01/21/1999
TIME: 15:16:03              CASE STATUS DISPLAY

CASE NO : 98 - 10132 - CA - 01       SECTION : 42          **** OPEN ****
CASE STYLE :   BENNER, DOROTHY                      PRINTER:
            VS  ANCHOR PACKING CO                   PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 05/04/1998 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:       .00
FEE STATUS: P   RECEIPT NO:  115683   COMPANION CASE NO: 00 -       -      -

PI: PN01  NAME: BENNER, DOROTHY
ATTY: DAVID MICHAEL LIPMAN                  DISP:       DATE          TRN

PI: PN02  NAME: BENNER, CHARLES (ESTATE OF) (DECEASED)
ATTY: DAVID MICHAEL LIPMAN                  DISP:       DATE          TRN

PI: DN01  NAME: ANCHOR PACKING CO
ATTY: ATTORNEY UNKNOWN                      DISP:       DATE          TRN

PI: DN02  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                      DISP:       DATE          TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                  DATE: 01/21/1999
 TIME: 15:16:03              CASE STATUS DISPLAY

 CASE NO : 98 -  10132 - CA - 01       SECTION : 42        **** OPEN ****
 CASE STYLE :   BENNER, DOROTHY                      PRINTER:
            VS  ANCHOR PACKING CO                    PRINTOFF:
 NEXT CLDR DATE:            TIME:            HRG TYPE:
 TRIAL DATE:
 FILING DATE: 05/04/1998 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
 FEE STATUS: P   RECEIPT NO:  115683   COMPANION CASE NO: 00 -      -     -

 PI: DN03  NAME: A W CHESTERTON CO
 ATTY: ATTORNEY UNKNOWN                      DISP:      DATE         TRN

 PI: DN04  NAME: BABCOCK & WILCOX CO
 ATTY: ATTORNEY UNKNOWN                      DISP:      DATE         TRN

 PI: DN05  NAME: FLINTKOTE CO
 ATTY: ATTORNEY UNKNOWN                      DISP:      DATE         TRN

 PI: DN06  NAME: GAF CORP
 ATTY: ATTORNEY UNKNOWN                      DISP:      DATE         TRN
 PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
 2519-RP-50  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                         DATE: 01/21/1999
TIME: 15:16:18              DOCKET DISPLAY               PAGE:    1

CASE NO : 98 -  10132 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
CASE STYLE:    BENNER, DOROTHY                    PRINTOFF:
               VS ANCHOR PACKING CO               RECEIPT NO :   115683

  DATE       CODE                  PLEADING DESCRIPTION
09/30/1998   NIAN    NOTICE OF ANSWER TO INTERROGATORIES
08/28/1998   NOTI    NOTICE:
                     OF ADOPTION OF WAIVER OF SERVICE OF PROCESS
08/26/1998   VOLD    VOLUNTARY DISMISSAL                 BK:18250 PG:1628
                        DN09
08/18/1998   TEXT    ANSWER TO 2ND-AM. COMPLAINT - THE ANCHOR PACKING CO
08/06/1998   ANSW    ANSWER                           ATTORNEY:  972551
                        DN07
07/09/1998   ANSW    ANSWER                           ATTORNEY:88888888
                        DN02     DN07     DN08     DN11


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/21/1999
TIME: 15:16:36              DOCKET DISPLAY             PAGE:    2

CASE NO : 98 - 10132 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                               PRINTER:
CASE STYLE:    BENNER, DOROTHY                 PRINTOFF:
            VS ANCHOR PACKING CO          RECEIPT NO :   115683

   DATE      CODE                   PLEADING DESCRIPTION
06/09/1998  NOTI    NOTICE:
                    OF ADOPTION OF ANSWER, AFFIRMATIVE DEFENSES
06/09/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES
06/09/1998  NOTI    NOTICE:
                    OF ADOPTION OF MASTER ANSWERS TO INTERROG'S
06/09/1998  NOTI    NOTICE:
                    OF ADOPTION OF MASTER WITNESS AND EXHIBIT LIST
05/04/1998  CICO    CIVIL COVER
05/04/1998  DJTR    DEMAND FOR JURY TRIAL
05/04/1998  CMPT    COMPLAINT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        (
                                      DATE: 01/24/1999
  TIME: 10:57:54            CASE STATUS DISPLAY

  CASE NO : 95 - 10291 - CA - 01     SECTION : 42        **** OPEN ****
  CASE STYLE :   ORBIK, PATRICIA                      PRINTER:
            VS  OWENS CORNING FIBERGLAS CORP          PRINTOFF:
  NEXT CLDR DATE:            TIME:            HRG TYPE:
  TRIAL DATE:
  FILING DATE: 05/22/1995 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
  FEE STATUS: P   RECEIPT NO:  111180   COMPANION CASE NO: 00 -     -     -

  PI: PN01  NAME: ORBIK, PATRICIA
  ATTY: DAVID MICHAEL LIPMAN                   DISP:      DATE           TRN

  PI: PN02  NAME: ORBIK, CARL (ESTATE OF)
  ATTY: DAVID MICHAEL LIPMAN                   DISP:      DATE           TRN

  PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
  ATTY: TRACY TROUTMAN CREEK                   DISP: VOLD DATE 06/27/1996 TRN

  PI: DN02  NAME: BABCOCK & WILCOX CO
  ATTY: ATTORNEY UNKNOWN                       DISP:      DATE           TRN
  PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
  2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                DATE: 01/24/1999
TIME: 10:58:29                DOCKET DISPLAY                   PAGE:    1

CASE NO : 95 - 10291 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                    PRINTER:
CASE STYLE:    ORBIK, PATRICIA                      PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :   111180

   DATE       CODE                   PLEADING DESCRIPTION
08/04/1998    AAMC    ANSWER TO AMENDED COMPLAINT
                         DN08
07/29/1998    SVRT    SERVICE RETURNED        BADGE # 555555 P 04/10/1998
                         DN07
07/23/1998    TEXT    DEFTS. EXPERT WITNESS SUMMARIES
07/10/1998    SVRT    SERVICE RETURNED        BADGE # 555555 P 06/11/1998
                         DN08
06/18/1998    SVRT    SERVICE RETURNED        BADGE #    720 P 04/03/1998
                         DN09
06/15/1998    SVRT    SERVICE RETURNED        BADGE #    720 S 04/03/1998
                         DN06


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/24/1999
TIME: 10:59:03          DOCKET DISPLAY           PAGE:    2

CASE NO : 95 - 10291 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:   ORBIK, PATRICIA                 PRINTOFF:
         VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  111180


   DATE      CODE                  PLEADING DESCRIPTION
05/27/1998  ORDD    ORDER:
                    GRANTING MTN TO SET CASES ON TRAILING DOCKET
05/22/1998  MOTI    MOTION:
                    TO SET CASES ON TRAILING DOCKET
05/19/1998  TEXT    ANSWER TO AMD COMPLAINT - ARMSTRONG WORLD INDS., ETC.
03/30/1998  ACOM    AMENDED COMPLAINT
03/30/1998  MACO    MOTION TO FILE AMENDED COMPLAINT
03/30/1998  OAAC    ORDER TO AMEND COMPLAINT
03/27/1998  ACOM    AMENDED COMPLAINT
03/27/1998  MACO    MOTION TO FILE AMENDED COMPLAINT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

(

```
                                       DATE: 01/24/1999
TIME: 10:59:15          DOCKET DISPLAY            PAGE:    3

CASE NO : 95 -  10291 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                        PRINTER:
CASE STYLE:   ORBIK, PATRICIA          PRINTOFF:
         VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :  111180

   DATE      CODE              PLEADING DESCRIPTION
02/20/1997  OSJT   ORDER SETTING JURY TRIAL        10/10/1997 AT  9:00 AM
02/20/1997  TEXT   UNOPPOSED MTN TO SET CASES FOR TRIAL
06/27/1996  VOLD   VOLUNTARY DISMISSAL              BK:17250 PG:4148
                   DN01
12/20/1995  VOLD   VOLUNTARY DISMISSAL              BK:17035 PG: 332
                   DN05
11/13/1995  ORDD   ORDER:
                   GRANTING MTN. FOR RE-SCHEDULING CASES
10/30/1995  NOAD   NOTICE OF ADOPTION
                   OF MOTION TO STRIKE, ETC.


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 01/24/1999
 TIME: 10:59:26              DOCKET DISPLAY              PAGE:    4

 CASE NO : 95 -  10291 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
 CASE STYLE:    ORBIK, PATRICIA                PRINTOFF:
            VS OWENS CORNING FIBERGLAS CORP        RECEIPT NO :  111180

   DATE        CODE                     PLEADING DESCRIPTION
 09/25/1995    TEXT    MTOION AND PROFFER TO REINSTATE PUNITIVE DAMAGES
 09/13/1995    SVRT    SERVICE RETURNED         BADGE #    67 P 08/14/1995
                          DN04
 09/06/1995    NAAN    NOTICE OF ADOPTION OF ANSWER
 08/09/1995    ANSW    ANSWER                          ATTORNEY:  772089
                          DN01
 08/09/1995    TEXT    MOTION IN LIMINE REQUESTING JUDICIAL NOTICE
 08/09/1995    RQAD    REQUEST FOR ADMISSIONS
 07/27/1995    SVRT    SERVICE RETURNED         BADGE #   251 P 07/24/1995
                          DN02


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/24/1999
TIME: 10:59:35            DOCKET DISPLAY             PAGE:    5

CASE NO : 95 - 10291 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:   ORBIK, PATRICIA                 PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :  111180

   DATE      CODE               PLEADING DESCRIPTION
07/27/1995   SVRT   SERVICE RETURNED        BADGE #   251 P 07/24/1995
                      DN01
07/20/1995   OSJT   ORDER SETTING JURY TRIAL        11/20/1995 AT  9:00 AM
07/17/1995   NHRG   NOTICE OF HEARING-SPECIAL APPT  07/19/1995 AT  9:00 AM
07/14/1995   TEXT   MOTION TO PLACE CASES ON TRIAL DOCKET
06/29/1995   NOTI   NOTICE:
                    OF PLTFF'S AMENMDNET TO INTERROGATORIES, ETC
06/13/1995   NIAN   NOTICE OF ANSWER TO INTERROGATORIES
05/22/1995   CICO   CIVIL COVER
05/22/1995   DJTR   DEMAND FOR JURY TRIAL


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/24/1999
TIME: 10:59:42              DOCKET DISPLAY              PAGE:    6

CASE NO : 95 - 10291 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                    PRINTER:
CASE STYLE:   ORBIK, PATRICIA                       PRINTOFF:
          VS OWENS CORNING FIBERGLAS CORP           RECEIPT NO :   111180

    DATE       CODE                    PLEADING DESCRIPTION
 05/22/1995   SMIS    SUMMONS ISSUED
                       DN01      DN02      DN03      DN04
 05/22/1995   CMPT    COMPLAINT




 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-155    END OF INFORMATION.
```

```
                                  DATE: 01/24/1999           CIVIL DIVISION
TIME: 11:06:09            CASE STATUS DISPLAY

CASE NO : 97 -  25514 - CA - 01       SECTION : 42          **** OPEN ****
CASE STYLE :  GOLDENBERG, NORMA                         PRINTER:
             VS  OWENS CORNING FIBERGLAS CORP           PRINTOFF:
NEXT CLDR DATE:              TIME:               HRG TYPE:
TRIAL DATE:
FILING DATE: 11/07/1997 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:        .00
FEE STATUS: P   RECEIPT NO:  113645   COMPANION CASE NO: 00 -       -      -

PI: PN01  NAME: GOLDENBERG, NORMA
ATTY: DAVID MICHAEL LIPMAN                   DISP:      DATE           TRN

PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
ATTY: ATTORNEY UNKNOWN                       DISP:      DATE           TRN

PI: DN02  NAME: ANCHOR PACKING CO
ATTY: ATTORNEY UNKNOWN                       DISP:      DATE           TRN

PI: DN03  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                       DISP: VOLD DATE 08/26/1998 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/24/1999
TIME: 11:06:29            DOCKET DISPLAY              PAGE:    1

CASE NO : 97 - 25514 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:    GOLDENBERG, NORMA              PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :  113645

   DATE       CODE                      PLEADING DESCRIPTION
11/13/1998    VOLD     VOLUNTARY DISMISSAL               BK:18343 PG:3515
                          DN07
08/26/1998    VOLD     VOLUNTARY DISMISSAL               BK:18250 PG:1545
                          DN03      DN08      DN10
08/26/1998    VOLD     VOLUNTARY DISMISSAL               BK:18250 PG:1566
                          DN12
07/15/1998    VOLD     VOLUNTARY DISMISSAL               BK:18190 PG:2846
                          DN06
06/04/1998    ANSW     ANSWER                      ATTORNEY:  972551
                          DN09


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/24/1999
 TIME: 11:06:39              DOCKET DISPLAY                PAGE:    2

 CASE NO : 97 -  25514 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
 CASE STYLE:    GOLDENBERG, NORMA                 PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :   113645

    DATE      CODE                    PLEADING DESCRIPTION
 06/01/1998   ORDD    ORDER:
                      RESERVES RULING ON PLT'S MTN TO REINSTATE PUNITIVE DAMAG
 04/30/1998   MOTI    MOTION:
                      AND PROFFER TO REINSTATE PUNITIVE DAMAGES
 03/10/1998   ANSW    ANSWER                          ATTORNEY:88888888
                         DN02
 03/10/1998   MDIS    MOTION TO DISMISS
                         THE ANCHOR PACKING COMPANY
 03/09/1998   TEXT    EXPERT WITNESS SUMMARIES
 03/03/1998   NIAN    NOTICE OF ANSWER TO INTERROGATORIES


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/24/1999
TIME: 11:06:46              DOCKET DISPLAY                PAGE:    3

CASE NO : 97 -  25514 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
CASE STYLE:    GOLDENBERG, NORMA                  PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :   113645

   DATE      CODE                     PLEADING DESCRIPTION
02/17/1998   NAAN    NOTICE OF ADOPTION OF ANSWER
02/13/1998   ANSW    ANSWER                               ATTORNEY:  137278
                       DN06
02/10/1998   ANSW    ANSWER                           ATTORNEY:88888888
                       DN03     DN08     DN10
02/02/1998   MDIS    MOTION TO DISMISS
                     CROSSCLAIM
01/26/1998   NAAN    NOTICE OF ADOPTION OF ANSWER
01/26/1998   NAAN    NOTICE OF ADOPTION OF ANSWER
01/26/1998   NOAD    NOTICE OF ADOPTION


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL   7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/24/1999
TIME: 11:06:52           DOCKET DISPLAY            PAGE:    4

CASE NO : 97 - 25514 - CA - 01       JUDICIAL SECTION : 42   **** OPEN ****
                                          PRINTER:
CASE STYLE:   GOLDENBERG, NORMA               PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :  113645

   DATE      CODE                    PLEADING DESCRIPTION
01/26/1998  NOAD    NOTICE OF ADOPTION
01/26/1998  TEXT    ANSWER TO CROSSCLAIM
01/22/1998  NOAD    NOTICE OF ADOPTION
            MTN TO STRIKE
01/22/1998  ANSW    ANSWER                        ATTORNEY:88888888
            DN01
11/26/1997  NIAN    NOTICE OF ANSWER TO INTERROGATORIES
11/21/1997  MOTI    MOTION:
            FOR AGREED COURT ORD. REQUIRING RELEASE OF PATHOLOGY
11/21/1997  ORDD    ORDER:


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/24/1999
TIME: 11:06:58            DOCKET DISPLAY              PAGE:    5

CASE NO : 97 -  25514 - CA - 01      JUDICIAL SECTION : 42  **** OPEN ****
                                             PRINTER:
CASE STYLE:   GOLDENBERG, NORMA               PRINTOFF:
          VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :   113645

  DATE       CODE               PLEADING DESCRIPTION
               GRANTING MOT FOR ORDER REQUIRING RELEASE OF PATHOLOGY
11/20/1997  MOTI   MOTION:
               FOR AGREED COURT ORDER
11/07/1997  SMIS   SUMMONS ISSUED
               DN08    DN09    DN10    DN11    DN12    DN13
11/07/1997  CICO   CIVIL COVER
11/07/1997  SMIS   SUMMONS ISSUED
               DN01    DN02    DN03    DN04    DN05    DN06    DN07
11/07/1997  CMPT   COMPLAINT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155   END OF INFORMATION.
```

```
                          DATE: 01/21/1999              CIVIL DIVISION
TIME: 15:05:33            CASE STATUS DISPLAY

CASE NO : 96 -  3619 - CA - 01        SECTION : 42           **** OPEN ****
CASE STYLE :  GLADSON, RUSSELL                          PRINTER:
         VS  OWENS CORNING FIBERGLAS CORP               PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 02/22/1996 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  113841   COMPANION CASE NO: 00 -       -     -

PI: PN01  NAME: GLADSON, RUSSELL
ATTY: DAVID MICHAEL LIPMAN              DISP:      DATE           TRN

PI: PN02  NAME: GLADSON, CAROL
ATTY: ATTORNEY UNKNOWN                  DISP:      DATE           TRN

PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
ATTY: ATTORNEY UNKNOWN                  DISP:      DATE           TRN

PI: DN02  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                  DISP:      DATE           TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
TIME: 15:05:39              DOCKET DISPLAY              PAGE:    1

CASE NO : 96 -   3619 - CA - 01       JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
CASE STYLE:   GLADSON, RUSSELL                PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :   113841

   DATE       CODE                     PLEADING DESCRIPTION
08/04/1998    AAMC    ANSWER TO AMENDED COMPLAINT
                        DN09
07/29/1998    SVRT    SERVICE RETURNED          BADGE # 555555 P 04/10/1998
                        DN08
07/10/1998    SVRT    SERVICE RETURNED          BADGE # 555555 P 06/11/1998
                        DN09
06/23/1998    TEXT    EXPERT WITNESS SUMMARIES
06/18/1998    SVRT    SERVICE RETURNED          BADGE #    720 P 04/03/1998
                        DN10
06/15/1998    SVRT    SERVICE RETURNED          BADGE #    720 S 04/03/1998
                        DN07


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
TIME: 15:05:46              DOCKET DISPLAY              PAGE:    2

CASE NO : 96 -  3619 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                   PRINTER:
CASE STYLE:    GLADSON, RUSSELL                    PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :  113841

   DATE        CODE                    PLEADING DESCRIPTION
05/27/1998    MOTI    MOTION:
                      TO SET CASES ON TRAILING DOCKET
05/27/1998    ORDD    ORDER:
                      GRANTING MTN TO SET CASES ON TRAILING DOCKET
05/19/1998    AAMC    ANSWER TO AMENDED COMPLAINT
                          DN07     DN08     DN10
06/09/1997    VOLD    VOLUNTARY DISMISSAL                BK:17668 PG: 633
                          DN04
06/09/1997    VOLD    VOLUNTARY DISMISSAL                BK:17668 PG: 629
                          DN03


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/21/1999
 TIME: 15:05:55              DOCKET DISPLAY          PAGE:    3

 CASE NO : 96 -   3619 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                             PRINTER:
 CASE STYLE:    GLADSON, RUSSELL             PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :   113841

    DATE        CODE                  PLEADING DESCRIPTION
 04/18/1997   RDOC     RECORDED DOCUMENT            BK:17610 PG:3237
                       VOLUNTARY DISMISSAL - W. R. GRACE & CO. - CONN.
 12/20/1996   VOLD     VOLUNTARY DISMISSAL          BK:17470 PG:1373
                       DN05
 09/23/1996   VOLD     VOLUNTARY DISMISSAL          BK:17361 PG:1764
                       DN06
 09/16/1996   NOAD     NOTICE OF ADOPTION
                       MEMORANDUM OF LAW
 09/16/1996   NOAD     NOTICE OF ADOPTION
                       WITNESS AND EXHIBIT LIST


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                           DATE: 01/21/1999
 TIME: 15:06:04              DOCKET DISPLAY           PAGE:    4

 CASE NO : 96 -   3619 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
 CASE STYLE:    GLADSON, RUSSELL                   PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :   113841

    DATE      CODE                 PLEADING DESCRIPTION
 09/16/1996   NOAD    NOTICE OF ADOPTION
                      REQUEST TO TAKE JUDICIAL NOTICE
 09/16/1996   TEXT    SUMMARY OF EXPERT OPINIONS
 09/16/1996   MOTI    MOTION:
                      TO BIFURCATE
 09/16/1996   RQAD    REQUEST FOR ADMISSIONS
 09/16/1996   NIAN    NOTICE OF ANSWER TO INTERROGATORIES
 09/16/1996   AUDT    MLAW ENTERED OR DUPLICATED IN ERROR
 09/16/1996   MOTI    MOTION:
                      IN LIMINE TO EXCLUDE EVIDENCE, ETC.


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
TIME: 15:06:07            DOCKET DISPLAY        PAGE:    5

CASE NO : 96 -  3619 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                          PRINTER:
CASE STYLE:    GLADSON, RUSSELL            PRINTOFF:
           VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  113841

   DATE     CODE                PLEADING DESCRIPTION
09/16/1996  MOTI    MOTION:
                    IN LIMINE TO EXCLUDE EVIDENCE, ETC.
08/23/1996  MOTI    MOTION:
                    AND PROFFER TO REINSTATE PUNITIVE DAMAGES
08/20/1996  NHRG    NOTICE OF HEARING-SPECIAL APPT   09/18/1996 AT  9:00 AM
08/15/1996  MCHV    MOTION FOR CHANGE OF VENUE
06/10/1996  NOAD    NOTICE OF ADOPTION
                    MOTION TO DISMISS AND/OR STRIKE
05/14/1996  ACOM    AMENDED COMPLAINT
05/14/1996  TEXT    MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD DEFTS.


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

(

```
                                            DATE: 01/21/1999
TIME: 15:06:11              DOCKET DISPLAY              PAGE:    6

CASE NO : 96 -   3619 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                     PRINTER:
CASE STYLE:    GLADSON, RUSSELL                      PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :  113841

    DATE      CODE                   PLEADING DESCRIPTION
05/13/1996   NHRG   NOTICE OF HEARING-SPECIAL APPT   05/15/1996 AT  9:30 AM
05/10/1996   NOAD   NOTICE OF ADOPTION
                    MASTERS LISTS OF WITNESSES
04/18/1996   NOAD   NOTICE OF ADOPTION
                    AMENDED MASTER ANSWER
04/17/1996   NAAN   NOTICE OF ADOPTION OF ANSWER
04/08/1996   SVRT   SERVICE RETURNED          BADGE # 555555 P 03/29/1996
                         DN04
04/08/1996   SVRT   SERVICE RETURNED          BADGE # 555555 P 04/01/1996
                         DN05


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 01/21/1999
TIME: 15:06:14            DOCKET DISPLAY          PAGE:    7

CASE NO : 96 -  3619 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
CASE STYLE:    GLADSON, RUSSELL                   PRINTOFF:
           VS OWENS CORNING FIBERGLAS CORP        RECEIPT NO :   113841

   DATE      CODE                    PLEADING DESCRIPTION
04/05/1996   NAAN    NOTICE OF ADOPTION OF ANSWER
04/05/1996   TEXT    MTN. FOR PARTIAL SUMMARY JUDG.
04/05/1996   TEXT    WITNESS AND EXHIBIT LIST
04/04/1996   SVRT    SERVICE RETURNED          BADGE #    691 P 03/19/1996
                       DN06
03/25/1996   ANSW    ANSWER                            ATTORNEY:88888888
                       DN01
03/15/1996   NOTI    NOTICE:
                     OF RESPONSE TO INTERROGATORIES & REQUEST FOR PRODUCTION
03/15/1996   SVRT    SERVICE RETURNED          BADGE #    251 P 03/13/1996
                       DN02


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/21/1999
TIME: 15:06:18              DOCKET DISPLAY                  PAGE:    8

CASE NO : 96 -   3619 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
CASE STYLE:    GLADSON, RUSSELL                   PRINTOFF:
            VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :  113841

   DATE      CODE                      PLEADING DESCRIPTION
03/15/1996   SVRT    SERVICE RETURNED          BADGE #    251 P 03/13/1996
                     DN01
02/22/1996   CICO    CIVIL COVER
02/22/1996   DJTR    DEMAND FOR JURY TRIAL
02/22/1996   SMIS    SUMMONS ISSUED
                     DN01     DN02     DN03     DN04     DN05     DN06
02/22/1996   CMPT    COMPLAINT




PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155   END OF INFORMATION.
```

(

```
                                               DATE: 01/21/1999
TIME: 15:24:05               CASE STATUS DISPLAY

CASE NO : 95 -  17524 - CA - 01      SECTION : 42        **** OPEN ****
CASE STYLE :   CARLEY, DORIS                        PRINTER:
           VS  OWENS CORNING FIBERGLAS CORP         PRINTOFF:
NEXT CLDR DATE:            TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 09/07/1995 ACTION: 022 PRODUCTS LIABILITY   AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  117095   COMPANION CASE NO: 00 -      -     -

PI: PN01  NAME: CARLEY, DORIS
ATTY: DAVID MICHAEL LIPMAN                DISP:      DATE            TRN

PI: PN02  NAME: CARLEY, LARRY (ESTATE OF)
ATTY: DAVID MICHAEL LIPMAN                DISP:      DATE            TRN

PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
ATTY: TRACY TROUTMAN CREEK                DISP: VOLD DATE 06/27/1996 TRN

PI: DN02  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                    DISP:      DATE            TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                     DATE: 01/21/1999
TIME: 15:24:11              DOCKET DISPLAY            PAGE:    1

CASE NO : 95 - 17524 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                     PRINTER:
CASE STYLE:    CARLEY, DORIS                        PRINTOFF:
          VS OWENS CORNING FIBERGLAS CORP           RECEIPT NO :  117095

   DATE       CODE                 PLEADING DESCRIPTION
02/20/1997   VOLD    VOLUNTARY DISMISSAL               BK:17533 PG:4938
                        DN06
02/20/1997   OSJT    ORDER SETTING JURY TRIAL      11/10/1997 AT  9:00 AM
02/20/1997   TEXT    UNOPPOSED MTN TO SET CASES FOR TRIAL
08/01/1996   VOLD    VOLUNTARY DISMISSAL               BK:17298 PG:1937
                        DN04
06/27/1996   VOLD    VOLUNTARY DISMISSAL               BK:17250 PG:4166
                        DN01
05/13/1996   VOLD    VOLUNTARY DISMISSAL               BK:17199 PG:3267
                        DN05


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/21/1999
TIME: 15:24:18              DOCKET DISPLAY              PAGE:    2

CASE NO : 95 -  17524 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                 PRINTER:
CASE STYLE:   CARLEY, DORIS                      PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :  117095

    DATE      CODE                   PLEADING DESCRIPTION
 02/22/1996   TEXT    MTN AND PROFFER TO REINSTATE PUNITIVE DAMAGES
 02/15/1996   TEXT    MOTION IN LIMINE, ETC.
 02/15/1996   NIAN    NOTICE OF ANSWER TO INTERROGATORIES
 02/15/1996   RQAD    REQUEST FOR ADMISSIONS
 02/15/1996   REQU    REQUEST:
                      TO TAKE JUDICIAL NOTICE RELATED TO CO-DEF.ANSWER TO INT.
 02/15/1996   TEXT    SUMMARY OF EXPERT OPINIONS
 02/15/1996   TEXT    MOTION TO BIFURCATE
 02/15/1996   TEXT    WITNESS AND EXHIBIT LIST
 02/15/1996   TEXT    MEMO OF LAW IN SUPPORT OF SPECIAL JURY


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
 TIME: 15:24:22            DOCKET DISPLAY           PAGE:    3

 CASE NO : 95 -  17524 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                          PRINTER:
 CASE STYLE:    CARLEY, DORIS                    PRINTOFF:
         VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  117095

    DATE      CODE                    PLEADING DESCRIPTION
 01/30/1996  NOAD    NOTICE OF ADOPTION
                     LISTS OF WITNESSES, EXHIBITS & DEPOSITIONS, ETC.
 01/18/1996  NOTI    NOTICE:
                     OF SERVICE OF SUPPLEMENTAL RESPONSE TO REQ FOR PRODUCTIO
 01/02/1996  VOLD    VOLUNTARY DISMISSAL            BK:17048 PG:1114
                        DN03
 01/02/1996  AUDT    VOLD ENTERED OR DUPLICATED IN ERROR
 11/06/1995  NAAN    NOTICE OF ADOPTION OF ANSWER
 11/02/1995  SVRT    SERVICE RETURNED        BADGE # 666666 P 10/19/1995
                        DN05


 PF1=CASE  2=PRINT  3=NAME   4=ATTY  5=CRT REG  6=JUD CAL   7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160    <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 01/21/1999
 TIME: 15:24:32              DOCKET DISPLAY              PAGE:    4

 CASE NO : 95 - 17524 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                PRINTER:
 CASE STYLE:    CARLEY, DORIS                   PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :  117095

     DATE     CODE               PLEADING DESCRIPTION
 10/11/1995  NOAD   NOTICE OF ADOPTION
                    MOTION FOR PARTIAL SUMMARY JUDGMENT
 10/11/1995  NOAD   NOTICE OF ADOPTION
                    WITNESS AND EXHIBIT LIST
 10/11/1995  ANSW   ANSWER                         ATTORNEY:  559156
                    DN06
 10/11/1995  MDIS   MOTION TO DISMISS
                    W.R. GRACE AND COMPANY
 10/10/1995  RQAD   REQUEST FOR ADMISSIONS
 10/10/1995  TEXT   MOTION IN LIMINE REQUESTING JUDICIAL NOTICE OF ADOPTION


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 01/21/1999
TIME: 15:24:35              DOCKET DISPLAY             PAGE:    5

CASE NO : 95 - 17524 - CA - 01      JUDICIAL SECTION : 42  **** OPEN ****
                                                    PRINTER:
CASE STYLE:   CARLEY, DORIS                         PRINTOFF:
          VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  117095

   DATE      CODE             PLEADING DESCRIPTION
10/10/1995  NOAD   NOTICE OF ADOPTION
                   MASTER MOTION TO STRIKE PUNITIVE DAMAGES, ETC.
10/10/1995  ANSW   ANSWER                        ATTORNEY:  772089
                   DN01
10/05/1995  SVRT   SERVICE RETURNED     BADGE #    74 P 09/28/1995
                   DN04
09/28/1995  SVRT   SERVICE RETURNED     BADGE #   487 P 09/20/1995
                   DN06
09/25/1995  NOTI   NOTICE:
                   OF RESPONSE TO DEFT'S INTERROGATORIES


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 01/21/1999
TIME: 15:24:40              DOCKET DISPLAY            PAGE:   6

CASE NO : 95 - 17524 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                   PRINTER:
CASE STYLE:    CARLEY, DORIS                        PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  117095

   DATE      CODE                PLEADING DESCRIPTION
09/25/1995   SVRT    SERVICE RETURNED        BADGE #   251 P 09/20/1995
                        DN02
09/25/1995   SVRT    SERVICE RETURNED        BADGE #   251 P 09/20/1995
                        DN01
09/25/1995   AUDT    SVRT ENTERED OR DUPLICATED IN ERROR
09/07/1995   CICO    CIVIL COVER
09/07/1995   DJTR    DEMAND FOR JURY TRIAL
09/07/1995   SMIS    SUMMONS ISSUED
                        DN01     DN02     DN03     DN04     DN05
09/07/1995   CMPT    COMPLAINT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 01/21/1999
TIME: 15:32:19              CASE STATUS DISPLAY

CASE NO : 95 - 5806   - CA - 01        SECTION : 42         **** OPEN ****
CASE STYLE :   MICHALAK, EUGENE                      PRINTER:
          VS  OWENS CORNING FIBERGLAS CORP           PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 09/07/1995 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:        .00
FEE STATUS: P   RECEIPT NO:  117093   COMPANION CASE NO: 00 -        -       -

PI: PN01  NAME: MICHALAK, EUGENE
ATTY: DAVID MICHAEL LIPMAN              DISP:      DATE            TRN

PI: PN02  NAME: MICHELAK, ROSEMAIRE
ATTY: DAVID MICHAEL LIPMAN              DISP:      DATE            TRN

PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
ATTY: TRACY TROUTMAN CREEK              DISP: VOLD DATE 06/27/1996 TRN

PI: DN02  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                  DISP:      DATE            TRN
 PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
 TIME: 15:34:10            DOCKET DISPLAY              PAGE:    1

 CASE NO : 95 - 17525 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
 CASE STYLE:   MICHALAK, EUGENE             PRINTOFF:
            VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :  117093

    DATE     CODE                PLEADING DESCRIPTION
 02/20/1997  VOLD    VOLUNTARY DISMISSAL           BK:17533 PG:4946
                         DN05
 01/08/1997  VOLD    VOLUNTARY DISMISSAL           BK:17489 PG: 179
                         DN04
 11/12/1996  TEXT    SUGGESTION OF DEATH OF PLAINTIFF, EUGEN MICHALAK
 11/06/1996  NOTI    NOTICE:
                     OF SERVICE SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTI
 06/27/1996  VOLD    VOLUNTARY DISMISSAL           BK:17256 PG: 478
                         DN01
 02/22/1996  TEXT    MTN AND PROFFER TO REINSTATE PUNITIVE DAMAGES


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
TIME: 15:34:22              DOCKET DISPLAY            PAGE:    2

CASE NO : 95 - 17525 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                               PRINTER:
CASE STYLE:   MICHALAK, EUGENE                  PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP   RECEIPT NO :  117093

   DATE      CODE                    PLEADING DESCRIPTION
02/15/1996   RQAD   REQUEST FOR ADMISSIONS
02/15/1996   NIAN   NOTICE OF ANSWER TO INTERROGATORIES
02/15/1996   NOAD   NOTICE OF ADOPTION
                    MOTION TO BIFURCATE
02/15/1996   NOAD   NOTICE OF ADOPTION
                    SUMMARY OF EXPERT OPINIONS
02/15/1996   NOAD   NOTICE OF ADOPTION
                    REQUEST TO TAKE JUDICIAL NOTICE, ETC.
02/15/1996   NOAD   NOTICE OF ADOPTION
                    WITNESS AND EXHIBIT LIST


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 01/21/1999
TIME: 15:34:26              DOCKET DISPLAY              PAGE:    3

CASE NO : 95 -  17525 - CA - 01       JUDICIAL SECTION : 42   **** OPEN ****
                                                   PRINTER:
CASE STYLE:   MICHALAK, EUGENE                     PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :  117093

    DATE      CODE                    PLEADING DESCRIPTION
 02/15/1996   TEXT    MOTION IN LIMINE, ETC.
 02/15/1996   TEXT    MOTION IN LIMINE, ETC.
 02/15/1996   TEXT    MEMO OF LAW IN SUPPORT OF SPECIAL JURY INTERRAGOTORY
 01/30/1996   NOAD    NOTICE OF ADOPTION
                      LISTS OF WITNESSES, EXHIBITS & DEPOSITIONS, ETC.
 12/20/1995   VOLD    VOLUNTARY DISMISSAL                 BK:17035 PG: 326
                         DN03
 10/30/1995   NOTI    NOTICE:
                      OF SERVICE OF SUPPLEMENTAL RESPONSE TO REQUEST TO PRODUC
 10/23/1995   NOAD    NOTICE OF ADOPTION


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                  DATE: 01/21/1999
TIME: 15:34:29             DOCKET DISPLAY              PAGE:    4

CASE NO : 95 -  17525 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                                   PRINTER:
CASE STYLE:   MICHALAK, EUGENE                     PRINTOFF:
              VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  117093

   DATE       CODE                 PLEADING DESCRIPTION
                      OF ITS PREVIOUSLY FILED AMENDED MASTER, ETC.
10/11/1995   NOAD    NOTICE OF ADOPTION
                      MOTION FOR PARTIAL SUMMARY JUDGMENT
10/11/1995   ANSW    ANSWER                          ATTORNEY:  559156
                        DN05
10/11/1995   MDIS    MOTION TO DISMISS
                      W.R. GRACE AND COMPANY
10/11/1995   TEXT    WITNESS AND EXHIBIT LIST
10/10/1995   TEXT    MOTION IN LIMIE REQUESTING JUDICIAL NOTICE, ETC.
10/10/1995   RQAD    REQUEST FOR ADMISSIONS


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/21/1999
 TIME: 15:34:33              DOCKET DISPLAY           PAGE:    5

 CASE NO : 95 -  17525 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
 CASE STYLE:   MICHALAK, EUGENE                    PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :   117093

   DATE       CODE                    PLEADING DESCRIPTION
 10/10/1995   NOAD    NOTICE OF ADOPTION
                      MOTION TO STRIKE PUNITIVE DAMAGES, ETC.
 10/10/1995   ANSW    ANSWER                          ATTORNEY:   772089
                         DN01
 10/05/1995   SVRT    SERVICE RETURNED      BADGE #      74 P 09/28/1995
                         DN04
 09/28/1995   SVRT    SERVICE RETURNED      BADGE #     487 P 09/20/1995
                         DN05
 09/25/1995   NOTI    NOTICE:
                      OF RESPONSE TO INTERROGATORIES


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/21/1999
TIME: 15:34:37              DOCKET DISPLAY            PAGE:    6

CASE NO : 95 - 17525 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                  PRINTER:
CASE STYLE:    MICHALAK, EUGENE              PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :  117093

   DATE       CODE              PLEADING DESCRIPTION
09/25/1995    SVRT    SERVICE RETURNED         BADGE #    251 P 09/20/1995
                         DN02
09/25/1995    SVRT    SERVICE RETURNED         BADGE #    251 P 09/20/1995
                         DN01
09/07/1995    CICO    CIVIL COVER
09/07/1995    DJTR    DEMAND FOR JURY TRIAL
09/07/1995    SMIS    SUMMONS ISSUED
                         DN01     DN02     DN03     DN04     DN05
09/07/1995    CMPT    COMPLAINT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155   END OF INFORMATION.
```

```
DATE: 01/21/1999              CIVIL DIVISION                    CIVM2510
TIME: 14:18:42             CASE STATUS DISPLAY

CASE NO : 98 -   9665 - CA - 01         SECTION : 42          **** OPEN ****
CASE STYLE :   LUGIEWICZ, ARNOLD                         PRINTER:
             VS  OWENS CORNING FIBERGLAS CORP            PRINTOFF:
NEXT CLDR DATE:              TIME:                HRG TYPE:
TRIAL DATE:
FILING DATE: 04/28/1998 ACTION: 022 PRODUCTS LIABILITY     AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  115297   COMPANION CASE NO: 00 -      -     -


PI: PN01  NAME: LUGIEWICZ, ARNOLD
ATTY: DAVID MICHAEL LIPMAN                     DISP:      DATE          TRN

PI: PN02  NAME: LUGIEWICZ, EVELYN
ATTY: DAVID MICHAEL LIPMAN                     DISP:      DATE          TRN

PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
ATTY: STEVEN R BROWNING                        DISP:      DATE          TRN

PI: DN02  NAME: ANCHOR PACKING CO
ATTY: H JACKEY KAPS                            DISP:      DATE          TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/15/1999
TIME: 13:14:32            CASE STATUS DISPLAY

CASE NO : 98 -  9665 - CA - 01      SECTION : 42         **** OPEN ****
CASE STYLE :  LUGIEWICZ, ARNOLD                     PRINTER:
          VS  OWENS CORNING FIBERGLAS CORP          PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 04/28/1998 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:       .00
FEE STATUS: P   RECEIPT NO:  115297   COMPANION CASE NO: 00 -      -     -

PI: DN03  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                 DISP:      DATE           TRN

PI: DN04  NAME: A W CHESTERTON CO
ATTY: ATTORNEY UNKNOWN                 DISP:      DATE           TRN

PI: DN05  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                 DISP:      DATE           TRN

PI: DN06  NAME: CROWN CORK & SEAL CO INC
ATTY: DANIEL BRONSON GUERNSEY          DISP:      DATE           TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
251A-RP-35  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                           DATE: 01/15/1999
 TIME: 13:15:41           DOCKET DISPLAY                  PAGE:     1

  CASE NO : 98 -  9665 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                                PRINTER:
  CASE STYLE:    LUGIEWICZ, ARNOLD              PRINTOFF:
          VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :   115297

   DATE       CODE                    PLEADING DESCRIPTION
 10/20/1998  VOLD    VOLUNTARY DISMISSAL              BK:18318 PG:2226
                        DN11
 09/29/1998  MOTI    MOTION:
                        IN LIMINE
 09/29/1998  TEXT    WITNESS AND EXHIBIT LIST
 09/29/1998  TEXT    SUMMARY OF EXPERT OPINIONS
 09/29/1998  MOTI    MOTION:
                        TO BIFURCATE
 09/29/1998  RQAD    REQUEST FOR ADMISSIONS
 09/29/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES


 PF1=CASE  2=PRINT  3=NAME   4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                               DATE: 01/15/1999
  TIME: 13:15:56              DOCKET DISPLAY             PAGE:    2

  CASE NO : 98 -  9665 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                              PRINTER:
  CASE STYLE:    LUGIEWICZ, ARNOLD                PRINTOFF:
            VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :  115297

    DATE       CODE                    PLEADING DESCRIPTION
  09/29/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES
  09/29/1998  MLAW    MEMORANDUM OF LAW
  09/29/1998  MOTI    MOTION:
                      IN LIMINE
  08/28/1998  NOTI    NOTICE:
                      OF ADOPTION
  08/18/1998  ANSW    ANSWER                        ATTORNEY:   56677
                      DN02
  08/03/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES
  07/20/1998  NOAD    NOTICE OF ADOPTION


  PF1=CASE  2=PRINT  3=NAME   4=ATTY  5=CRT REG  6=JUD CAL   7=CASE REL
  9=PG FWD 10=PG BK 11=NOTE   12=PREV ENTER=VIEW
  2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                               DATE: 01/15/1999
TIME: 13:16:01             DOCKET DISPLAY                  PAGE:     3

CASE NO : 98 -   9665 - CA - 01        JUDICIAL SECTION : 42   **** OPEN ****
                                                PRINTER:
CASE STYLE:    LUGIEWICZ, ARNOLD                PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP  RECEIPT NO :  115297

   DATE      CODE                    PLEADING DESCRIPTION
07/02/1998   ANSW   ANSWER                            ATTORNEY:  972551
                       DN09
07/01/1998   ANSW   ANSWER                            ATTORNEY:  137278
                       DN06
06/29/1998   ANSW   ANSWER                            ATTORNEY:  137278
                       DN06
06/29/1998   AUDT   TEXT ENTERED OR DUPLICATED IN ERROR
06/29/1998   ANSW   ANSWER                            ATTORNEY:88888888
                       DN03     DN09     DN10     DN14
06/17/1998   TEXT   EXPERT WITNESS SUMMARIES


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 01/15/1999
 TIME: 13:16:07              DOCKET DISPLAY          PAGE:    4

 CASE NO : 98 -  9665 - CA - 01       JUDICIAL SECTION : 42   **** OPEN ****
                                                   PRINTER:
 CASE STYLE:    LUGIEWICZ, ARNOLD                  PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :  115297

   DATE      CODE                    PLEADING DESCRIPTION
 06/16/1998  NAAN    NOTICE OF ADOPTION OF ANSWER
 06/16/1998  MSJU    MOTION FOR SUMMARY JUDGMENT
 06/16/1998  TEXT    WITNESS AND EXHIBIT LIST
 06/12/1998  NAAN    NOTICE OF ADOPTION OF ANSWER
 06/10/1998  NAAN    NOTICE OF ADOPTION OF ANSWER
 06/09/1998  NOAD    NOTICE OF ADOPTION
 06/09/1998  NOTI    NOTICE:
                     OF SERVICE OF ADOPTION OF ANSWERS TO INTERROG'S
 06/09/1998  NOTI    NOTICE:
                     OF ADOPTION OF MASTER ANSWERS TO INTERROG'S


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/15/1999
 TIME: 13:16:11             DOCKET DISPLAY            PAGE:    5

 CASE NO : 98 -   9665 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                               PRINTER:
 CASE STYLE:    LUGIEWICZ, ARNOLD              PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :  115297


   DATE      CODE                PLEADING DESCRIPTION
 06/08/1998  MDIS    MOTION TO DISMISS
                     OWENS-CORNING FIBERGLAS CORPORATION'S CROSS-CLAIM
 06/01/1998  ORDD    ORDER:
                     RESERVES RULING ON MTN TO REINSTATE PUNITIVE DAMAGES
 05/26/1998  ANSW    ANSWER                            ATTORNEY:  599638
                        DN01
 05/26/1998  NOTI    NOTICE:
                     OF ADOPTION OF MASTER MTN TO STRIKE
 05/08/1998  NIAN    NOTICE OF ANSWER TO INTERROGATORIES
 04/28/1998  SMIS    SUMMONS ISSUED
                        DN15     DN16


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL   7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 01/15/1999
 TIME: 13:16:14              DOCKET DISPLAY              PAGE:    6

 CASE NO : 98 -   9665 - CA - 01       JUDICIAL SECTION : 42   **** OPEN ****
                                                     PRINTER:
 CASE STYLE:    LUGIEWICZ, ARNOLD                    PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP         RECEIPT NO :  115297

    DATE       CODE                    PLEADING DESCRIPTION
 04/28/1998   SMIS    SUMMONS ISSUED
                        DN08    DN09     DN10     DN11     DN12     DN13     DN14
 04/28/1998   CICO    CIVIL COVER
 04/28/1998   DJTR    DEMAND FOR JURY TRIAL
 04/28/1998   SMIS    SUMMONS ISSUED
                        DN01    DN02     DN03     DN04     DN05     DN06     DN07
 04/28/1998   CMPT    COMPLAINT




 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-155    END OF INFORMATION.
```

```
                                         DATE: 01/21/1999
TIME: 14:44:02              CASE STATUS DISPLAY

CASE NO : 97 - 28631 - CA - 01      SECTION : 42        **** OPEN ****
CASE STYLE :   AHOKAS, ARVO                     PRINTER:
          VS  OWENS CORNING FIBERGLAS CORP      PRINTOFF:
NEXT CLDR DATE:          TIME:           HRG TYPE:
TRIAL DATE:
FILING DATE: 12/17/1997 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:      .00
FEE STATUS: P   RECEIPT NO:  116284   COMPANION CASE NO: 00 -      -    -

PI: PN01  NAME: AHOKAS, ARVO
ATTY: DAVID MICHAEL LIPMAN                 DISP:     DATE          TRN

PI: PN02  NAME: AHOKAS, GLADYS
ATTY: DAVID MICHAEL LIPMAN                 DISP:     DATE          TRN

PI: DN01  NAME: OWENS CORNING FIBERGLAS CORP
ATTY: STEVEN R BROWNING                    DISP:     DATE          TRN

PI: DN02  NAME: ANCHOR PACKING CO
ATTY: ATTORNEY UNKNOWN                     DISP:     DATE          TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2510-PM-70  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                                    DATE: 01/21/1999
TIME: 14:44:02               CASE STATUS DISPLAY

CASE NO : 97 - 28631 - CA - 01        SECTION : 42        **** OPEN ****
CASE STYLE :   AHOKAS, ARVO                          PRINTER:
           VS  OWENS CORNING FIBERGLAS CORP          PRINTOFF:
NEXT CLDR DATE:              TIME:              HRG TYPE:
TRIAL DATE:
FILING DATE: 12/17/1997 ACTION: 022 PRODUCTS LIABILITY    AMT CLAIM:        .00
FEE STATUS: P   RECEIPT NO:  116284   COMPANION CASE NO: 00 -      -    -

PI: DN03  NAME: ARMSTRONG WORLD INDUSTRIES INC
ATTY: ATTORNEY UNKNOWN                   DISP: VOLD DATE 07/20/1998 TRN

PI: DN04  NAME: A W CHESTERTON CO
ATTY: ATTORNEY UNKNOWN                   DISP:       DATE          TRN

PI: DN05  NAME: BABCOCK & WILCOX CO
ATTY: ATTORNEY UNKNOWN                   DISP:       DATE          TRN

PI: DN06  NAME: CROWN CORK & SEAL CO INC
ATTY: DANIEL BRONSON GUERNSEY            DISP: VOLD DATE 09/04/1998 TRN
PF1=PRINT 2=DCKT 3=NAME 4=ATTY 5=CRT REG 6=CAL 7=CASE REL 12=PREV ENTER=VIEW
2519-RP-50  <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
 TIME: 14:44:23           DOCKET DISPLAY              PAGE:    1

 CASE NO : 97 - 28631 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                               PRINTER:
 CASE STYLE:    AHOKAS, ARVO                   PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP      RECEIPT NO :  116284

   DATE      CODE                    PLEADING DESCRIPTION
 09/04/1998  VOLD    VOLUNTARY DISMISSAL                BK:18260 PG:4128
                       DN06
 08/26/1998  VOLD    VOLUNTARY DISMISSAL                BK:18250 PG:1570
                       DN11
 07/20/1998  VOLD    VOLUNTARY DISMISSAL                BK:18195 PG:3116
                       DN03     DN08     DN10     DN12
 06/18/1998  SVRT    SERVICE RETURNED        BADGE # 555555 P 12/29/1997
                       DN10
 06/01/1998  ORDD    ORDER:
                     RESERVES RULING ON MTN TO REINSTATE PUNITIVE DAMAGES


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                              DATE: 01/21/1999
 TIME: 14:44:49            DOCKET DISPLAY              PAGE:    2

 CASE NO : 97 - 28631 - CA - 01    JUDICIAL SECTION : 42   **** OPEN ****
                                                 PRINTER:
 CASE STYLE:    AHOKAS, ARVO                     PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP    RECEIPT NO :  116284

    DATE      CODE               PLEADING DESCRIPTION
 04/30/1998   TEXT    MTN TO REINSTATE
 03/24/1998   MDIS    MOTION TO DISMISS
                      COMPLAINT
 03/24/1998   MDIS    MOTION TO DISMISS
                      COMPLAINT
 03/24/1998   ANSW    ANSWER                       ATTORNEY:88888888
                         DN02
 03/09/1998   TEXT    EXPERT WITNESS SUMMMARIES
 03/03/1998   NIAN    NOTICE OF ANSWER TO INTERROGATORIES
 02/19/1998   ANSW    ANSWER                       ATTORNEY:88888888
                         DN03    DN08    DN12

 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                               DATE: 01/21/1999
 TIME: 14:44:55              DOCKET DISPLAY          PAGE:    3

 CASE NO : 97 -  28631 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                    PRINTER:
 CASE STYLE:    AHOKAS, ARVO                        PRINTOFF:
                VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :   116284

    DATE         CODE                    PLEADING DESCRIPTION
 02/19/1998     ANSW     ANSWER                          ATTORNEY:  972551
                            DN09
 02/13/1998     ANSW     ANSWER                          ATTORNEY:  137278
                            DN06
 02/13/1998     ANSW     ANSWER                          ATTORNEY:  137278
                            DN06
                         TO CROSSCLAIM
 02/10/1998     NOAD     NOTICE OF ADOPTION
 02/10/1998     TEXT     CROSSCLAIM OF OWENS-CORNING CORP
 02/10/1998     ANSW     ANSWER                          ATTORNEY:  599638
                            DN01


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160    <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 01/21/1999
TIME: 14:45:00              DOCKET DISPLAY            PAGE:    4

CASE NO : 97 - 28631 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                                     PRINTER:
CASE STYLE:    AHOKAS, ARVO                          PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP       RECEIPT NO :  116284

   DATE      CODE                   PLEADING DESCRIPTION
01/26/1998   NIAN    NOTICE OF ANSWER TO INTERROGATORIES
01/26/1998   NIAN    NOTICE OF ANSWER TO INTERROGATORIES
01/26/1998   EXLT    EXHIBIT LIST
01/26/1998   NOTI    NOTICE:
                     OF ADOPTION OF DEF AFFIR' DEFENSES,ANSWERS AND ETC
01/12/1998   SVRT    SERVICE RETURNED        BADGE # 555555 P 12/23/1997
                     DN06
01/12/1998   SVRT    SERVICE RETURNED        BADGE # 888888 P 12/24/1997
                     DN04
01/12/1998   SVRT    SERVICE RETURNED        BADGE # 555555 P 12/23/1997
                     DN02


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                         DATE: 01/21/1999
TIME: 14:45:07          DOCKET DISPLAY              PAGE:    5

CASE NO : 97 - 28631 - CA - 01      JUDICIAL SECTION : 42   **** OPEN ****
                                                   PRINTER:
CASE STYLE:    AHOKAS, ARVO                        PRINTOFF:
               VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :  116284

    DATE      CODE               PLEADING DESCRIPTION
 01/12/1998   SVRT    SERVICE RETURNED        BADGE # 555555 P 12/24/1997
                         DN08
 01/08/1998   RESE    RESPONSE:
                      TO DEFTS' MASTER SET OF GENERAL INTERROGATORIES
 12/31/1997   SVRT    SERVICE RETURNED        BADGE #    251 S 12/22/1997
                         DN12
 12/31/1997   SVRT    SERVICE RETURNED        BADGE #    251 S 12/22/1997
                         DN05
 12/31/1997   SVRT    SERVICE RETURNED        BADGE #    251 S 12/22/1997
                         DN01


 PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
 9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
 2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 01/21/1999
TIME: 14:45:11              DOCKET DISPLAY              PAGE:    6

CASE NO : 97 - 28631 - CA - 01     JUDICIAL SECTION : 42   **** OPEN ****
                                            PRINTER:
CASE STYLE:   AHOKAS, ARVO                  PRINTOFF:
        VS OWENS CORNING FIBERGLAS CORP     RECEIPT NO :  116284

   DATE        CODE              PLEADING DESCRIPTION
12/31/1997    SVRT     SERVICE RETURNED        BADGE #    251 S 12/23/1997
                         DN09
12/30/1997    SVRT     SERVICE RETURNED        BADGE #    251 P 12/22/1997
                         DN03
12/17/1997    CICO     CIVIL COVER
12/17/1997    DJTR     DEMAND FOR JURY TRIAL
12/17/1997    SMIS     SUMMONS ISSUED
                         DN01    DN02    DN03    DN04    DN05    DN06    DN07
12/17/1997    CMPT     COMPLAINT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155   END OF INFORMATION.
```